No. 15-2019

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

UNITED STATES OF AMERICA,

      *Plaintiff-Appellee,*

  *v*s.

BILLY J. ROBINSON, JR.,

      *Defendant-Appellant.*

Appeal From The United States District Court
For the Eastern District of Wisconsin,
Case No. 14-CR-150
The Honorable Judge Rudolph T. Randa

**BRIEF AND REQUIRED SHORT APPENDIX OF
DEFENDANT-APPELLANT**

Craig W. Albee
FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.
517 E. Wisconsin Ave. - Ste. 182
Milwaukee, WI 53202
Tel.:   (414) 221-9900
Fax:   (414) 221-9901
E-mail: craig_albee@fd.org

*Counsel for Defendant-Appellant*

*Federal Defender Services
of Wisconsin, Inc.*

## DISCLOSURE STATEMENT

Pursuant to FED. R. APP. P. 26.1 and CIRCUIT RULE 26.1 (7th Cir.), Billy Robinson's lawyer informs the Court that only Federal Defender Services of Wisconsin, Inc., appeared for the defendant-appellant who is a natural person, in the district court.  On appeal, Craig W. Albee, Federal Defender Services of Wisconsin, Inc., 517 East Wisconsin Avenue, Milwaukee, Wisconsin 53202-4500, represents Billy Robinson in this Court.

Dated:    July 30, 2015                             /s/   Craig W. Albee
                                                    *Counsel for Defendant-Appellant,*
                                                    Billy J. Robinson, Jr.

# TABLE OF CONTENTS

DISCLOSURE STATEMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUE PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    I.    Robinson is entitled to resentencing because the district court considered inflammatory extraneous matters that were not relevant to Robinson's sentence, while ignoring his limited role in the offense. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        A.    The district court improperly delved into matters outside the record that were extraneous to any proper sentencing consideration.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        B.    The district court failed to address Robinson's primary argument for leniency. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CIRCUIT RULE 31(e) CERTIFICATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

PROOF OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CIRCUIT RULE 30(d) STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

INDEX TO SHORT APPENDIX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Federal Defender Services*
*of Wisconsin, Inc.*

# TABLE OF AUTHORITIES

## CASES

*Gall v. United States,* 552 U.S. 38 (2007)................................. 15, 17

*United States v. Figueroa*, 622 F.3d 739 (7th Cir. 2010).................. 12, 15, 16

*United States v. Patrick*, 707 F.3d 815 (7th Cir. 2013).......................... 17

*United States v. Smith*, 400 Fed. Appx. 96 (7th Cir. 2010)............. 10, 14, 16, 18

*United States v. Wilson*, 383 Fed. Appx. 554 (7th Cir. 2010).................... 14

## STATUTES AND RULES

18 U.S.C. § 3553(a)......................................... 2, 9, 13, 15, 17

Circuit Rule 36 .................................................. 18

## OTHER AUTHORITIES

Allan Blinder and Richard Perez-Pena, *Baltimore Police Complete Initial Inquiry Into Death of Freddie Gray*, the New York Times, April 30, 2015.................... 13

Cornel West, *Race Matters 1* (Beacon Press 2001)........................... 12

University of Wisconsin-Milwaukee Center for Economic Development, The Economic State of Milwaukee's Inner City: 1970-2000 (Dec. 5, 2002) ......... 12

## JURISDICTIONAL STATEMENT

This is a direct appeal from the judgment of conviction in a criminal case. The district court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction on appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. A final judgment of conviction was entered in the United States District Court for the Eastern District of Wisconsin, Honorable Rudolph T. Randa, presiding, on April 30, 2015. R. 104. The defendant-appellant timely filed a notice of appeal on May 11, 2015. R. 107.

## ISSUE PRESENTED

This Court has recognized that a "litany of inflammatory remarks" undermines anything else a court says during sentencing and that it is inappropriate to blame a defendant for issues of broad local, national, and international scope that only tangentially relate to his underlying conduct.  At sentencing, the district court bemoaned the demise of a neighborhood he had frequented as a young man and worried that riots like those in Milwaukee in 1967 and that were then ongoing in Baltimore would soon erupt in Milwaukee given the "pathology we've got set in these neighborhoods," and the lack of direction, discipline, and self responsibility displayed by Robinson, but did not address Robinson's argument that he had a lesser role in the offense.

This case presents one issue:

Whether the court's inflammatory remarks and failure to address Robinson's limited role in the offense require resentencing because it is impossible to determine whether the sentence was properly based on the considerations outlined in 18 U.S.C. § 3553(a).

*Federal Defender Services*
*of Wisconsin, Inc.*

## STATEMENT OF THE CASE

Billy Robinson may be a repeat drug dealer, but he's never incited a riot. Yet, at sentencing, while discussing the need to protect the public, the district court launched into a discussion about riots past (Milwaukee 1967), present (Baltimore), and future (predicted for Milwaukee). R. 118:14.[1] The court also lamented the decline over the past several decades of Robinson's neighborhood, a place where the judge spent time in college, which was probably as a result of "this activity." *Id.* at 11. These concerns were not germane to Robinson's conduct or background, but appear to have influenced the district court's sentence.

What brought Robinson before the court was his brief participation in his cousin Trivon Carter's heroin trafficking business. From 2012 until July 2014, Carter regularly traveled to Chicago to purchase heroin that he resold in Milwaukee. Others assisted Carter in this business, but he was at the center of everything. Carter found the suppliers, negotiated purchases, traveled to Chicago to make purchases, obtained the customers, set the prices, assigned tasks, and kept the lion's share of the profits. R. 96: ¶ 10-26.

Carter's two primary assistants were Erwin Miller and Kathryn Du Vergey. Informants, location monitoring data from cellular phones, and surveillance

---

[1]     Citations to the record are in the following form: R.__at__.

*Federal Defender Services of Wisconsin, Inc.*

revealed that from February 2012 through at least the end of April 2014, Miller and Du Vergey picked up drugs with Carter from Chicago and helped sell them in Milwaukee. R. 96: ¶¶12-20; R. 70:2-3. The three typically traveled to Chicago at least once a week, obtaining anywhere from five to 300 grams of heroin per trip. R. 70:3. For example, location monitoring data from Trivon Carter's and Du Vergey's cell phones indicated that the two of them traveled to Chicago together on 35 occasions between November 27, 2013, and April 28, 2014. R. 96: ¶18. When police executed a search warrant at Miller and Du Vergey's home on July 16, 2014, they discovered nine firearms and Du Vergey and Miller sometimes carried firearms with them when obtaining or delivering heroin. R. 96: ¶24; R. 70:3; R. 79:3; R. 72:3; R. 76:3. In addition, a confidential informant purchased a total of 4.5 grams of heroin on three occasions from Du Vergey in February and March 2013. R. 96: ¶¶13-15. Du Vergey also had her own customers. R. 70:3.

Robinson began assisting Carter in spring 2014, more than two years after the others began. R. 96: ¶20. In June 2014, a confidential informant advised law enforcement officers that Carter had stopped supplying Du Vergey with heroin and that Carter's cousin, Billy Robinson, had recently taken her place distributing heroin to Carter's customers. *Id.* On June 26, 2014, a confidential informant called Carter to buy a half gram of heroin for $80. Shortly thereafter, Robinson showed up and met

*Federal Defender Services
of Wisconsin, Inc.*

with the CI to complete the transaction. R. 96: ¶22. Agents also learned that Billy Robinson aided Carter on other occasions by driving to Chicago with him when he picked up heroin or by delivering small amounts of heroin to Carter's customers. Specifically, Robinson traveled with Carter to Chicago to pick up heroin on July 12, and July 14, 2014. R. 76:3. Carter's drug business came to an end on July 16, 2014, when officers executed several search warrants and arrested Carter, Du Vergey, Miller, and Robinson.

On July 22, 2014, the four were indicted for conspiracy to distribute over 100 grams of heroin and everyone but Robinson ultimately plead guilty to that charge. R. 22, 70, 73, 78, 84. Robinson plead to an information charging him with two counts of interstate travel to commit a drug offense. R. 75, 76, 81. The government's position was that Robinson was responsible for 100-400 grams of heroin, that Miller and Du Vergey were responsible for 400-700 grams, and that Carter was responsible for 1-3 kilograms. R. 96:¶ 26.

At Robinson's sentencing, the court agreed with the parties that the firearm enhancement did not apply to Robinson., R. 118:4. As a result Robinson's guideline range was 77 to 96 months. R. 118:4. The government asked for a prison sentence of four to five years and Robinson's counsel asked for a sentence of three and a half years. R. 118:6. Before sentencing, defense counsel submitted a letter to the court

*Federal Defender Services*
*of Wisconsin, Inc.*

explaining why that was an appropriate sentence given Robinson's lesser culpability in the offense and at sentencing the government emphasized Robinson's limited role in the offense when compared to his codefendants. R. 101; R. 118. Robinson only was involved for a couple months versus a couple years for Du Vergey and Miller, he didn't have a gun, and he was involved in far fewer trips and transactions.

While Robinson was a bit player in Carter's business, both parties also recognized that Robinson's track record was poor. He had a history as a street dealer of drugs, having been convicted twice in 2002 for selling cocaine—.12 grams the first time and .27 grams the second. R. 96: ¶¶ 53, 54. He also had a 2012 conviction in Illinois for selling six bags of heroin and he still was on probation for that offense. R. 96: ¶56. Robinson spent significant time in prison for these and other non-violent offenses. The government noted that Du Vergey had been sentenced to the mandatory minimum of five years and thought Robinson warranted a similar, or slightly lower, sentence in light of his much less significant role, but much more substantial criminal history. R. 118: 4, 6.

Judge Randa began by referencing the nature and circumstances of the offense. He stressed the seriousness of heroin dealing, including from "personal experience, people that I know," but did not address Robinson's limited role in this particular offense. R. 118:11. The judge then talked about how he had dated a girl

6

in Robinson' neighborhood while in college, and that he'd go into that neighborhood because at that time, he "could do that." *Id.* He added that it was becoming a "mixed neighborhood at the time and I could do that without any fear of getting jacked, or shot, or anything. And now years later, that whole neighborhood has changed. And this activity is probably the reason for it. Drugs everywhere." *Id.*

The court then discussed Robinson's history of marijuana use since age 14, his time in juvenile custody for operating a stolen auto, and his 2012 heroin case in Chicago for which he received probation. R. 118: 12-13. The court chastised Robinson for not having held a job and said his only positive was his supportive family. *Id.* at 13. The court then indicated that it was emphasizing protection of the public because it hadn't "seen a record like this in a long time, where it's just a total disregard." *Id.* at 13-14.

At this point, the court dramatically shifted gears:

And I'll bet you -- and I was here in '67. I was waiting to go to Vietnam in '68 -- '67. And I was going to go to Vietnam, and I had a short leave here in Milwaukee. You know what happened in '67? That was -- you were born 12 years later, Mr. Robinson. '67 we had huge riots in this city. Not unlike what happened in Baltimore this week. Had to call out the National Guard. Mayor Maier had to put a curfew on the city. And you know what? I couldn't even get to the airport to go to a combat zone. And if we had something like this in this city today? With this pathology that we've got set in these neighborhoods? The same thing is going to happen here. If I was the Mayor, if I was the Chief of Police,

I'd be watching for that. Because this is a -- this bespeaks total lack of discipline, self -- well, responsibility. Self responsibility. Self direction. It's lacking. And any excuse -- and, you know, you didn't even get your H.S.E.D. when you were in prison the last time. When you got those -- got tagged when you were 23 back in '03. That's the only time you really spent, those 6-and-a-half years. And I'm being asked to give less time now? That's not going to happen. Because protection of the public is key here, based upon my analysis.

*Id.* at 14.

The court then briefly discussed Robinson's plan to move to Alabama with his fiancé, which would separate him from some of his children asking, "[w]hose momma is going to raise those people by themselves?" and adding "[n]ow I'm putting my finger on the real problem here." R. 118:15. The court then announced that it couldn't give Robinson the same sentence as Du Vergey because she had criminal history I and was sympathetic because she was a drug addict. *Id.* The court never noted Robinson's lesser culpability in Carter's conspiracy (other than to acknowledge defense counsel's argument that Robinson was a "bit player").

The court then sentenced Robinson to two consecutive three and a half year sentences because he "deserve[d] a little more time than Duvergey." R. 118:16. The court added that this sentence met the goals of sentencing. Three weeks later the court sentenced Erwin Miller to five years in prison, the mandatory minimum. R. 115. Miller's criminal history was III. R. 115

Robinson timely filed his notice of appeal on May 11, 2015. R. 107.

*Federal Defender Services of Wisconsin, Inc.*

8

## SUMMARY OF ARGUMENT

At sentencing, the district court referenced several matters that were outside the record and extraneous to any proper sentencing consideration, including discussion of rioting in 1967 Milwaukee and present-day Baltimore and the specter of future rioting in Milwaukee based on the "pathologies" of Robinson's neighborhood. The court also failed to address the seriousness of Robinson's offense, bypassing counsel's argument that leniency was warranted because of the much lesser role Robinson played in the charged drug ring. These errors in considering extraneous inflammatory matters and failing to consider nonfrivolous arguments for a lower sentence require resentencing as the court's remarks made it impossible for this Court to conduct meaningful appellate review of the sentence or to determine whether the court properly considered the § 3553(a) factors.

# ARGUMENT

I.    **Robinson is entitled to resentencing because the district court considered inflammatory extraneous matters that were not relevant to Robinson's sentence, while ignoring his limited role in the offense.**

   A.    **The district court improperly delved into matters outside the record that were extraneous to any proper sentencing consideration.**

In *United States v. Smith*, 400 Fed. Appx. 96, 97 (7th Cir. 2010), this Court recognized that "it is inappropriate to blame [the defendant] for issues of broad local, national, and international scope that only tangentially relate to his underlying conduct." That is exactly what happened at Robinson's sentencing when the court linked Robinson to the decades-long deterioration of his neighborhood and to past, present, and even future urban rioting.

The court first lamented the transformation of a neighborhood he frequented decades ago, noting that Robinson's neighborhood used to be mixed and the judge could go there without fear. Urban decline, poverty, and crime are intractable problems that existed long before Robinson and will endure long after he's gone. The perceived decline of Robinson's neighborhood between the time it was the judge's stomping grounds (presumably circa 1970), and present simply is not an appropriate sentencing consideration for Robinson and the court's opinion that drug activity was "probably the reason" for the changed neighborhood is without

*Federal Defender Services*
*of Wisconsin, Inc.*

10

foundation. The court also referenced fear of getting "jacked" or shot in that neighborhood, but Robinson had no history of violence. Also troubling is the worrisome connection the judge seems to make between the neighborhood's demise and its change from a mixed neighborhood to one that's overwhelmingly African-American.

Even more problematic is the Court's linking Robinson's conduct to past, present, and future rioting that have nothing to do with Robinson or his offense. The court first expounded on Milwaukee's 1967 riots, one of many that erupted throughout the United States that summer that were fueled in part by anger over racial discrimination and other social problems. The Court then turned to the Baltimore riots that were ongoing at the time of sentencing, which were ignited by the death of a young black man in police custody. Finally, the Court opined about the current conditions in Milwaukee and predicted that they were ripe for similar rioting as occurred in Milwaukee in 1967 and Baltimore today because of the "pathology" in these neighborhoods and lack of self discipline and responsibility as displayed by Billy Robinson. These remarks all were made in the apparent context of explaining why Robinson needed to be incarcerated for a longer period of time to protect the public. R. 118:13-14.

*Federal Defender Services of Wisconsin, Inc.*

Of course, there are an abundance of theories about the underlying causes for decaying cities and urban riots, and wide-ranging opinions on contributing factors such as persistent poverty, segregation, the loss of industrial jobs, housing and lending discrimination, police oppression, drugs, crime, declines in education, deteriorating infrastructure, racial disparities in incarceration rates, despair, cultural decay, one-parent households, shrinking urban populations, and many others.[2] But Robinson's sentencing and this appeal are not appropriate forums for debating these complex social issues. The referenced riots,[3] which occurred before Robinson was born and across the country while he was in jail, have no link to Robinson whatsoever. Placing responsibility for some anticipated future disturbance on Robinson's shoulders is so far afield that it calls into question all else the court said at Robinson's sentencing. *See United States v. Figueroa*, 622 F.3d 739, 744 (7th Cir.

---

[2] *See, e.g.*, University of Wisconsin-Milwaukee Center for Economic Development, The Economic State of Milwaukee's Inner City: 1970-2000 (Dec. 5, 2002) (finding that Milwaukee's inner city has experienced a "grim thirty-year period of economic decline since 1970," and noting poverty, the loss of industrial jobs, population loss, and the absence of new economic development in the inner city as significant contributing factors).

[3] Professor Cornel West's observations regarding the 1992 Los Angeles "riots" provide an alternate perspective:

> What happened in Los Angeles . . . was neither a race riot nor a class rebellion. Rather, this monumental upheaval was a multiracial, trans-class, and largely male display of justified social rage. . . . Glib attempts to reduce its meaning to the pathologies of the black underclass, the criminal actions of hoodlums, or the political revolt of the oppressed urban masses misses the mark.

Cornel West, *Race Matters 1* (Beacon Press 2001).

*Federal Defender Services*
*of Wisconsin, Inc.*

12

2010) ("the litany of inflammatory remarks undermined anything else that the court said during the hearing"). Nor are the alleged "pathologies" of Robinson's neighborhood relevant to the § 3553(a) factors.

Not only that, but there's no getting around that Milwaukee's 1967 riots and the protests in Baltimore were widely perceived as about race and that's the primary thread connecting those events with the court's speculation about Robinson's segregated African-American neighborhood. In contrast, there's no indication that the court considered Du Vergey, who is white, as a potential risk for a future riot.

Heightening the concern that the court was improperly influenced by extraneous matters is that the Baltimore protests were ongoing at the time of sentencing and were spreading to other cities. *See, e.g.*, Allan Blinder and Richard Perez-Pena, *Baltimore Police Complete Initial Inquiry Into Death of Freddie Gray*, the New York Times, April 30, 2015, available at http://www.nytimes.com/2015/05/01/us/baltimore-protests-freddie-gray.html (discussing generally the current state of Baltimore and noting that it was still under curfew and patrolled by National Guard troops). Particularly given the judge's personalized recollections of the Milwaukee riots in 1967 and his fear of new disturbances erupting in Milwaukee, the contemporaneous Baltimore protests likely affected his decision making when he sentenced Robinson.

The court indicated that it was basing its decision on the need to protect the public. But from the court's remarks, it cannot be determined what the court thought it was protecting the public from as it diverged into irrelevant discussions about the decline of Robinson's neighborhood and its worry that a riot in Milwaukee was imminent.

This was not the district court's first foray into extraneous social commentary. In *Smith*, the court also "engaged in an extended discussion of topics that lie outside the record," linking Smith to the national and international repercussions of drug trafficking, to a "grand criminal enterprise" that is "ruining Mexico," and to high kidnaping rates in Arizona. 400 Fed. Appx. at 98. As here, the court associated Smith's actions with broader issues of urban decline and lamented the current state of neighborhoods the judge used to frequent. *Id.* This Court found that these comments "ventured too far from the record and provided an insufficient factual basis for its sentencing determination." *Id.* at 99. As a result of these inappropriate remarks, this Court concluded that it could not determine whether these improper considerations influenced Smith's sentence, thereby preventing meaningful appellate review. *See also United States v. Wilson*, 383 Fed. Appx. 554, 557 (7th Cir. 2010) (finding that same district court's references to global effects of the drug trade and its impact on the judge's old neighborhood was "troublesome" because it

*Federal Defender Services
of Wisconsin, Inc.*

ranges so far from any evidence that was properly in the sentencing record and could be understood as a grudge against the defendant for dealing drugs in the judge's old neighborhood).

In *United States v. Figueroa*, 622 F.3d 739, 743-44 (7th Cir. 2010), the district court digressed to discuss Figueroa's native Mexico, the immigration status of Figueroa and two sisters, and the conditions and laws of a half a dozen other countries, as well as making unnecessary references to Hugo Chavez, Iranian terrorists, and Hitler's dog. This Court found that these references to matters outside the record were extraneous to any proper sentencing consideration and that the "lengthy and disconnected lecture saps any confidence we could have in the portions of the hearing that hewed to the § 3553(a) factors." *Id.* at 743. Because of this "litany of inflammatory remarks," the court was deprived of its ability to conduct meaningful appellate review as it could not tell how, if at all, the extraneous consideration influenced the sentence — "for all we know, setting his private views to one side the court may have thought that a below-guidelines sentence was appropriate." *Id.* at 744.

At sentencing, the district court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* (quoting *Gall v. United States,* 552 U.S. 38, 50 (2007)). As in *Figueroa*

*Federal Defender Services
of Wisconsin, Inc.*

and *Smith*, the district court's process was so "out of bounds" as to require resentencing. *Figueroa*, 622 F.3d at 744.

### B. The district court failed to address Robinson's primary argument for leniency.

While the court pondered the possible root causes of urban decay and rioting, and Robinson's theoretical contributions to them, it never addressed Robinson's main argument that he was a bit player in Carter's enterprise and therefore warranted a lesser sentence than his codefendants despite his criminal history, which was non-violent but involved three drug convictions. While the Court compared Robinson unfavorably to Du Vergey based on his criminal history and his view that her involvement may have been a byproduct of her drug addiction, he did not note that Du Vergey's involvement compared unfavorably to Robinson's in that she had been involved for closer to two years versus two months for Robinson, that she possessed guns, that she was involved with a significantly greater amount of drugs and individual sales, and that the prosecutor had recommended a slightly lower sentencing range for Robinson, who did not face a mandatory minimum sentence. Thus, in addressing "the nature and the circumstances of the offense," the court never took into account Robinson's lesser role in the offense. The court also never explained why it was rejecting the recommendation of the experienced prosecutor.

The court was, of course, free to reject Robinson's argument that a lower sentence was appropriate in light of his lesser role, but it couldn't do so silently. *United States v. Patrick*, 707 F.3d 815, 818-19 (7th Cir. 2013).  Where a defendant's arguments in mitigation of sentence are "'not so weak as not to merit discussion,' the court must explain how it took that argument into account or why it chose to reject the defendant's position." *Id.* at 818-19 (citation omitted). Robinson's argument was directed at a specific § 3553(a) factor—the nature and circumstances of the offense—and should have been addressed. The court's failure to do more than refer to defense counsel's argument that Robinson was a "bit player," leaves this Court unable to be sure that the court exercised its full discretion in considering Robinson's arguments for a lesser sentence. *Gall,* 552 U.S. at 50 (2007). That in itself requires a remand for resentencing.

*Federal Defender Services of Wisconsin, Inc.*

# CONCLUSION

As in *Smith,* the court's comments "ventured too far from the record and provided an insufficient factual basis for its sentencing determination." 400 Fed. Appx. at 99. Accordingly, Robinson asks this Court to vacate his sentence and remand this case under Circuit Rule 36 for resentencing.

Dated at Milwaukee, Wisconsin, 30th day of July, 2015.

Respectfully submitted,


/s/          *Craig W. Albee*
Craig W. Albee, WI Bar #1015752
FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.
517 E. Wisconsin Ave - Rm 182
Milwaukee,  WI   53202
Tel.: (414) 221-9900
E-mail: craig_albee@fd.org

*Counsel for Defendant-Appellant,*
Billy J. Robinson, Jr.

*Federal Defender Services
of Wisconsin, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to FED. R. APP. P. 32(a)(7), counsel for defendant-appellant certifies that this brief complies with the type-volume limitations of FED. R. APP. P. 32(a)(7)(B) because it contains no more than 14,000 words.  Specifically, all portions of the brief other than the disclosure statement, table of contents, table of authorities and certificates of counsel contain 3,793 words.


Dated:   July 30, 2015                     /s/   Craig W. Albee
                                           *Counsel for Defendant-Appellant*,
                                           Billy J. Robinson, Jr.

*Federal Defender Services
of Wisconsin, Inc.*

## CIRCUIT RULE 31(e) CERTIFICATION

The undersigned hereby certifies that I have filed electronically, pursuant to

CIRCUIT RULE 31(e), versions of the brief and all of the appendix items that are

available in non-scanned PDF format.


Dated:   July 30, 2015                         /s/   Craig W. Albee
                                               *Counsel for Defendant-Appellant*,
                                               Billy J. Robinson, Jr.

*Federal Defender Services*
*of Wisconsin, Inc.*

**PROOF OF SERVICE**

The undersigned hereby certifies that on today's date a copy of Defendant-

Appellant's Brief and Required Short Appendix was served on AUSA William J.

Lipscomb via the Court's CM/ECF system.


Dated:___July 30, 2015___                          /s/   _Craig W. Albee_____
                                                                        *Counsel for Defendant-Appellant,*
                                                                        Billy J. Robinson, Jr.

*Federal Defender Services*
*of Wisconsin, Inc.*

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d) (7th Cir.), counsel for defendant-appellant

Billy J. Robinson states that he has bound all of the materials that Circuit Rules

30(a) and (b) require in the short appendix to this brief.


Dated:   July 30, 2015                            /s/   Craig W. Albee
                                                  *Counsel for Defendant-Appellant*,
                                                  Billy J. Robinson, Jr.

*Federal Defender Services*
*of Wisconsin, Inc.*

## INDEX TO SHORT APPENDIX

Judgment in Criminal Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  App. p. 1-6

Sentencing Transcript. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . App. p. 7-27

*Federal Defender Services*
*of Wisconsin, Inc.*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA
v.

**BILLY JOE ROBINSON**

### JUDGMENT IN A CRIMINAL CASE

Case Number:     **14-Cr-150**

USM Number:     **13292-089**

**Craig W. Albee**
Defendant's Attorney

**William J. Lipscomb**
Assistant United States Attorney

THE DEFENDANT:

☒ pleaded guilty to count(s)   **One (1) and Two (2) of the Information**

☐ pleaded nolo contendere to count(s) _____
  which was accepted by the court.

☐ was found guilty on count(s) _____
  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1952(a)(3) | Travel in Interstate Commerce to Facilitate Distribution of Heroin | July 12, 2014<br>July 14, 2014 | 1<br>2 |

The defendant is sentenced as provided in Pages 2 through **6** of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☒ **Indictment is dismissed on the motion of the United States.**

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and the United States attorney of material changes in economic circumstances.

**April 30, 2015**
Date of Imposition of Judgment

_Rudolph T. Randa_
Signature of Judicial Officer

**Hon. Rudolph T. Randa, U. S. District Judge**
Name & Title of Judicial Officer

**April 30, 2015**
Date

AO 245B  (Rev. 09/11) Judgment in a Criminal Case:
     Sheet 2 - Imprisonment

Defendant:    **Billy Joe Robinson**
Case Number: **14-Cr-150**

# IMPRISONMENT

    The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of : **42 months as to each of Counts One (1) and Two (2) to run consecutively for a total term of 84 months Imprisonment.**

                    **Defendant shall be given credit for time served, if any, as determined/calculated by the United States Bureau of Prisons.**

☒  **The court makes the following recommendations to the Bureau of Prisons:**

        **(1) Defendant be placed at a facility as close to the Eastern District of Wisconsin as possible;**
        **(2) Defendant participate the Residential Drug Abuse Treatment Program.**

☒  **The defendant is remanded to the custody of the United States Marshal.**

☐  The defendant shall surrender to the United States Marshal for this district.

    ☐  at _____ ☐ a.m.  ☐ p.m.  on _____

    ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons,

    ☐  before 12:00 p.m. on _____.

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

                          _____
                          UNITED STATES MARSHAL

              By   _____
                          DEPUTY UNITED STATES MARSHAL

**App. p. 2**

AO 245B (Rev. 09/11) Judgment in a Criminal Case:
      Sheet 3 - Supervised Release

Defendant:    **Billy Joe Robinson**
Case Number: **14-Cr-150**

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of : **Three (3) years as to each of Counts One (1) and Two (2) to run concurrently for a total term of Three (3) years Supervised Release.**

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and two drug tests thereafter within one year.

☐    The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☒    **The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)**

☐    The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

     If this judgment imposes a fine or a restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

     The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without permission of the Court or probation officer;
2) the defendant shall report to the probation officer in a manner and frequency directed by the Court or probation officer;
3) the defendant shall answer truthfully all inquiries by the probation officer subject to the defendant's Fifth Amendment right against self-incrimination and follow the instructions of the probation officer;
4) the defendant shall use the defendant's best efforts to support the defendant's dependents;
5) the defendant shall use the defendant's best efforts to find and hold lawful employment, unless excused by the probation officer for schooling, training, or other acceptable reasons (e.g., childcare, eldercare, disability, age or serious health condition);
6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment; When such notification is not possible, the defendant shall notify the probation officer within 72 hours of the change;
7) in addition to the statutory mandatory condition prohibiting the possession and unlawful use of a controlled substance, the defendant shall not purchase, possess, use, distribute, or administer any paraphernalia related to any controlled substances, except as prescribed by a physician;
8) the defendant shall not knowingly go to places or enter buildings where controlled substances are unlawfully sold, used, distributed or administered.;
9) the defendant shall not associate with any persons known to the defendant to be engaged, or planning to be engaged, in criminal activity, and shall not associate with any person known by the defendant to be a felon, absent permission to do so by the probation officer. "Associate," as used here means reside, socialize, meet, communicate or otherwise interact with such person;
10) the defendant shall permit a probation officer to visit the defendant at reasonable times at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notification and to confirm the defendant's compliance with such notification requirement.

AO 245B (Rev. 09/11) Judgment in a Criminal Case:
Sheet 3A - Supervised Release

Defendant:          **Billy Joe Robinson**
Case Number:        **14-Cr-150**

### ADDITIONAL SUPERVISED RELEASE TERMS

1.  The defendant is to participate in a program of testing to include not more than six urinalysis tests per month and residential or outpatient treatment for drug and alcohol abuse, as approved by her supervising probation officer, until such time as she is released from such program. The defendant shall pay the cost of this program under the guidance and supervision of her supervising probation officer. The defendant is to refrain from use of all alcoholic beverages throughout the supervised release term.

AO 245B (Rev 09/11) Judgment in a Criminal Case:
  Sheet 5 - Criminal Monetary Penalties

Defendant:          **Billy Joe Robinson**
Case Number:        **14-Cr-150**

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **Totals:** | $200.00 | waived | none |

☐ The determination of restitution is deferred until _____ An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| **Totals:** | $ _____ | $ _____ | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

   ☐ the interest requirement is waived for the     ☐ fine     ☐ restitution.

   ☐ the interest requirement for the     ☐ fine     ☐ restitution is modified as follows:

*Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**App. p. 5**

AO 245B (Rev 09/11) Judgment in a Criminal Case:
    Sheet 6 - Schedule of Payments

Defendant:      **Billy Joe Robinson**
Case Number:   **14-Cr-150**

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

**A** ☐ Lump sum payment of $ _____ due immediately, balance due

    ☐ not later than _____ , or

    ☐ in accordance ☐ C, ☐ D, ☐ E or ☐ F below; or

**B** ☒ **Payment to begin immediately** (may be combined with ☐ C, ☐ D, or ☒ F below); or

**C** ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D** ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprison-ment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☒ **Special instructions regarding the payment of criminal monetary penalties:**

    **Payments are due immediately, through the Clerk of Court, but may be paid from prison earnings in compliance with the Inmate Financial Responsibility Program in payment of the Special Assessment. The defendant's participation in the Inmate Financial Responsibility Program is voluntary.**

    Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several
    Defendant and Co-Defendant Names, Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate:

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

App. p. 6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---------------------------------------------------------------

**UNITED STATES OF AMERICA,**

Case No. 14-CR-150

Plaintiff,

Milwaukee, Wisconsin

vs.

April 30, 2015

**BILLY J. ROBINSON, JR.,**

Defendant.

---------------------------------------------------------------

**TRANSCRIPT OF SENTENCING**

BEFORE THE **HONORABLE RUDOLPH T. RANDA,**
UNITED STATES DISTRICT JUDGE

**A P P E A R A N C E S**

For the Plaintiff:                United States Attorney
                                  By: **Mr. William J. Lipscomb**
                                  Assistant U.S. Attorney
                                  530, U.S. Courthouse
                                  517 E. Wisconsin Ave.
                                  Milwaukee, WI   53202

For the Defendant:                Federal Defender Services
                                  By: **Mr. Craig W. Albee**
                                  Attorney at Law
                                  517 E. Wisconsin Avenue
                                  Milwaukee, WI, 53202

REPORTED BY:                      HEIDI J. TRAPP
                                  Federal Official Court Reporter
                                  310, U.S. Courthouse
                                  517 East Wisconsin Avenue
                                  Milwaukee, Wisconsin 53202
                                  (414) 297-3074

25  Proceedings recorded by mechanical stenography, transcript
    produced by computer-aided transcription.

1                    **TRANSCRIPT OF PROCEEDINGS**

2              THE CLERK:  Case Number 14-CR-150, United States of

3    America vs. Billy Robinson.  Called for a sentencing hearing.

4    May I have the appearances, please.  First for the Government.

5              MR. LIPSCOMB:  Good morning, Your Honor.  Assistant

6    United States Attorney William J. Lipscomb on behalf of the

7    United States.

8              THE COURT:  Good morning.

9              MR. DRAGOLOVICH:  Daniel Dragolovich for U.S.

10   Probation.  Good morning.

11             THE COURT:  Good morning.

12             MR. ALBEE:  Good morning, Your Honor.  Mr. Robinson

13   appears in person and with Craig Albee.

14             THE COURT:  Good morning.  The case is here for

15   sentencing.  The Court has read the presentence report.  The

16   Court has received a letter yesterday, and from defense also.

17   The Court has read that.  It's read all the other information

18   related to this hearing, and the Court is prepared to proceed.

19   Before the Court does, it must inquire of you, Mr. Robinson, as

20   to whether or not you've had the same opportunity.  So I ask

21   you, have you gone over this presentence report with your

22   attorney, Mr. Albee?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  Do you or Mr. Albee have any objections to

25   any of the factual statements in the report?

1    MR. ALBEE:  Judge, we have nothing beyond what we

2   included in our letter to the Probation Office.

3    THE COURT:  All right.  Does the Government have any

4   objections to any of the factual statements in the report?

5    MR. LIPSCOMB:  No, Judge.

6    THE COURT:  Okay.  Well, then the Court will take the

7   range of sentence established by the guidelines and integrate

8   that into the factors under 18 United States Code Section 3553,

9   which directs the Court to look at the same things that the

10  guidelines look at, and then render a disposition not more than

11  necessary to achieve what are the goals in both.  The Court will

12  listen to the Government's recommendation first, then Mr. Albee.

13  And then, Mr. Robinson, you get the last word relative to your

14  right of allocution.  You get to talk last.  Is the Government

15  going to make a recommendation here?

16    MR. LIPSCOMB:  Yes, Judge.  Going to sort of back up,

17  though.  You know, the Defendant did submit two letters,

18  ultimately.  The first letter to the Probation Office dated

19  April 17th, which is an objection to the facts in the

20  presentence report, which is dealt with in the addendum filed on

21  April 23rd of 2015.  And that deals with the firearm

22  enhancement.  The Defendant objects to that -- application of

23  that enhancement.  And if the Court were to accept that

24  objection, the guideline range would be reduced to 77 to

25  96 months, which is significant.  And the Government actually in

1  that did not oppose that objection.  I think it's appropriate.

2  We're not really able to prove the firearm involvement with

3  Mr. Robinson, as we could with the other Defendants.

4  THE COURT:  All right.  Well, I suppose the Court

5  should have commented on the fact that because the Government

6  doesn't think it can prove that, that the Court is not going to

7  tag -- or credit Mr. Robinson with that.  So we will proceed on

8  that range that's established, 77 to 96 months, I believe.

9  MR. LIPSCOMB:  Thank you, Judge.  Okay.  So then the

10  Government's recommendation, Judge, is that the Court -- it's

11  really kind of reflected in the Defendant's letter.  What I'm

12  concerned about in this case in recommending a sentence not more

13  than 5 years is that there really be some parity with the other

14  Defendants in the case.  And I know that Mr. Robinson presents a

15  different profile, particularly given his extensive criminal

16  history.  But the counterweight to that is his limited time

17  involved in this offense.  And so I think about 60 months, not

18  more than that, is about where it would be appropriate to come

19  down with a sentence that was not greater than necessary to

20  achieve the purposes of sentencing.

21  In that regard, you know, I'm not diminishing the

22  seriousness of the offense that Mr. Robinson was involved in.

23  Though he was involved in it for a short period of time, he was

24  assisting Mr. Trivon Carter in a significant heroin trafficking

25  enterprise.  And as the facts would show, going down to Chicago

1   to help him pick up heroin, and then also to make at least one

2   delivery that we have through a C.I. here in the Milwaukee area.

3   So, you know, if that were a one time deal for a person, you

4   know, that might not call for a sentence even of 60 months.  But

5   Mr. Robinson's history is really terrible.  And, you know, sort

6   of a pickle as to what the Court should do with him,

7   particularly now that he is -- what is he?  35 years of age, I

8   think?  Right.  35 years of age.  And you'd hope done with the

9   foolishness and the knuckle-headness, and the street association

10  of his past.

11          He's got kind of a classic street dealer criminal

12  history starting at the age of 14 with some thefts, and

13  possession of a stolen automobile, and possession of cocaine,

14  and battery, possession of T.H.C.  Another possession charge out

15  of Chicago, moving on to more serious felony conduct in 2002.

16  Two Milwaukee County cases where we have manufacture or delivery

17  of cocaine.  He gets significant prison time for those offenses,

18  but not too long after getting out has essentially a

19  distribution of heroin in Chicago in 2012.  And then fast

20  forward to our offense here in 2014.

21          So he's not gotten the message yet.  And the reaction

22  could be, well, have to ratchet this up even beyond what the

23  prior sentences were.  That may or may not be right, but he's

24  also gotten older, too.  And I think the difference in a 4 year

25  or 5 year sentence for a guy who's 35 is different than it would

1   be if he were 22 years old.  Five years is a greater period of

2   time for a person who's 35 years old and has seen what prison

3   is.

4        So I think that's kind of in the range of what's

5   appropriate here.  But I can't tell you -- and I had this

6   conversation with Mr. Albee -- from the public standpoint, how

7   much time is necessary to get Mr. Robinson to stop dealing dope.

8   I don't know what that is.  We know that when he's incarcerated

9   he's not dealing drugs on the street.  But we want him to stop.

10  We want him to do something productive.  And I think that 4 to 5

11  year range is the minimum that's necessary to make that happen

12  and is, I think, sufficient.

13        THE COURT:  All right.  Mr. Albee?

14        MR. ALBEE:  Judge, there's not much difference between

15  the recommendations of the parties here.  Mr. Lipscomb has

16  suggested 4 to 5 year range.  We're asking the Court to impose a

17  sentence 6 months below that range.  And Mr. Lipscomb and I are

18  pretty well in agreement as to what the important considerations

19  are here, and what needs to be balanced.  I do think a

20  3-and-a-half year sentence is sufficient but not greater than

21  necessary under all the circumstances when we look at some of

22  the finer points, some of the details here in both the role in

23  the offense, and some of the criminal history information.

24        In comparison to his co-Defendants, at least the ones

25  who are -- the people who are prosecuted, I guess there are

1   other people who probably were part of Mr. Carter's organization

2   that had different roles at different times that Mr. Carter

3   used.  Mr. Robinson was involved for about 2 months, as opposed

4   to the 2-plus years that the others were involved.  And for

5   those 2 months Mr. Robinson was a bit player here.  He had no

6   leadership or supervisory role.  He didn't make any decisions,

7   even about how things would take place.  Mr. Carter really did

8   everything.  Billy didn't have his own customers.  He didn't --

9   Mr. Carter said he didn't help even bag any of the heroin.  He

10  never had a gun.  He was simply told, you know, what to do on

11  occasion by Mr. Carter.  And even the circumstance under which

12  Mr. Robinson came to be prosecuted the sale of the half gram of

13  heroin to an informant -- in looking at the discovery, there was

14  an evidentiary hearing on this matter.  Mr. Carter set up that

15  deal, and then had his brother actively doing some -- what the

16  Police describe as counter-surveillance, and then sent

17  Mr. Robinson to deliver the drugs.  And I suspect Mr. Carter

18  thought that he was -- that potentially this was somebody

19  working for law enforcement, and so he sent Mr. Robinson.

20          Mr. Robinson got involved here.  Mr. Carter was his

21  cousin.  He started hanging out with him.  Enjoyed living

22  vicariously -- Mr. Carter was doing well.  Living a much higher

23  lifestyle than Billy could possibly afford.  He made some very

24  bad choices in terms of hanging out with Mr. Carter, and of

25  helping him out on some occasions.  It's obviously a serious

1   offense.  It's a heroin offense.  But Billy's role was much

2   smaller, and he was really a replaceable piece in this -- in

3   Carter's business.  He would have found somebody else.  It

4   doesn't diminish the wrongfulness of Billy's behavior, but he

5   just was not a leader of this enterprise.

6           His past criminal history?  Obviously we all have to

7   be concerned, because he's had three prior convictions.  Those

8   convictions also involve what are street level dealer kind of

9   amounts.  .12 grams of cocaine. .27 grams of cocaine.  None of

10  them involve guns, violence, threats to anybody.  No leadership

11  activity.  He's never been a major player.  And so I think that

12  the balance here in terms of looking at his role in the offense,

13  and his criminal history, suggests a sentence along the lines

14  recommended by the parties.  I do think 3-and-a-half years is

15  sufficient.

16          In terms of the personal characteristics, Your Honor,

17  about Mr. Robinson?  He's a little bit of a mystery to me.  He's

18  just a very likable individual.  He's clearly -- he's good with

19  people.  He's relaxed.  He's easy going.  In talking with family

20  members, people seem to enjoy his company.  His kids love him.

21          But he hasn't done much.  He does have plans for the

22  future, which I think is a reason to be optimistic.  He has

23  plans to move with his fiancee to Alabama.  I think it would be

24  good for him to get away with his associations that he has in

25  the Milwaukee area.  He has goals in terms of obtaining some

 1  vocational training and some treatment.  When we look at the

 2  PSR, it's surprising how little programming that Mr. Robinson

 3  for his contacts with the criminal justice system has ever

 4  received.  That doesn't take the blame off his shoulders.  It's

 5  just -- it's surprising that he hasn't had vocational training

 6  and other programs here.

 7        He had some drug treatment in the prison, but there's

 8  a recommendation for follow-up, and then no follow-up took

 9  place.  I do think his marijuana abuse has probably been a

10  significant factor in who he is and why his personal growth has

11  been somewhat stunted.  And I think he would benefit from the

12  RDAP program.

13        So Judge, in terms of an appropriate sentence, the

14  parties are not far apart.  I do think when we look at

15  sufficient but not greater than necessary, 3-and-a-half years

16  would fit the bill, given the fact that Billy was a bit player

17  in this enterprise, and that he's never been a person who's been

18  engaged in violence or guns in his life.  So I would ask the

19  Court to impose 3-and-a-half years.  And also a recommendation

20  that that institution be a place as close as possible to the

21  Eastern District of Wisconsin.

22        THE COURT:  Okay.  Mr. Robinson, you have a right to

23  speak.  Anything that you want to say before the Court passes

24  sentence?

25        THE DEFENDANT:  I've got this letter I would like to

1    address the Court with, saying that I accept full

2    responsibilities for my actions.  I made a lot of bad choices in

3    my life, and I have to work on becoming a better man and father.

4    Changes will be made in my life, and I plan to seek help.  I

5    have children that look up to me, and thinks that I'm a great

6    Dad.  I want to be a good role model for my kids, and I know I'm

7    not the first, but I want the best for my children.

8              My goals are to be more responsible and get a job.

9    Surround myself around positive people and do positive things.

10   I have a family that loves me and cares about me a lot, and I

11   don't want to lose them.  And life is what you make out of it,

12   so I have to make the right choices in life to achieve my goals.

13   And that's pretty much what I got here, sir.

14             THE COURT:  All right.  Well, the Court has to, as

15   indicated, look at the nature and circumstances of the offense,

16   and then the history and characteristics of the Defendant, and

17   then to render a disposition not more than necessary to achieve

18   what are the goals of both the guidelines and the Statute.  And

19   that is to reflect the seriousness of the offense, promote

20   respect for the law, create a just punishment, provide adequate

21   deterrence, and protect the public from further crimes.

22             The thing that surfaces here is that last goal,

23   protect the public from further crimes.  And the Court will

24   discuss that in more detail as I get to the second standard, the

25   history and characteristics of the Defendant.  But we take up

1   the first one first, the nature and circumstances of the

2   offense.  This is a distribution.  Travel to facilitate the

3   distribution of heroin.  Two counts.  The Court could go on for

4   hours.  And personal experiences, people that I know.  And this

5   is, of course, so prevalent that it impacts all levels and

6   strata of society.  And it's heroin, which is the worst drug

7   that you can probably put out onto the street.  People could

8   argue about methamphetamines and other things that rot people's

9   teeth and are just as addictive.  But the point is that heroin

10  is the drug of choice for people who graduated to the ultimate

11  high.  And it is creating destruction.

12          And Mr. Robinson, your community, 28th Street, those

13  environments.  I mean, 2700, 28th Street where your Mom used to

14  live -- I believe that's where you were living when this offense

15  occurred.  And, of course, Martin was living on the 3100 block I

16  think near Burleigh on 28th Street.  I used to date a girl that

17  lived on 24th Street and Locust when I was in college.  I'd go

18  into that neighborhood.  And she lived in an upper duplex.  And

19  I could do that.  And it was becoming a mixed neighborhood at

20  the time, and I could do that without any fear of getting

21  jacked, or shot, or anything.  And now, years later, that whole

22  neighborhood has changed.  And this activity is probably the

23  reason for it.  Drugs everywhere.  You know, Mr. Lipscomb has

24  just indicated, what are we going to do to keep this guy from

25  this street level dealing that he's been doing since age 14?

1   And why do I say that?  Well, because at age 14 you started --

2   according to this presentence report -- using marijuana.  And

3   people say well, that's no big deal.  But when you use

4   marijuana, it ain't free.  You've got to buy it from someone.

5   So you're facilitating a deal.  And that just perpetuates the

6   whole thing.  And this presentence report -- although there is a

7   disagreement as to the amount spent -- presentence report says

8   50 to $60 per day.  But you said 50 to $60 a week.

9           The point is that's been a constant criminal

10  involvement since age 14.  And I'm not talking about -- and

11  that's just the marijuana use.  And that, of course, leads to

12  involvement in other things like retail thefts.  And you were

13  put out at Ethan Allen.  Held over at Ethan Allen.  Got into

14  some trouble there.  Incarcerated.  Operating stolen auto -- or

15  involved in a stolen auto.  And that goes up.

16          And finally -- and that's another thing.  Chicago.  I

17  looked at these dispositions that were rendered in Chicago.

18  That must be a revolving door criminal justice system down

19  there.  I mean, probation back in '12 for possession of

20  controlled substance with intent to deliver heroin?  Two years?

21  I think that's what it was.  Isn't that right, Mr. Dragolovich?

22          MR. DRAGOLOVICH:  Yes, I believe so.

23          THE COURT:  2012, age 32, with this record he gets two

24  years probation for dealing heroin.  That to me is just beyond

25  belief.  Now, I'm not going to punish you because of what they

1   didn't do down in Chicago.  But the point is, this has hurt you,

2   because you apparently have this idea that you don't have to

3   work.  You can continue doing what you're doing.  And now you're

4   35 years old.  21 years later, still doing the marijuana.

5   Haven't had a job in your life.  And the only positive I can see

6   here is that you've got a supportive family.  And that your

7   siblings aren't involved in any antisocial behavior.  At least

8   what I can tell from the presentence report.

9           And Mr. Albee, your attorney, is one of the best.  I

10  mean, he's made the arguments that, you know, you're a bit

11  player.  Hanging out with Carter, your cousin.  And that's a bad

12  deal.  But Carter knew who to go to when he dropped DuVergey.

13  When she was using up too much of the heroin that she was

14  supposed to be selling and transporting.  He went right to his

15  cousin.  Because he knew, based upon what you've been doing your

16  whole life, Mr. Robinson, that he could count on you.

17          And that -- that's why the Court emphasizes the last

18  one, protection of the public.  You told me you want to take

19  full responsibility.  You should.  Everybody is responsible for

20  their own behavior.  All of this stuff, this was -- this offense

21  was committed while he was on supervision, right?  For that

22  offense -- another possession charge?

23          MR. DRAGOLOVICH:  Yes.

24          THE COURT:  That's the Chicago thing?

25          MR. DRAGOLOVICH:  Yes.  And the Milwaukee one as well.

1             THE COURT:  And the Milwaukee one as well.  So

2   constant contact, escape from prison, fugitive for two years.  I

3   mean, I haven't seen a record like this in a long time, where

4   it's just a total disregard.  I don't care how nice you are.

5   How much your family loves you.  I mean, my family loves me,

6   too.  But when I stepped out of line, they dealt with me.  They

7   didn't love me so much.  In fact, it's because they loved me

8   that they dealt with me.

9             And I'll bet you -- and I was here in '67.  I was

10  waiting to go to Vietnam in '68 -- '67.  And I was going to go

11  to Vietnam, and I had a short leave here in Milwaukee.  You know

12  what happened in '67?  That was -- you were born 12 years later,

13  Mr. Robinson.  '67 we had huge riots in this city.  Not unlike

14  what happened in Baltimore this week.  Had to call out the

15  National Guard.  Mayor Maier had to put a curfew on the city.

16  And you know what?  I couldn't even get to the airport to go to

17  a combat zone.  And if we had something like this in this city

18  today?  With this pathology that we've got set in these

19  neighborhoods?  The same thing is going to happen here.  If I

20  was the Mayor, if I was the Chief of Police, I'd be watching for

21  that.  Because this is a -- this bespeaks total lack of

22  discipline, self -- well, responsibility.  Self responsibility.

23  Self direction.  It's lacking.  And any excuse -- and, you know,

24  you didn't even get your H.S.E.D. when you were in prison the

25  last time.  When you got those -- got tagged when you were 23

1   back in '03.  That's the only time you really spent, those

2   6-and-a-half years.  And I'm being asked to give less time now?

3   That's not going to happen.  Because protection of the public is

4   key here, based upon my analysis.

5            Your attitude is negative.  Personality is negative,

6   based upon your behavior.  The only positive, as I indicated, is

7   your family.  You've got 13 other arrests besides all of these

8   other crimes.  You've got, what?  Five kids now by four

9   different women.  You're going to go to Alabama with your fiance

10  because you say you want to take your kids there, lead a

11  prosocial lifestyle, and be a role model?  But then you've got,

12  what?  A kid in Chicago, and two in Milwaukee here, right?

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  What about them?  Are they going to go to

15  Alabama with you?  Whose Momma is going to raise those people by

16  themselves?  Now I'm putting my finger on the real problem here.

17  And I'm not going to go deeply into that, because I can speak

18  for a long time on that, also.  But I can't give you the same

19  thing that DuVergey got.  She was -- she had a criminal history

20  category of one.  And she was -- she was someone who had

21  sympathy because she was, indeed, captured by, first, cocaine.

22  And then she married a guy who was using heroin, he introduced

23  her to it, and then he died, and now she's hooked.  And heroin

24  users, they will do almost anything to get heroin.  Almost

25  anything.  They've got a lifelong desire for it.  And so they

1  have to get up every day and say oh, God, I really could use a

2  fix.  But if they don't have the willpower to say -- to think

3  and see that they're going to go right back to the depths that

4  they came from -- and that's a burden.  That's a lifelong

5  burden, that just one shot of heroin can put on somebody.

6         So I'm going to give you 3-and-a-half years, but on

7  both counts, consecutive.  Because you deserve a little more

8  time than DuVergey.  And that addresses the protection of the

9  public.  It provides adequate deterrence.  And it is a just

10 punishment.  So it meets those three goals.  And it also

11 reflects the seriousness of the offense.  We've got three goals

12 here that should be observed and addressed in this sentencing.

13 So the Court is doing that.

14        I'm going to place you on supervised release for a

15 period of 3 years on both.  That will be concurrent.  Set the

16 usual conditions of supervised release, which are necessary.

17 Have to report to the Probation Office in the District in which

18 you're released within 72 hours.  Can't commit any State,

19 Federal, or local crimes.  You can't possess any controlled

20 substances illegally.  Have to engage in 6 urinalyses tests per

21 month.  Residential or outpatient treatment for drug or alcohol

22 abuse.  The Court will recommend the drug treatment program.

23 Obviously the discussion here is that -- and since the weapons

24 charge -- he should be eligible for that, is that correct?

25        MR. DRAGOLOVICH:  Yes.

1          THE COURT:   Yeah.   You get involved in this program --

2    and you indicated that you want to take advantage of those

3    programs, Mr. Robinson.   You get involved in that program, and

4    pass it, that will shorten your sentence when you're in the

5    prison.   Don't blow it off, like you did the H.S.E.D. when you

6    were sentenced back in 2003.   I don't know why you didn't finish

7    it.   I'm not going to be critical of that, but take advantage of

8    the programs.

9          All right.   We've got -- the Court has looked at the

10   Defendant's financials.   I can't -- filed one income tax

11   return -- although there's a record of three.   But then he says

12   that someone may have been using his identity and information,

13   which the Court sees as absolutely possible, having sentenced a

14   variety of people for doing that very same thing.   Filing income

15   tax returns on behalf of people that -- whose identity has been

16   stolen.

17          The Court has received the addendum to the presentence

18   report.   We've been dealing with Judge Posner's requirements

19   that -- I've stated the mandatory conditions which are obvious.

20   The reasons for them are obvious.   The firearms -- no firearms

21   or dangerous weapons.   Drug treatment program.   Reporting.   No

22   crimes.   The Court has to set conditions now that -- because of

23   the Defendant's absconding, can't leave the District without

24   permission of the Probation Officer or Court.   Shall answer

25   truthfully all inquiries by the Probation Officer, subject to

**App. p. 23**

1    the First Amendment right against self incrimination, and follow

2    the instructions of the Probation Officer.  Shall use his best

3    efforts to support his dependents.  Cooperate with child support

4    enforcement.  Although there haven't been any orders, according

5    to the presentence report.  He shall use his best efforts to

6    find and hold lawful employment unless excused by the Probation

7    Officer for schooling, training, or other acceptable conditions.

8    And those include child care, elder care, disability, age or

9    serious health condition and others related thereto.  Consistent

10   with U.S. vs. Siegel and the need to reduce recidivism.

11          The Defendant shall notify the Probation Officer at

12   least 10 days prior to any change in his residence or

13   employment.  That does not mean changes in the condition of an

14   employment.  Just changes in employers.  And when such

15   notification is not possible, the Probation Officer shall be

16   notified within 72 hours of the change.

17          The Court will also, because of the Defendant's

18   history, not knowingly go to places or enter buildings where

19   controlled substances are unlawfully sold, used, distributed, or

20   administered.  And he shall use his best efforts not to

21   associate with any persons known by him to be engaged or

22   planning to be engaged in criminal activity.  And shall not

23   associate with any person known by him to be a felon, absent

24   permission to do so by the Probation Officer.  And associate as

25   used here means reside, socialize, meet, communicate, or

1    otherwise interact with such person.  The Defendant shall permit

2    a Probation Officer to visit him at reasonable times at home or

3    elsewhere, and shall permit confiscation of any contraband

4    observed in plain view by the Probation Officer.

5         There will be a notification of any arrest within

6    72 hours or questioning by a law enforcement Officer.  In

7    addition, the Defendant shall not enter any agreement to act as

8    an informer or a special agent of a law enforcement agency

9    without the permission of the Court.  And those are the

10   conditions of probation.

11        The Court is waiving the fine as indicated in this

12   case.  And the Court will impose the $100 mandatory special

13   assessment, which is payable in Room 362 of the Clerk of Court's

14   Office.  The Court will accept the Defendant's request for a

15   facility as close to home as possible.  And so the Court is

16   going to put that in this judgment, that you be placed at a

17   facility as close to home as possible, Mr. Robinson, so that

18   your family will have an opportunity to visit.

19        The Court having rendered its disposition, is there

20   any question as to the Court's disposition from the Government?

21        MR. LIPSCOMB:  No, Judge.  Thank you.

22        THE COURT:  Any from the defense, Mr. Albee?

23        MR. ALBEE:  No, Judge.

24        THE COURT:  Mr. Robinson, I have to -- you can appeal

25   this case.  You've got 14 days to appeal it.  If you can't

1   afford an appeal, a notice will be filed on your behalf by the

2   Clerk of Courts.  And Mr. Albee, you will file a Notice of

3   Appeal on Mr. Robinson's behalf if he decides to do that?

4           MR. ALBEE:  Yes, Your Honor.

5           THE COURT:  Anything else to come before the Court?

6           MR. LIPSCOMB:  I don't believe so, Judge.

7           MR. ALBEE:  No, Judge.

8           THE COURT:  The Court will stand in recess until the

9   next case.

10                          *    *    *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  UNITED STATES DISTRICT COURT

2  EASTERN DISTRICT OF WISCONSIN

3

4        I, HEIDI J. TRAPP, Official Court Reporter for the

5  United States District Court, Eastern District of Wisconsin, do

6  hereby certify that I reported the foregoing Transcript of

7  Proceedings; that the same is true and correct as reflected by

8  my original machine shorthand notes taken at said time and place

9  before the Hon. Rudolph T. Randa.

10

11                         _____

                           Official Court Reporter
12                         United States District Court

13

14  Dated at Milwaukee, Wisconsin,

15  this 18th day of June, 2015.

16

17

18

19

20

21

22

23

24

25