APPEAL

# United States District Court
# Eastern District of Wisconsin (Milwaukee)
# CRIMINAL DOCKET FOR CASE #: 2:14–cr–00150–RTR–4

Case title: USA v. Carter et al

Other court case number:  15–2019 USCA Billy Robinson
                            05/11/15

Magistrate judge case number:  2:14–mj–00924–NJ

Date Filed: 07/22/2014
Date Terminated: 04/30/2015

---

Assigned to: Judge Rudolph T
Randa

Appeals court case number:
15–2019

## Defendant (4)

| | | |
|---|---|---|
| **Billy J Robinson, Jr**<br>*TERMINATED: 04/30/2015* | represented by | **Craig W Albee**<br>Federal Defender Services of Wisconsin Inc<br>517 E Wisconsin Ave – Rm 182<br>Milwaukee, WI 53202<br>414–221–9900<br>Fax: 414–221–9901<br>Email: craig_albee@fd.org<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Federal Public Defender* |

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1952(a)(3) and Section 2 – RACKETEERING – TRANSPORTING IN AID OF (1s) | 42 months Imprisonment consecutive to Count 2; 3 years Supervised Relese concurrent to Count 2; Fine is waived; $100.00 Special Assessment |
| 18:1952(a)(3) and Section 2 – RACKETEERING – TRANSPORTING IN AID OF (2s) | 42 months Imprisonment consecutive to Count 1; 3 years Supervised Relese concurrent to Count 1; Fine is waived; $100.00 Special Assessment |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 21:846, 841(a)(1) and 841(b)(1)(B) | Dismissed on government's motion |

and 18:2 – CONSPIRACY TO
DISTRIBUTE CONTROLLED
SUBSTANCE
(1)


**Highest Offense Level
(Terminated)**

Felony


**Complaints**                                              **Disposition**

21:841(a)(1) and 846


**Plaintiff**

**USA**                              represented by   **William J Lipscomb**
                                                     United States Department of Justice
                                                     (ED–WI)
                                                     Office of the US Attorney
                                                     517 E Wisconsin Ave – Rm 530
                                                     Milwaukee, WI 53202
                                                     414–297–1725
                                                     Fax: 414–297–1738
                                                     Email: william.lipscomb@usdoj.gov
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*
                                                     *Designation: Assistant US Attorney*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 07/15/2014 | 1 | 8 | COMPLAINT signed by Magistrate Judge Nancy Joseph. as to Trivon E CARTER (1); Kathryn A DUVERGEY (2); Erwin J MILLER (3); Billy J ROBINSON, Jr (4). (kmf) [2:14–mj–00924–NJ] |
| 07/16/2014 | 4 | | PRETRIAL SERVICE REPORT – BOND STUDY (Sealed) filed by US Pretrial Office as to Billy J Robinson, Jr (NOTICE: Counsel for defendant is required to provide a copy of this document to the defendant. To view this document use your e–filing log–in and password.) (lm) [2:14–mj–00924–NJ] |
| 07/16/2014 | 11 | 43 | Minute Entry for proceedings held before Magistrate Judge Nancy Joseph: Initial Appearance held on 7/16/14 as to Billy J ROBINSON, Jr. Govt. seeking temp. detention. Crt. enters an order of temp. detention and sets a Detention Hearing for 7/21/2014 at 9:30 AM. (Tape #2:04:41–2:08:54) (kmf) [2:14–mj–00924–NJ] (Entered: 07/17/2014) |
| 07/16/2014 | 12 | | ORDER OF TEMPORARY DETENTION and the Scheduling of a Detention Hearing as to Billy J ROBINSON, Jr. Signed by Magistrate Judge Nancy Joseph on 7/16/14. (cc: all counsel) (kmf) [2:14–mj–00924–NJ] (Entered: 07/17/2014) |

| 07/18/2014 | 13 | | NOTICE OF ATTORNEY APPEARANCE: Craig W Albee appearing for Billy J Robinson, Jr (Albee, Craig) [2:14–mj–00924–NJ] |
|---|---|---|---|
| 07/18/2014 | 14 | | PRIOR RECORD UPDATE MEMO – (Sealed) filed by US Pretrial Office as to Billy J Robinson, Jr (NOTICE: Counsel for defendant is required to provide a copy of this document to the defendant.) (jm) [2:14–mj–00924–NJ] |
| 07/21/2014 | 19 | 44 | Minute Entry for proceedings held before Magistrate Judge Nancy Joseph: Detention Hearingheld on 7/21/14 as to Billy J ROBINSON, Jr. Govt. seeking detention. Deft. proffers for release on EM. Crt. statements before ruling. Crt. orders deft. detained. Crt. sets A &P/Prelim. hrg. for 7/28/2014 at 1:30 PM before Magistrate Judge Nancy Joseph.(Tape #9:30:41–9:41:20) (kmf)[2:14–mj–00924–NJ] (Main Document 19 replaced on 7/25/2014) (kmf). (Entered: 07/22/2014) |
| 07/21/2014 | 26 | 51 | ORDER OF DETENTION Pending Trial as to Billy J ROBINSON, Jr. Signed by Magistrate Judge Nancy Joseph on 7/21/14. (cc: all counsel) (kmf) (Entered: 07/24/2014) |
| 07/22/2014 | | | NOTICE OF HEARING as to Trivon E CARTER, Kathryn A DUVERGEY, Erwin J MILLER and Billy J ROBINSON, Jr. Arraignment and Plea hrg. set for 7/28/2014 at 1:30 PM before Magistrate Judge Nancy Joseph. (cc: all counsel)(kmf) [2:14–mj–00924–NJ] |
| 07/22/2014 | 22 | 45 | INDICTMENT as to Trivon E Carter (1) Ct 1, Kathryn A Duvergey (2) Ct 1, Erwin J Miller (3) Ct 1, Billy J Robinson, Jr (4) Ct 1. (Attachments: # 1 Information Sheet) (mlm) Modified on 7/25/2014 – (corrected minutes) (kmf). (Entered: 07/23/2014) |
| 07/28/2014 | 31 | 52 | Minute Entry for arraignment &plea held on 7/28/2014 before Magistrate Judge Nancy Joseph as to TRIVON E CARTER (1) Count 1 and BILLY J ROBINSON JR (4) Count 1. Defendant advised of rights, charges, penalties and fines. Court orders GJ materials disclosed no later than 1 business day prior to trial. Case referred to Magistrate Judge William E Callahan, Jr. Speedy Trial Date 9/30/14. Not Guilty Plea entered by Trivon E CARTER and Billy J ROBINSON JR on Ct 1. Motions due by 8/12/2014, Responses due by 8/22/2014, Replies due by 8/27/2014, Voir Dire deadline by 9/18/2014, Jury Trial set for 9/22/2014 09:00 AM in Courtroom 320, 517 E Wisconsin Ave., Milwaukee, WI 53202 before Judge Rudolph T Randa. Detention continued as previously set by Judge Joseph for both defts. (Tape #1:49:58 – 1:53:51) (mlm) (Entered: 07/30/2014) |
| 07/28/2014 | 32 | | PRETRIAL ORDER signed by Magistrate Judge William E Callahan, Jr on 7/28/14 as to Trivon E Carter, Kathryn A Du Vergey, Erwin J Miller, Billy J Robinson, Jr Motion due: 8/12/14 Response due: 8/22/14 Reply due: 8/27/14. (cc: all counsel) (mlm) (Entered: 07/30/2014) |
| 07/31/2014 | 35 | | Warrant Returned Executed on 7/16/14 as to Trivon E Carter, Kathryn A Du Vergey, Erwin J Miller, Billy J Robinson, Jr. (mlm) (Entered: 08/01/2014) |
| 08/08/2014 | 36 | 55 | Unopposed MOTION for Extension of Time to File *Pretrial Motions* by Billy J Robinson, Jr.(Albee, Craig) |
| 08/11/2014 | | | TEXT ONLY ORDER granting 36 deft Billy Robinson's Jr's Motion for |

| | | | |
|---|---|---|---|
| | | | Extension of Time to File Motions. All pretrial motions are due no later than August 22, 2014; responses due no later than September 2, 2014; replies due no later than September 8, 2014. The court finds under 18 U.S.C. § 3161(h)(7)(A) and (B)(iv) that the ends of justice served by taking this action outweigh the best interest of the public and the defendant in a speedy trial. The court makes this finding because, taking into account the exercise of due diligence, the failure to grant such a continuance would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation. The period from August 12, 2014, until August 22, 2014, is excluded under the Speedy Trial Act signed by Magistrate Judge William E Callahan, Jr on 8/11/14 (cc: all counsel) (bdf) |
| 08/22/2014 | 38 | 58 | Second MOTION for Extension of Time to File *Pretrial Motions–Unopposed* by Billy J Robinson, Jr.(Albee, Craig) |
| 08/22/2014 | 39 | 61 | Unopposed MOTION to Adjourn *Trial* by Billy J Robinson, Jr.(Albee, Craig) |
| 08/25/2014 | | | TEXT ONLY ORDER signed by Magistrate Judge William E Callahan, Jr on 4/25/14 granting 38 Motion for Extension of Time to File as to Billy J Robinson Jr (4). Motions due by 9/5/2014 Responses due by 9/15/2014 Replies due by 9/22/2014. The court finds under 18 U.S.C. § 3161(h)(7)(A) and (B)(iv) that the ends of justice served by taking this action outweigh the best interest of the public and the defendant in a speedy trial. The court makes this finding because, taking into account the exercise of due diligence, the failure to grant such a continuance would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation. The period from August 22, 2014, until September 5, 2014, is excluded under the Speedy Trial Act. (cc: all counsel) (bdf) |
| 08/29/2014 | | 64 | ORDER TO CONTINUE – Ends of Justice Signed by Judge Rudolph T Randa on 8/29/2014 APPROVING 39 Billy J Robinson, Jr's Unopposed Motion to Adjourn 9/22/2014 Jury Trial Date. Pursuant to 18 U.S.C. 3161 Sections (h)(7)(A) and (h)(7)(B)(i) &(iv) Time is excluded from 8/29/2014 to 9/5/2014. (cc: all counsel) (Zik, Linda) (Entered: 09/02/2014) |
| 09/05/2014 | 47 | 65 | MOTION to Suppress *Evidence and Request for Evidentiary Hearing* by Billy J Robinson, Jr.(Albee, Craig) |
| 09/05/2014 | 48 | 68 | MOTION for Disclosure *of Confidential Informants* by Billy J Robinson, Jr.(Albee, Craig) |
| 09/08/2014 | | | NOTICE OF CANCELLATION OF HEARING as to Trivon E Carter, Kathryn A Du Vergey, Erwin J Miller and Billy J Robinson, Jr. The 9/22/2014 Jury Trial is canceled and the 9/18/2014 Voir Dire deadline is canceled. (cc: all counsel) (Zik, Linda) |
| 09/09/2014 | 49 | | NOTICE OF HEARING ON MOTION as to Billy J Robinson, Jr 47 MOTION to Suppress *Evidence and Request for Evidentiary Hearing* Motion Hearing set for 10/9/2014 10:30 AM in Courtroom 242, 517 E Wisconsin Ave., Milwaukee, WI 53202 before Magistrate Judge William E Callahan Jr. (cc: all counsel)(bdf) |
| 09/16/2014 | 51 | 72 | MOTION GOVERNMENTS MOTION FOR RESCHEDULING OF EVIDENTIARY HEARING ON DEFENDANT ROBINSONS MOTION |

| | | | |
|---|---|---|---|
| | | | TO SUPPRESS by USA as to Billy J Robinson, Jr.(Lipscomb, William) |
| 09/16/2014 | 52 | 73 | RESPONSE by USA as to Billy J Robinson, Jr re 48 MOTION for Disclosure *of Confidential Informants* (Lipscomb, William) |
| 09/24/2014 | 53 | | NOTICE OF RESCHEDULED HEARING ON MOTION as to Billy J Robinson, Jr 47 MOTION to Suppress *Evidence and Request for Evidentiary Hearing* Motion Hearing set for 10/21/2014 09:00 AM in Courtroom 242, 517 E Wisconsin Ave., Milwaukee, WI 53202 before Magistrate Judge William E Callahan Jr. (cc: all counsel)(bdf) |
| 10/21/2014 | 55 | 75 | Minute Entry for proceedings held before Magistrate Judge William E Callahan, Jr. Evidentiary Hearing as as to Billy J Robinson, Jr held on 10/21/2014. Testimony taken. Court set following briefing schedule: deft's brief due November 21st, govt's response due December 5th and deft's reply due December 12th. (Court Reporter Sheryl) (bdf) |
| 10/31/2014 | 56 | | TRANSCRIPT of Evidentiary hearing as to Billy J Robinson, Jr held on October 21, 2014, before Judge William E. Callahan, Jr.. Court Reporter/Transcriber Sheryl L. Stawski, Contact at 414/881–0922. Transcripts may be purchased using the Transcript Order Form found on our website or viewed at the court public terminal. **NOTICE RE REDACTION OF TRANSCRIPTS:** If necessary, within 7 business days each party shall inform the Court of their intent to redact personal identifiers by filing a Notice of Intent to Redact. Please read the policy located on our website www.wied.uscourts.gov Redaction Statement due 11/24/2014. Redacted Transcript Deadline set for 12/4/2014. Release of Transcript Restriction set for 2/1/2015. (Stawski, Sheryl) |
| 11/21/2014 | 58 | 77 | LETTER *RE/Requesting Extension for Filing Brief* (Albee, Craig) |
| 11/24/2014 | | | TEXT ONLY ORDER as to Billy J Robinson, Jr granting 58 Letter requesting an extension of time. Signed by Magistrate Judge William E Callahan, Jr on 11/24/14. (cc: all counsel) (kah) |
| 12/04/2014 | 59 | 78 | LETTER *RE/Withdrawing Motion to Suppress* (Albee, Craig) |
| 12/10/2014 | 62 | 79 | ORDER ON DEFTS' PRETRIAL MOTIONS. IT IS ORDERED that Du Vergey's Motion to disclose confidential informants 37 is denied as moot; IT IS FURTHER ORDERED that Robinson's request to withdraw his motion to suppress 59 is granted; IT IS FURTHER ORDERED that Robinson's Motion to compel disclosure of confidential informant 48 is denied as moot; IT IS FURTHER ORDERED that the govt shall provide Du Vergey and Robinson notice of the identities of all confidential informants who are transactional witnesses at least thirty days before trial. signed by Magistrate Judge William E Callahan, Jr on 12/10/14 (cc: all counsel) (bdf) |
| 12/10/2014 | | | Case as to Kathryn A Du Vergey, Billy J Robinson, Jr no longer referred to Magistrate Judge William E Callahan, Jr. File Transmitted to Judge Rudolph T Randa. (bdf) |
| 12/11/2014 | 63 | | REQUEST for Copies of Documents by Billy J Robinson, Jr. (Mailed copies to Defendant Robinson at Kenosha County Dentention Center via USPS) (asc) |
| 12/12/2014 | | | |

| | | | Reset Deadlines/Hearings as to Trivon E Carter, Kathryn A Du Vergey, Erwin J Miller, Billy J Robinson, Jr: 4–day Jury Trial re–set for 2/2/2015 09:00 AM in Courtroom 320, 517 E Wisconsin Ave., Milwaukee, WI 53202 before Judge Rudolph T Randa. Proposed Voir Dire Questions and Proposed Jury Instructions due by 1/29/2015. (Zik, Linda) |
|---|---|---|---|
| 01/21/2015 | 75 | 83 | INFORMATION as to Billy J Robinson, Jr (4) Cts 1s–2s. (mlm) (Entered: 01/22/2015) |
| 01/21/2015 | 76 | 85 | PLEA AGREEMENT as to Billy J Robinson, Jr (mlm) (Entered: 01/22/2015) |
| 01/22/2015 | 77 | | NOTICE OF HEARING as to Billy J Robinson, Jr. Change of Plea Hearing set for 1/29/2015 01:30 PM in Courtroom 320, 517 E Wisconsin Ave., Milwaukee, WI 53202 before Judge Rudolph T Randa. (cc: all counsel)(Zik, Linda) |
| 01/29/2015 | 81 | 98 | Minute Entry for proceedings held before Judge Rudolph T Randa: Change of Plea Hearing as to Billy J Robinson, Jr (4) held on 1/29/2015. Guilty Plea entered as to Counts 1 &2 of the Information. Sentencing set for 4/30/2015 10:00 AM in Courtroom 320, 517 E Wisconsin Ave., Milwaukee, WI 53202 before Judge Rudolph T Randa. Defendant remanded to custody of US Marshal. (Court Reporter Heidi Trapp) (Zik, Linda) (Entered: 01/30/2015) |
| 01/29/2015 | 82 | 99 | WAIVER OF INDICTMENT by Billy J Robinson, Jr (Zik, Linda) (Entered: 01/30/2015) |
| 04/23/2015 | 96 | | PRESENTENCE INVESTIGATION REPORT (Sealed) filed by US Probation Office as to Billy J Robinson, Jr (NOTICE: Counsel for defendant is required to provide a copy of this document to the defendant. To view this document use your e–filing log–in and password.) (Attachments: # 1 Addendum+Attachment)(dd) |
| 04/23/2015 | 97 | | SENTENCING RECOMMENDATION (Sealed – for Judge only) filed by US Probation Office as to Billy J Robinson, Jr (dd) |
| 04/29/2015 | 101 | 100 | SENTENCING MEMORANDUM by Billy J Robinson, Jr (Albee, Craig) |
| 04/30/2015 | 102 | 103 | Minute Entry for proceedings held before Judge Rudolph T Randa: Sentencing held on 4/30/2015 for Billy J Robinson (4) as to Counts 1 &2 of the Information. 42 months Imprisonment as to each count to run consecutively for a total term of 84 months Imprisonment. Fine is waived. $200.00 Special Assessment. Conditions of Supervised Release imposed. SEE Judgment for additional details. Defendant remanded to custody of US Marshal. (Court Reporter Heidi Trapp) (Zik, Linda) |
| 04/30/2015 | 104 | 106 | JUDGMENT signed by Judge Rudolph T Randa on 4/30/15 as to Billy J Robinson, Jr (4), Ct 1, DISMISSED on government's motion. Ct 1s, SENT: 42 months consecutive to Count 2; SUPERVISED RELEASE: 3 years concurrent to Count 2; FINE is waived; SPECIAL ASSESSMENT: $100.00. Ct 2s, SENT: 42 months Imprisonment consecutive to Count 1; SUPERVISED RELEASE: 3 years concurrent to Count 1; FINE is waived; SPECIAL ASSESSMENT: $100.00. Conditions of Supervised Release imposed. SEE Judgment for additional details. (cc: all counsel) (mlm) (Entered: 05/01/2015) |
| 04/30/2015 | 105 | | |

| | | | |
|---|---|---|---|
| | | | STATEMENT OF REASONS (Sealed) signed by Judge Rudolph T Randa on 4/30/15 as to Billy J Robinson, Jr (NOTICE: Attorneys of record for the government and defendant may view this document using their e−filing log−in and password.) (cc: all counsel) (mlm) (Entered: 05/01/2015) |
| 05/01/2015 | 103 | | COURT'S FINDINGS TO PRESENTENCE INVESTIGATION REPORT (Sealed) filed by US Probation Office as to Billy J Robinson, Jr (NOTICE: Counsel for defendant is required to provide a copy of this document to the defendant. To view this document use your e−filing log−in and password.) (dd) |
| 05/11/2015 | 107 | 112 | NOTICE OF APPEAL by Billy J Robinson, Jr (Albee, Craig) |
| 05/11/2015 | 108 | | DOCKETING STATEMENT by Billy J Robinson, Jr re 107 Notice of Appeal (Albee, Craig) |
| 05/11/2015 | 109 | | Attorney Cover Letter re: 107 Notice of Appeal (Attachments: # 1 Docket Sheet)(jv) |
| 05/11/2015 | 110 | | Transmission of Notice of Appeal and Docket Sheet as to Billy J Robinson, Jr to US Court of Appeals re 107 Notice of Appeal. (cc: all counsel) (jv) |
| 05/13/2015 | 111 | | USCA Case Number 15−2019 re: 107 Notice of Appeal filed by Billy J Robinson, Jr. (jv) |
| 07/08/2015 | 118 | | TRANSCRIPT of Sentencing Hearing as to Billy J Robinson, Jr held on April 30, 2015, before Judge Rudolph T. Randa. Court Reporter/Transcriber Heidi J. Trapp, Contact at 414−297−3074. Transcripts may be purchased using the Transcript Order Form found on our website or viewed at the court public terminal. **NOTICE RE REDACTION OF TRANSCRIPTS:** If necessary, within 7 business days each party shall inform the Court of their intent to redact personal identifiers by filing a Notice of Intent to Redact. Please read the policy located on our website www.wied.uscourts.gov Redaction Statement due 8/3/2015. Redacted Transcript Deadline set for 8/13/2015. Release of Transcript Restriction set for 10/9/2015. (Trapp, Heidi) |

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the

Eastern District of Wisconsin

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| TRIVON E. CARTER, KATHRYN A. DUVERGEY, | )  Case No. 14-924M (NJ) |
| ERWIN J. MILLER, and BILLY J. ROBINSON, Jr. | ) |
| | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____December 2012 to the present____ in the county of ____Milwaukee____ in the

____Eastern____ District of ____Wisconsin____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, United States Code, Sections 841(a)(1) and 846 | Conspiracy to possess with the intent to distribute and distribute heroin |

This criminal complaint is based on these facts:

See attached affidavit of Special Agent Jay Novak

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Jay Novak, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____July 15, 2 014_____

_____
*Judge's signature*

City and state: ____Milwaukee, Wisconsin____

Nancy Joseph, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR CRIMINAL COMPLAINT

Jay Novak, being first duly sworn on oath, on information and belief says that:

### I.    BACKGROUND AND EXPERIENCE

1.    I am a state certified law enforcement officer currently employed by the State of Wisconsin, Department of Justice, Division of Criminal Investigation (hereinafter "DCI"), as a Special Agent and have been so employed for the last twenty one years. I am also federally deputized with the United States Department of Justice, Federal Bureau of Investigation (hereinafter "FBI"). I have specialized training and experience in narcotics smuggling and distribution investigations. During my tenure with the DCI, I have participated in over 250 narcotics investigations, and have authored over 100 affidavits supporting wire and electronic intercepts, criminal complaints, search and seizure warrants. I have debriefed more than 200 defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I am familiar with narcotics traffickers' methods of operation including the distribution, storage, importation, and transportation of narcotics, the collection of money which represents the proceeds of narcotics trafficking, and money laundering.

2.    During my tenure as a DCI agent, I have been involved primarily in the investigation of large scale narcotics traffickers operating not only in the State of Wisconsin, but also throughout the entire United States based upon the direction of my and/or other investigations that arise through the Milwaukee Office of the DCI. Due to this assignment, I have received training in the investigation of drug trafficking; I have has worked with informants in the investigation of drug trafficking in the Milwaukee area as well as other jurisdictions within the State of Wisconsin and the United States; that I have participated in the application of and execution of numerous search warrants, narcotics investigations, and arrests in which controlled

substances and drug paraphernalia were seized; that I am familiar with the street names of various drugs in the Wisconsin area including marijuana, heroin, and cocaine; that affiant is familiar with methods that are commonly used by drug dealers to package and prepare controlled substances for sale in the Wisconsin area.

3.      I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws including Title 21, United States Code, Sections 841(a)(1), 843(b), 846, 856, and other related offenses. I have had both formal training and have participated in numerous complex drug trafficking investigations, including ones using wiretaps. Based on my training, experience and participation in drug trafficking investigations and associated financial investigation involving large amounts of cocaine, crack cocaine, heroin, and/or other controlled substances, I know and have observed the following:

a. I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin as well as in other area of the United States;

b. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine and crack cocaine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

c. I am familiar with the coded language utilized over the telephone to discuss drug trafficking and know that the language is often limited, guarded and coded. I also know the various code names used to describe controlled substances;

d. I know drug dealers often put telephones in the names of others (nominees) in order to distance themselves from telephones that they use to facilitate drug distribution. Because drug traffickers go through many telephone numbers, they often do not pay final bills when they are done using a telephone number and then are unable to put another line in the name of that subscriber;

e. I know large-scale drug traffickers often purchase and/or title their assets in fictitious names, aliases or the names of relatives, associates or business entities to avoid detection of these assets by government agencies. I know that even though these assets are in the names other than the drug traffickers, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them;

2

f. I know large-scale drug traffickers must maintain on-hand large amounts of U.S. currency in order to maintain and finance their ongoing drug business;

g. I know it is common for drug traffickers to maintain books, records, receipts, notes ledgers, airline tickets, and receipts relating to the purchase of financial instruments and/or the transfer of funds and other papers relating to the transportation, ordering, sale and distribution of controlled substances. The aforementioned book, records, receipts, notes, ledger, etc., are maintained where the traffickers have ready access to them;

h. I know it is common for large-scale drug traffickers to secrete contraband, proceeds of drug sales and records of drug transactions in secure locations within their residences, their businesses and/or other locations over which they maintain dominion and control, for ready access and to conceal these items from law enforcement authorities;

i. I know it is common for persons involved in large-scale drug trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and/or expenditure of drug proceeds, such as currency, financial instruments, precious metals and gemstones, jewelry, books, records of real estate transactions, bank statements and records, passbooks, money drafts, letters of credit, money orders, passbooks, letters of credit, bank drafts, cashier's checks, bank checks, safe deposit box keys and money wrappers. These items are maintained by the traffickers within residences, businesses or other locations over which they maintain dominion and control;

j. I know large-scale drug traffickers often use electronic equipment such as telephones (land-lines and cell phones), pagers, computers, telex machines, facsimile machines, currency counting machines and telephone answering machines to generate, transfer, count, record and/or store the information described in the items above, as well as conduct drug trafficking activities;

k. I know when drug traffickers amass large proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize the following methods, including, but not limited to: domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts and otherwise legitimate businesses which generate large quantities of currency;

l. I know that the Currency Transaction Report (CTR) (IRS Form 4789), which is required to be completed and filed with the IRS by all financial institutions on every currency transaction that exceeds $10,000, causes tremendous problems with drug traffickers when they attempt to negotiate their illegal profits at a financial institution; I further know that the courts have recognized that unexplained wealth is probative

3

evidence of crimes motivated by greed, in particular, trafficking in controlled substances;

m. I know drug traffickers commonly maintain addresses or telephones numbers in books or papers which reflect names, addresses and/or telephone numbers of their associates in the trafficking organization; and

n. I know drug traffickers take or cause to be taken photographs or videos of themselves; their associates, their property and their drugs. These traffickers usually maintain these photographs or videos in their possession.

o. I am familiar with computers, cellular telephones, smartphones and their uses by drug traffickers to communicate with suppliers, customers, and fellow traffickers; Drug traffickers use these devices to record their transactions and aspects of their lifestyle related to drug dealing, whether in the form of voicemail, email, text messages, video and audio clips, floppy disks, hard disk drives, thumbnail drives, CD's, DVD's, optical disks, Zip disks, flash memory cards, Smart media and any data contained within such computers or cellular telephones, electronic storage media and other settings particular to such devices; I know that such devices automatically record aspects of such communications, such as lists of calls and communications, and any particularized identification assigned to those source numbers or email addresses by the owner of the devices.

p. Specifically, I know the following information can be retrieved to show evidence of use of the computer to further the drug trade; Computer systems and cellular telephones, including but not limited to system components, input devices, output devices, data storage devices, data transmission devices, and network devices and any data contained within such systems; and computer media and any data contained within such media and other material relating to computer systems and the internet including but not limited to, documentation, operating system software, application or access program disks, manuals, books, brochures, or notes; and computer access codes, user names, log files, configuration files, and passwords, screen names, email addresses, IP addresses and cellular / wireless telephones, SIM cards, any removable storage devices for telephones, and any data contained therein, including but not limited to stored telephone numbers, recently called numbers list, text messages, digital audio and / or video recordings, pictured, settings, and any other user defined settings and / or data.

## II.   PROBABLE CAUSE

4.      I submit that there exists probable cause to believe that between August of 2012 and the present Trivon E. Carter, (DOB:xx/xx/1979), Kathryn Duvergey (DOB:xx/xx/1981), Erwin Miller (DOB:xx/xx/1974), and Billy Robinson (DOB:xx/xx/1979) were members of a

4

conspiracy to distribute large quantities of heroin in the Eastern District of Wisconsin, and elsewhere, in violation of laws of the United States including: 21 U.S.C. §§ 841(a)(1), and 846.

5.      Because this affidavit is submitted only for the purpose of supporting an application for a criminal complaint I have not included every fact known to me or other law enforcement officers about this investigation.

6.      Since 2012, special agents of the Wisconsin Department of Justice, Division of Criminal Investigation have been investigating a group of individuals who were involved in the distribution of heroin and cocaine base in the Milwaukee area. The investigation later focused on a source of supply for the group, who was identified by a confidential informant (hereinafter "CI-1") as a black male named "Tre."

7.      In December 2012, case agents arrested four individuals on arrest warrants issued by the Honorable Nancy Joseph in the Eastern District of Wisconsin charging the subjects with conspiracy to distribute heroin and cocaine base. The four individuals, including CI-2 and CI-3 referred to below, were subsequently indicted on charges of conspiracy to distribute heroin and cocaine base. Both CI-2 and CI-3 provided me with information about their group and its sources of supply, including "Tre," subsequently identified as Trivon Carter.

8.      I believe that the information set forth below from CI-2 and CI-3 is reliable because CI-2 and CI-3 provided information independently and the information set forth below was consistent with evidence obtained elsewhere in this investigation and substantial portions of the information provided by CI-2 and CI-3 has been corroborated through independent investigation, including recorded conversations, surveillance, information from other sources and subsequent controlled buys and undercover officer buys made by case agents.

5

9.      CI-2 and CI-3 were not forthcoming in initial interviews. CI-2 did not divulge complete information but the information he/she provided that is recounted here has been corroborated by CI-3 and subsequent CI's developed during the investigation. While CI-3 initially was not forthcoming and particularly was not completely truthful as to CI-3's involvement in the drug conspiracy, he/she later did provide a more complete and detailed statement. The information provided by CI-3 recounted below has been corroborated by CI-2, other CI's, and independent law enforcement investigation.

10.     In December 2012, during a post arrest, *Mirandized* statement, CI-2 stated that a heroin source of supply for the group was a black male named "Tre." CI-2 later identified a photograph of Trivon Carter as the person CI-2 knew as "Tre." CI-2 said that Carter resides on the east side of North 28th Street, south of West Burleigh Avenue in Milwaukee. This is consistent with the known residence of Trivon Carter as elsewhere described in this affidavit. CI-2 told me that CI-3 obtained heroin from Carter during the fall of 2012 and then distributed the heroin to CI-2 and others.

11.     In January 2013, CI-3 provided a proffer statement under an agreement that the information would not be used directly against CI-3. CI-3 told me that "Tre," subsequently identified by CI-3 through a photograph as Trivon Carter, was CI-3's source of supply for heroin from August of 2012 until the time of CI-3's arrest in December 2012. CI-3 stated that he/she had obtained 25 to 50 gram quantities of heroin from Carter on approximately 8 or 9 occasions and 10 to 15 gram quantities on approximately 7 or 8 occasions. Carter charged CI-3 $115.00 per gram. CI-3 provided 414-349-7217 as Carter's cellular telephone number, specifically described vehicles that Carter had driven, and stated that Carter resides in the upper unit of a two family dwelling on the eastside of North 28th Street, near West Chambers Street in Milwaukee,

6

consistent with information developed by law enforcement as related elsewhere in this affidavit and as related by CI-2.

12.    CI-3 further stated that he/she knew from Carter that Carter travels to Chicago, IL weekly to obtain multi-hundred gram quantities of heroin from a Chicago based source of supply. CI-3 also stated that a female individual named "Katie" and a white male, believed to be named "TJ," reside in the lower unit of Carter's residence and are involved in assisting Carter in distributing heroin. CI-3 stated that CI-3 had observed Carter carrying a firearm and that two of the firearms seized from CI-3's residence at the time of CI-3's arrest in December of 2012 belonged to Carter. CI-3 stated Linda Bell is the mother of Carter and Linda Bell owned and resided at the residence where CI-3 had been arrested and where drugs and firearms were seized in December of 2012.

13.    CI-2 provided a proffer statement in May 2013 during which CI-2 stated that in 2012 CI-2 accompanied CI-3 to Carter's residence on N. 28th Street, south of W. Burleigh Ave. in Milwaukee where Carter displayed two types of heroin to CI-2 and CI-3, one of which would cost $150 per gram and the other $115 per gram. CI-2 provided money to CI-3 which CI-3 combined with CI-3's own funds and gave to Carter who then picked up the heroin from a source of supply in Chicago.

14.    CI-2 advised that initially he/she provided CI-3 with money that they used to obtain 10 grams of heroin from Carter. Within a months' time, they had increased the amount they obtained from Carter to 15 grams per week. CI-2 then began providing money to CI-3 to purchase 25 gram amounts once a week for approximately 3 months from Carter prior to the arrests of CI-2 and CI-3 in December 2012.

7

15.     Case agents have reviewed cellular telephone data for phones used by CI-2 and CI-3 during 2012. Case agents found that between June 30, 2012 and December 17, 2012, there were over 700 telephone contacts between the cellular number of CI-3 and the cellular number provided by CI-3 for Carter (414-349-7217).

16.     In 2013, I received information from other law enforcement agents, including investigators from the Milwaukee Metropolitan Drug Enforcement Group and the Oak Creek Police Department regarding this investigation. I also obtained additional information from two additional confidential informants (hereinafter "CI-4" and "CI-5").

17.     I believe CI-4 and CI-5 to be reliable because they provided information independently to other law enforcement agencies that was separately corroborated and was consistent with information from other CIs and information otherwise developed by investigators. I have discussed this information with law enforcement officers to whom they provided the information.  The information provided by CI-4 and CI-5 as recounted here is consistent with evidence obtained elsewhere in this investigation and substantial portions of the information provided by CI-4 and CI-5 has been corroborated through independent investigation, including recorded conversations, surveillance, information from other sources and subsequent controlled buys and undercover officer buys made by case agents.  The information provided by both CI-4 and CI-5 was substantially against the penal interest of each.

18.     For his assistance to law enforcement, CI-4 received consideration on a potential state misdemeanor charge.  Due to CI-4's cooperation, no charge was issued. CI-4 did not receive any monetary compensation in return for his/her assistance and information.

19.     CI-5 received consideration at sentencing on felony state drug charges. CI-5 did not receive any monetary compensation in return for his/her assistance and information.

8

20.     CI-4 identified "Tre" as Trivon Carter via photograph and CI-4 identified Carter's residence as 3022 N. 28th Street, Milwaukee which is consistent with the description and address provided by CIs 2 and 3. CI-4 also informed case agents that Carter previously used telephone number 414-349-7217, the number CI-3 reported using to contact "Tre" (Carter). CI-4 advised that Carter changed his cellular telephone number from 414-349-7217 to 414-699-1880. CI-5 identified "Katie" as Katheryn Duvergey who resides in the lower unit of Carter's residence at 3020 N. 28th Street. CI-5 advised that he/she had purchased quantities of heroin from Duvergey in the past and both CI-4 and CI-5 identified a green Ford Expedition that Duvergey regularly used when delivering quantities of heroin to customers. CI-4 identified a green Ford Expedition as Carter's vehicle.

21.     Based upon my training and experience, I know that a "controlled buy" is a law enforcement operation in which an informant purchases drugs from a target. The operation is conducted using surveillance, many times with audio and / or videotaping equipment, and pre-recorded purchase money. When an informant is used, he/she is searched for contraband, weapons and money before the operation. Also many times the informant is wired with a concealed body recorder and / or monitoring device. When the transaction is completed, the informant meets case agents at a predetermined meet location and gives the purchased drugs and the recording / monitoring equipment to the case agents. The informant is again searched for contraband, weapons and money. Additionally, telephone calls made by the informant while under the direction and control of case agents are usually recorded.

22.     Between February 27, 2103 and March 22, 2013, investigators utilized CI-4 to conduct several controlled purchases of quantities of less than two grams of heroin at a time from Duvergey. The suspected heroin was field tested on each occasion and field tested positive for

9

the presence of heroin. Duvergey was driving a green Ford Expedition during each of the transactions, with multiple license plates on the vehicle. One of the license plates was registered to Duvergey for the Expedition, but the registration was expired.

23.    On March 19, 2013, an undercover investigator placed a call to Kathryn Duvergey at telephone number 414-460-9051 and arranged to purchase one gram of heroin from Duvergey for $180.00. The undercover investigator met Duvergey in the 6000 block of West Chambers Street, Milwaukee. Duvergey was driving the green Ford Expedition. Duvergey delivered a bag containing heroin to the undercover investigator who in turn handed Duvergey $180.00 in buy fund monies. After Duvergey began to drive from the area, the undercover investigator received a call from Duvergey at 414-460-9051. Duvergey and the investigator discussed that Duvergey had misunderstood what the investigator had wanted to purchase and Duvergey had only given the investigator a half gram. Duvergey and the investigator again met and Duvergey handed the investigator another bag containing an additional half gram of heroin. During the transaction Duvergey told the investigator that if the investigator were stopped by the police that the investigator should hide the heroin in the investigator's buttocks. The investigator field tested the substances which field tested positive for the presence of heroin and weighed a total of 1.1 grams.

24.    On March 22, 2013, the undercover investigator placed a call to Kathryn Duvergey at telephone number 414-460-9051 and arranged to purchase one and a half grams of heroin from Duvergey for $270.00. The undercover investigator, wearing an audio recording device, met Duvergey in the 6100 block of West Chambers Street, Milwaukee. Duvergey was again driving the green Ford Expedition. Duvergey delivered three bags containing purported heroin to the undercover investigator who in turn handed Duvergey $270.00 in buy fund monies.

10

During conversation between the undercover investigator and Duvergey, Duvergey stated that the undercover investigator could obtain heroin for $170.00 per gram if the investigator purchased four or more grams at a time. The investigator field tested the substances which field tested positive for the presence of heroin and weighed a total of 1.6 grams.

25.     Just prior to the March 22 transaction, surveillance agents observed Duvergey exit the residence at 3020/3022 N. 28th Street and enter the green Ford Expedition. Duvergey then drove to the 6100 block of West Chambers and conducted the transaction with the investigator. Surveillance agents also observed Erwin Miller and Trivon Carter exit 3020/3022 N. 28 Street after Duvergey left. Investigators then observed Duvergey arrive back at 3020/3022 N. 28 Street in the green Ford Expedition and enter the residence.

26.     On April 18, 2013, CI-4 placed a recorded call to Trivon Carter at telephone number 414-699-1880 which Carter did not answer. Carter then returned the CI's call which was recorded. The CI stated that the CI needed to see Carter (which I believe was a reference to needing to purchase heroin) and Carter asked if the CI had called "Katey" (which I believe was a reference to Kathryn Duvergey). The CI stated the CI had not and Carter then directed the CI to call "Katey" as Carter was not around. The CI then called Duvergey at telephone number 414-460-9051 and arranged to purchase two grams of heroin from Duvergey.

27.     CI-4 was then surveilled to the Wendy's restaurant in the 633 W. North Ave., Milwaukee where he/she purchased two grams of heroin from Duvergey for $360.00 in pre-recorded buy fund money. Duvergey again drove the green Ford Expedition to the transaction. An investigator field tested the substances which field tested positive for the presence of heroin and weighed a total of 1.9 grams.

11

28.     On March 6, 2013, the Honorable Patricia J. Gorence signed pen register and trap and trace orders for the cellular telephone bearing mobile identification number 414-699-1880.

29.     On March 11, 2013, under 11-M-208, the Honorable Patricia J. Gorence signed a warrant authorizing the disclosure of data including location monitoring data relating to cellular telephone bearing mobile identification number 414-699-1880.

30.     On March 22, 2013, the Honorable Patricia J. Gorence signed a warrant for an electronic tracking device to be installed on the green 1999 GMC Sierra pickup, at that time having WI license FC9291, registered to Erwin J. Miller. Investigators had observed Carter driving this vehicle on numerous occasions and this was a vehicle identified by CI-3 as the vehicle utilized by Carter to travel to Chicago to pick up quantities of heroin. Investigators were subsequently able to affix a GPS tracking device on the vehicle.

31.     Upon a review of the pen register and trap and trace data of the 414-699-1880 number used by Carter, S/A Novak observed that Carter has frequent contact with Chicago telephone numbers and with the cellular telephone numbers of Kathryn Duvergey and Erwin Miller.

32.     Upon a review of the GPS data from the GMC Sierra pickup and the location monitoring data of telephone number 414-699-1880 from March of 2013, S/A Novak observed that the vehicle and cellular telephone made multiple trips to Chicago, with a brief stay of less than one hour in Chicago before returning to Milwaukee. Based upon my training and experience, I believe this is consistent with conducting a drug transaction.

33.     In early April, 2013, through a review of the pen register and trap and trace data of Carter's cellular telephone number 414-699-1880 and a review of call detail records of Chicago area numbers frequently called by 414-699-1880, another cellular telephone number,

12

414-627-6262 was identified through law enforcement and public databases as being used by Carter.

34. On April 16, 2013, the Honorable William E. Callahan Jr., signed pen register and trap and trace orders for target cellular telephone bearing mobile identification number 414-627-6262.

35. On April 19, 2013, investigators observed via the location monitoring data from the GPS on the GMC Sierra pickup and Carter's cellular telephone 414-699-1880 that both were enroute to the Chicago area. Investigators subsequently observed Duvergey, Carter and Miller in the GMC Sierra, with Duvergey as the driver, travel to and park at a location in Chicago. Investigators observed Carter exit the vehicle, enter another vehicle briefly and quickly exit the other vehicle, returning carrying a bag. Carter reentered the GMC Sierra and the vehicle travelled back to Milwaukee and went directly to 3020-3022 N. 28th Street. Based on my training and experience, the activity is consistent with a drug transaction.

36. On April 26, 2013, the Honorable William E. Callahan Jr. signed warrants authorizing the disclosure of data including location monitoring data relating to cellular telephone bearing mobile identification number 414-627-6262 and cellular telephone bearing mobile identification number 414-699-1880.

37. On May 2, 2013, the Honorable Patricia J. Gorence signed an extension for pen register and trap and trace orders for the cellular telephone bearing mobile identification number 414-699-1880.

38. Case agents reviewed pen register and trap and trace data from both 414-699-1880 and 414-627-6262, and observed both telephone numbers had a large volume of calls with the same Chicago area telephone numbers believed to be used by Carter's source of supply.

13

39.     Between April 23, 2013 and July 10, 2013, investigators observed via the location monitoring data from the GPS on the GMC Sierra pickup and Carter's cellular telephones that Carter made numerous short duration trips to Chicago, Illinois which are consistent with drug transactions.

40.     On multiple trips, including the ones on May 8, 2013, June 20, 2013, and July 10, 2013, investigators observed Carter, Duvergey, and Miller travel to Chicago and go to the same area as on April 19, 2013. On these trips, investigators observed Carter meet in Chicago with the same individual that Carter met with on April 19. Carter then drove back to Milwaukee in the GMC Sierra with Duvergey and Miller. Based on the observations of investigators and my training and experience, I believe these trips to be for the purpose of Carter obtaining heroin for distribution in the Milwaukee area.

41.     From surveillance, investigators identified the individual that Carter met with in Chicago on April 19, 2013. Investigators found that the individual was a target in a previous federal heroin investigation in the Chicago area.

42.     On numerous occasions, including an additional trip on July 18, 2013 when location monitoring data revealed Carter's cellular telephone number 414-672-6262 travelling to the same area as on April 19, May 8, June 20, and July 10, 2013, Carter, Duvergey and Miller were observed travelling directly back to Carter's residence on N. 28 Street after returning from Chicago.

43.     On June 4, 2013, a Sprint Nextel representative informed case agents that on June 2, 2013 Carter changed his cellular number from 414-699-1880 to 414-484-3148, though the ESN remained the same.

14

44.    On June 5, 2013, the Honorable Patricia J. Gorence signed pen register and trap and trace orders for the cellular telephone bearing mobile identification number 414-484-3148.

45.    On June 6, 2013, the Honorable William E. Callahan Jr. signed warrants authorizing the disclosure of data including location monitoring data relating to cellular telephone bearing mobile identification number 414-627-6262 and cellular telephone bearing mobile identification number 414-484-3148.

46.    On June 13, 2013, the Honorable William E. Callahan Jr. signed extensions for pen register and trap and trace orders for the cellular telephone bearing mobile identification number 414-672-6262.

47.    On July 19, 2013, the Honorable William E. Callahan Jr. signed warrants authorizing the continued disclosure of data including location monitoring data relating to cellular telephone bearing mobile identification number 414-627-6262 and cellular telephone bearing mobile identification number 414-484-3148.

48.    During the week of July 29, 2013, S/A Novak was advised by a Milwaukee Police Department Detective that a confidential informant (CI-6) had advised that in the week prior CI-6 had spoken with an individual who was a heroin customer of Carter and Carter had advised the individual that Carter had recently found two GPS units on vehicles used by Carter and/or his associates.

49.    Investigators had previously installed a GPS unit on Carter's GMC Sierra pickup and the GPS unit had stopped functioning.

50.    In July 2013, a Special Agent with DCI had also installed a GPS unit on the vehicle of a heroin distributor associated with Carter and the GPS unit stopped functioning within a week with the last recorded reading showing the vehicle at Carter's residence. The DCI

15

Special Agent subsequently checked that vehicle and determined that the GPS unit was no longer affixed to the vehicle.

51.    On August 9, 2013, investigators conducted physical and technical surveillance at Carter's residence and based upon cellular locating equipment were able to determine that Carter's cellular telephone 414-484-3148 was being carried by another individual who was acting as a lookout at the residence, that is, continually approaching the positions of the investigators who were conducting surveillance and then returning to Carter's residence. S/A Novak had previously observed this same subject driving a vehicle frequently observed parked behind Carter's residence during all hours of the day and night. I subsequently identified this individual as James Carter, the brother of Trivon Carter, from photographs.

52.    On August 30, 2013, the Honorable William E. Callahan Jr. signed warrants authorizing the continued disclosure of data including location monitoring data relating to cellular telephone bearing target mobile identification number 414-627-6262 and cellular telephone bearing mobile identification number 414-484-3148.

53.    I subsequently reviewed the location monitoring data from cellular telephone number 414-484-3148, which had been used by Trivon Carter, and determined that it was frequently being utilized and travelling to different locations during daytime hours than Trivon Carter's other cellular telephone number -- 414-672-6262. I further observed via the location monitoring data that both of Carter's cellular telephones are located in the vicinity of Carter's residence on a daily basis. I believe this is consistent with James Carter using the 484-3148 phone previously used by Trivon Carter.

54.    On September 6, 2013, the Honorable Patricia J. Gorence signed a warrant authorizing the disclosure of data including location monitoring data relating to cellular

16

telephone bearing mobile identification number 773-953-9760, a new number utilized by the subject believed to be Trivon Carter's Chicago heroin source based on analysis of telephone data.

55.     On August 27, August 30, September 4, September 13, September 20, September 25, September 28, and October 5, 2013, I observed via location monitoring data that Trivon Carter's cellular telephone number 414-672-6262 travelled during the late morning and early afternoon hours to the same area where, as described above, Trivon Carter had met his heroin source in the Chicago area and then returned to his Milwaukee residence.

56.     I reviewed the location monitoring data for the cellular telephone number 773-953-9760 (believed to be used by heroin source) for September 13, 2013. The location data for cellular number 773-953-9760 revealed travel to the same area in Chicago where the 414-627-6262 phone was then located.

57.     Since October 5, 2013, Carter has made numerous additional trips to Chicago, most of which were to the same area where Carter met the Chicago heroin source on previous occasions. These trips were identified via the location monitoring data of telephone number 414-627-6262 were also of short duration. Carter travelled to Chicago on October 13, 21, 31 and November 4, 8, 13 and 18, 2013.

58.     During the trip on November 18, 2013, investigators in Chicago, Illinois observed Trivon Carter arrive in the University of Illinois Chicago area -- which was the area where Carter and the Chicago heroin source met on previous occasions. Investigators observed the vehicle known to be utilized by the Chicago heroin source arrive in the area. Investigators observed the vehicle to be operated by an associate of the Chicago heroin source, as known to local law enforcement in Chicago.  Trivon Carter entered the vehicle very briefly, exited and reentered his

17

vehicle and drove from the area. Surveillance was conducted of the vehicle and the associate was observed meeting with another vehicle being driven by the Chicago heroin source. Investigators had previously observed this vehicle at a residence associated with the Chicago source on numerous occasions, and the surveilled vehicle was also observed parked at this same residence.

59.    S/A Novak reviewed the location monitoring data from Carter's cellular telephone, telephone number 414-627-6262 for November 18, 2013 and observed that the telephone was then traveling back toward Milwaukee from Chicago. On the dame date, S/A Novak subsequently observed Carter arrive at his residence in the vehicle observed by investigators in Chicago. S/A Novak observed that Erwin Miller was the driver of the vehicle, Carter was the front seat passenger, and Kathryn Duvergey was the other passenger. All three subjects then entered Carter's residence.

60.    On August 9, October 8 and December 4, 2013, and February 4, 2014, the Honorable William E. Callahan Jr. signed pen register and trap and trace orders for Carter's cellular telephone number 414-627-6262.

61.    On February 3, 2014, the Honorable Nancy Joseph signed pen register and trap and trace orders for Carter's cellular telephone number 414-627-6262.

62.    On August 30 and November 7, 2013, the Honorable Nancy Joseph signed pen register and trap and trace orders for the cellular telephone bearing mobile identification number 414-374-6907, which was identified as a second cellular telephone being utilized by Trivon Carter.

63.    On November 22, 2013, the Honorable William E. Callahan Jr. signed a warrant authorizing the continued disclosure of data including location monitoring data relating to Carter's cellular telephone number 414-627-6262.

18

64.     Since November 18, 2013, S/A Novak has reviewed location monitoring data on Trivon Carter's cellular telephone number 414-627-6262 and found that the telephone has travelled to Chicago on numerous dates including on November 27, December 2, 6, 13, 18, 22, 23, 28, and 30, 2013 and January 1, 4, 11, 13, 15, 16, 19, 20, 21, and 23, 2014, and February 1, 4, 11, 13, 15, 18, and 24, 2014.  On many of these dates, the target telephone travelled to the area in Chicago where Carter had met with the Chicago heroin source as described above.

65.     On December 13, 2013, CI-4 had telephonic contact with Kathryn Duvergey and spoke to both Duvergey and Trivon Carter during the call. CI-4 inquired about obtaining a quantity of heroin and Duvergey and Carter told CI-4 that they were enroute to obtain heroin and would be able to supply CI-4 with heroin in the afternoon on that date.

66.     S/A Novak reviewed the location monitoring data from Trivon Carter's telephone for December 13, 2013 – the date of the call described immediately above -- and observed that Carter's cellular telephone travelled to the Chicago area during the late morning hours and returned to Milwaukee at approximately 1:30 P.M., which is consistent with Carter's pattern of meeting the Chicago heroin source during the noon hour on dates when Carter travels to Chicago to meet the source.  The travel is also consistent with the information provided to CI-4.

67.     On January 8, 2014, the Honorable William E. Callahan Jr. signed a warrant authorizing the continued disclosure of data including location monitoring data relating to Trivon Carter's cellular telephone number 414-627-6262.

68.     On January 8, 2014, the Honorable William E. Callahan Jr. signed pen register and trap and trace orders for Trivon Carter's cellular telephone number 414-374-6907.

69.     In the past 7 months, CI-4 contacted Kathryn Duvergey at a new cellular telephone number -- 773-993-9337.

19

70.    A review of the call data for Trivon Carter and the Chicago heroin source revealed that between October 28, 2013 and November 1, 2013, Duvergey's cellular telephone number 773-993-9337 had multiple contacts with the prior cellular telephone number of the Chicago heroin source, 773-469-0584. Duvergey's cellular telephone number 773-993-9337 also had contacts with Trivon Carter's cellular telephone number 414-627-6262 through January 28, 2014.

71.    On January 29, 2014, the Honorable Nancy Joseph signed pen register and trap and trace orders for Duvergey's cellular telephone number 773-993-9337.

72.    On February 4, 2014, the Honorable Patricia J. Gorence signed a warrant authorizing the disclosure of data including location monitoring data relating to Duvergey's cellular telephone number 773-993-9337.

73.    Since February 4, 2014, S/A Novak has reviewed the location monitoring data from Duvergey's telephone number 773-993-9337 and observed that the target telephone travelled to Chicago on numerous dates including February 15, 24, March 3, 11, 22, 28 and April 7, 14, 18, 23 and 28, 2014. On many of these dates, the location monitoring data also showed that the target telephone travelled to the area in Chicago where Carter had met with the Chicago heroin source as described above. My review of the location monitoring data on Trivon Carter's 414-627-6262 cellular telephone showed that Carter's cellular telephone also travelled to the same area and the same time as Duvergey's cellular telephone on February 15, 2014.

74.    On March 3, 2014, the Honorable Nancy Joseph signed a warrant authorizing the disclosure of data including location monitoring data relating to Trivon Carter's cellular telephone number 414-627-6262. The previous warrant had expired and therefore data was not available between February 20 and March 4, 2014.

20

75.     My review of location monitoring data from Trivon Carter's cellular telephone 414-627-6262 from March 11, 2014, shows that Carter's cellular telephone was powered off at the same time that data from Duvergey's telephone, 773-993-9337, showed that it was traveling to Chicago. Data shows that Carter's phone was powered back up after Duvergey's cellular telephone returned to Milwaukee. I believe that this is consistent with the two travelling together and using Duvergey's phone to communicate with the Chicago source and others during the trip.

76.     On March 24, 2014, the Honorable William E. Callahan Jr. signed a warrant authorizing the continued disclosure of data including location monitoring data relating to Duvergey's cellular telephone number 773-993-9337.

77.     In April 2014, a Milwaukee Police Department Detective assigned to the Milwaukee HIDTA contacted S/A Novak and advised that he had developed a confidential informant (hereafter CI-7) who had provided the detective with information regarding Trivon Carter, Kathryn Duvergey, and others.

78.     I believe CI-7 to be reliable because the CI provided information independently to another law enforcement agency and this information is consistent with the information disclosed herein. The information is consistent with evidence obtained elsewhere in this investigation and substantial portions of the information provided by CI-7 has been corroborated through independent investigation, including surveillance, information from other sources, and a subsequent controlled buy made by case agents.

79.     CI-7 is cooperating with law enforcement to obtain consideration for another individual who is facing a felony drug charge. CI-7 has received a small amount of monetary compensation to cover expenses related to his/her assistance to law enforcement.

21

80.     S/A Novak spoke with CI-7 who advised that Carter, Duvergey and Miller took trips on a weekly basis to Chicago, IL to pick up large quantities of heroin, which the CI believed to be 150 – 250 gram quantities, from Carter's source of supply and they would drive to Chicago in the green GMC Sierra. CI-7 also stated that Carter and Duvergey commonly secreted the heroin in their buttocks area as Carter believed it was safest to transport drugs in this manner as the police would not search that area of their person if they were to be stopped. Carter also required customers to secrete the heroin in their buttocks when they left Carter's residence after buying heroin. CI-7 advised that he/she learned this information from personal observations and from conversations with and between Trivon Carter, Miller, and Duvergey.

81.     CI-7 also stated that he/she observed directly that Carter owned the residence at 3020/3022 N. 28 Street and lived in the upper unit (3022) and that Duvergey and Miller lived in the lower unit (3020). CI-7 observed that Carter had done a large amount of remodeling of the residence which included new siding, roof, outdoor shed, and interior remodeling including currently making the basement into a game room. CI-7 stated Carter previously had a shooting range in the basement where he and others would shoot small caliber rifles. CI-7 stated Carter had firearms in his residence and Duvergey also commonly carried one as she had a concealed weapons permit. Miller also commonly carried a small caliber pistol in his pants pocket when he was out of the residence. CI-7 stated that he/she observed that Carter had cameras mounted on the exterior of the residence to watch for police and there were monitors to view the cameras in both the upper and lower units.

82.     CI-7 stated he/she observed that Duvergey was a primary distributor of heroin for Trivon Carter. CI-7 advised that he/she had been told by Carter that Carter recently stopped supplying Duvergey with heroin because she was using too much which led to an argument with

22

Duvergey. CI-7 stated that he/she was told by Carter and Miller that Carter supplied Miller with heroin in exchange for Miller doing handiwork on vehicles, Carter's residence, and other jobs along with being the driver when Carter picked up shipments of heroin. Carter and Duvergey sold half gram quantities of heroin for $80.00 and gram quantities for $160.00.

83.     CI-7 identified Billy J. Robinson Jr. as Trivon Carter's cousin from Chicago. CI-7 learned from Carter that Robinson is currently one of Carter's main distributors. CI-7 believed Robinson was also residing with Carter in Carter's residence, the upper unit at 3022 N. 28th Street.

84.     CI-7 identified Carter's prior cellular telephone number as 414-672-6262, which is a number known to law enforcement, as well as a new number for Carter -- 773-454-5101. CI-7 stated Robinson would frequently answer this telephone when Carter was unavailable or when Robinson was handling transactions for Carter.

85.     CI-7 identified James Carter as Trivon Carter's brother. CI-7 advised me that James Carter acts as a lookout during drug transactions that occurred near Trivon Carter's residence and is a trusted member of the group. CI-7 stated that he/she observed James Carter at Trivon Carter's residence on a daily basis and observed James driving Trivon Carter's vehicles as well as rental vehicles.

86.     CI-7 identified Tierra Kittler as the girlfriend of James Carter and advised me that James Carter moved to a residence on North 48th Street in Milwaukee with Kittler during the past two months. CI-7 stated Carter and Kittler previously resided in an apartment off West Mill Road in Milwaukee.

87.     Over the past 9 months, I have observed James Carter driving rental vehicles on frequent occasions near Trivon Carter's residence and acting as a lookout on numerous occasions

including multiple occasions when he approached undercover law enforcement vehicles conducting surveillance.

88.    On April 14, 2014, S/A Novak was advised by CI-7 that Trivon Carter and Duvergey were travelling to Chicago during the morning hours on that date to obtain heroin. S/A Novak conducted surveillance after observing that the location monitoring data of Duvergey's cellular telephone revealed the telephone was travelling to the Illinois area during the mid-morning hours. S/A Novak then observed the green GMC Sierra arrive back at Trivon Carter's residence 3020/3022 N. 28th St. at the same time that the location monitoring data showed Duvergey's phone arriving back in Milwaukee and returning to area of the residence. S/A Novak observed Trivon Carter and Duvergey exit the vehicle with a third individual before entering the residence.

89.    On April 17, 2014, the Honorable Nancy Joseph signed a tracking warrant for the green 1999 GMC Sierra pickup truck, bearing temporary Wisconsin registration E70490, VIN 1GTGK29U0XZ505598. Law enforcement was unable to install the tracking device during the following 10 day period due to equipment availability and personnel scheduling issues and requested that a new tracking warrant be issued. On May 2, 2014, the Honorable William E. Duffin signed a tracking warrant for the green 1999 GMC Sierra pickup truck, bearing temporary Wisconsin registration E70490, VIN 1GTGK29U0XZ505598.    On May 7, 2010, law enforcement installed a tracking device on the GMC Sierra. On May 20, 2014, law enforcement installed a new tracking device on the GMC Sierra after it was determined that the one installed on May 7, had stopped functioning, and was no longer positioned on the vehicle. It is unknown whether the GPS unit was located by the targets in this investigation or it became detached from the vehicle by some other means.

24

90. On June 14, 2014, the Honorable Patricia J. Gorence signed a tracking warrant for the green 1999 GMC Sierra pickup truck, bearing temporary Wisconsin registration E70490, VIN 1GTGK29U0XZ505598.

91. On June 26, 2014, CI-7 placed a call, which was monitored by investigators, to Trivon Carter at 773-454-5101 and arranged to purchase a half gram of heroin from Trivon Carter for $80.00. An undercover investigator drove CI-7 to the area of Carter's residence at 3020/3022 N. 28th Street, Milwaukee. CI-7 then had contact Billy J. Robinson Jr. at 773-454-5101, the phone used by Trivon Carter. Robinson told the CI to meet Robinson in the alley south of Carter's residence. CI-7 was advised by Robinson and Carter during phone calls that they believed there was an undercover police vehicle parked to the east of Carter's residence. An undercover investigator was parked on North 27th Street watching the rear of the residence during this time and observed Carter looking out a second floor window in the direction of the investigator. Investigators also observed James Carter exit the side door of 3020/3022 N. 28th Street and walk around the block and subsequently circle the vehicle of the undercover investigator while talking on a cellular telephone. Investigators observed Billy Robinson Jr. exit the side door at 3020/3022 N. 28 Street and walk south in the alley and meet with CI-7 in the alley in the 2900 block of N. 28 Street. CI-7 obtained the half gram of heroin from Robinson and handed Robinson the $80.00 in buy fund monies. Investigators then observed Robinson walk back to and reenter 3020/3022 N. 28 Street and shortly thereafter exit the residence and drive from the area in the green GMC Sierra. The investigator field tested the substance which field tested positive for the presence of heroin and weighed .5 grams.

92. I reviewed pen register and trap and trace data on the cellular telephone number 414-460-3410, believed to be used by James Carter, for June 26, 2014 and observed numerous

25

calls with the cellular telephone number of Trivon Carter, 773-454-5101, and also a cellular number of 773-354-7842, identified by Billy Robinson as his cellular telephone number during a contact with law enforcement on June 26, 2014. The calls took place during the time CI-7 was in the area of Carter's residence and conducting the transaction with Billy Robinson, consistent with all three individuals being involved in the transaction.

## IV. Evidence by Location

### A. 3020 and 3022 North 28th Street, Milwaukee (the residences of Trivon Carter, Kathryn Duvergey, and Erwin Miller used in drug transactions)

93. As set forth above, 3022, the upper, is the residence of Trivon Carter. 3020 is the lower unit shared by Kathryn Duvergery and Erwin Miller. Duvergery and Miller are heroin users who also work for Carter in making regular trips to Chicago to obtain heroin for distribution in Milwaukee and in distributing heroin for Carter in Milwaukee. Based on controlled purchases of heroin from the group over the past year it is clear that the group has heroin on hand at this location as both Duvergery and more recently Robinson have come directly from this residence to deliver heroin. Additionally, when the group returns from trips to Chicago to pick up heroin they have driven directly back to this location. I believe that within both units at this location there is now a supply of heroin, heroin processing materials, cash, and other assets that are the proceeds of heroin trafficking, and documents and other records of heroin trafficking and purchases of assets.

94. I conducted checks with the City of Milwaukee Property Assessor's on the target premises and learned that the current owner of the two-family residence at 3020 and 3022 N. 28 Street is Linda Bell. She has been listed as owner since September 2011. The mailing address for Linda Bell is listed as 3022 N. 28 Street, Milwaukee, Wisconsin, which I know to be Trivon Carter's residence. I know Bell to be the mother of Trivon Carter.

26

95.     Within the past week I reviewed utility records for the address and found that 3022 N. 28 St. was listed as the upper unit with the subscriber of record being James Carter – who I know to be the brother of Trivon Carter -- since August 2012 with a listed telephone number of 414-627-6262 and social security number of XXX-XX-5850. 3020 was listed as the lower unit with the subscriber being Kathryn Duvergey since December of 2012 with a phone number of 773-993-9337 and a social security number of XXX-XX-7036.

96.     In the past month, I conducted surveillance at 3020 and 3022 N. 28th Street on numerous occasions and observed Trivon Carter, Erwin Miller, Billy Robinson Jr., and James Carter at the residence. On many occasions I observed vehicles arrive at the residence and leave after a short stay. These short visits, together with the behavior of those in the vehicles, led me to believe that I was observing drug deals at the residence. During the deals, James Carter often attempted to approach on foot, bicycle and in a vehicle the area where I was located, consistent with acting as a lookout for the deals.

97.     In the past month, I have also observed Trivon Carter and Billy Robinson driving a black and gold Chevrolet Astro van, Wisconsin license 685VYP, which is registered to Linda Bell at 1140 N. 45th Street. CI-7 also identified this vehicle as utilized by Trivon Carter and Billy Robinson. I have also observed this vehicle parked at 3020/3022 N. 28th Street nearly every time that I have conducted surveillance at the residence, including late night and early morning hours. This is consistent with the vehicle being owned by Trivon Carter but titled and registered in the name of his mother, Linda Bell.

98.     CI-7 stated that he/she learned directly from Carter that Carter, Miller, and Robinson travelled together to Chicago during the week of July 7, 2014 to obtain a shipment of

27

heroin and had driven in the Chevrolet Astro van known by investigators to be utilized by Carter and Robinson and seen frequently at Carter's residence at 3020/3022 N. 28th Street, Milwaukee.

99.    I have also observed in the past month the green Ford Expedition that is registered to Kathryn Duvergey parked at 3020/3022 N. 28th Street, Milwaukee nearly every time I have conducted surveillance at the residence and during late night and early morning hours.

**B. 4404 West Lisbon Avenue, Milwaukee, Wisconsin** (a commercial garage used by Trivon Carter and Erwin Miller for drug transactions and a stash house)

100.    CI-7 advised me that 4404 W. Lisbon Avenue, Milwaukee is a garage of a type used for working on vehicles.    CI-7 advised that he/she had been to the garage with Trivon Carter and learned from Carter that he had rented the garage for the last 6 months and that he and Miller used the garage to work on vehicles owned by Carter.

101.    Utility records for 4404 W. Lisbon Avenue show the current subscriber as Katy Duvergey since March 2014. The billing address for Duvergey was listed as 3020 N. 28th Street with a previous telephone number of 773-933-9337 and a current telephone number of 414-233-0427, along with Duvergey's social security number of XXX-XX-7036. The account was listed as a commercial account.

102.    In the past month, I conducted surveillance at 4404 W. Lisbon Ave., Milwaukee which I determined was a commercial garage. I observed Trivon Carter, Erwin Miller, Billy Robinson and James Carter at the location. Miller appeared to be working on vehicles in the garage. On numerous occasions within the past month, I observed individuals who appeared to be drug customers arrive and stay for a very short time at the garage when members of the group were present. Based on my experience, these visits were consistent with drug deals. James Carter was frequently outside the business and appeared again to be acting as a lookout during these apparent drug deals.

28

103.    I have reviewed the tracking device data for the past month and a half for the GMC Sierra used by the group and observed that the vehicle has stopped near 4404 W. Lisbon Avenue, Milwaukee multiple times each week. These stops at this location have occurred during daytime and also late night hours. Some of these stops were of very short duration, consistent with completion of drug transactions or of dropping off and picking up supply from a drug storage location.

104.    I believe that this location is controlled by Trivon Carter and used by Carter and Erwin Miller in ways that serve Trivon Carter's drug trafficking enterprise. The location appears to be actively used to repair vehicles owned by Carter and as a locus for drug trafficking. I believe that at this location there can now be found evidence of drug trafficking including vehicles purchased and repaired with drug proceeds, drug trafficking proceeds including cash, heroin and heroin processing material, and records and documents evidencing drug trafficking.

**C. 1140 North 45th Street, Milwaukee, Wisconsin** (the residence of Linda Bell)

105.    CI-7 advised me that 1140 N. 45th Street, Milwaukee was the residence of Trivon Carter's mother.

106.    Within the past week, a Milwaukee Police Department Officer attempted contact at 1140 N. 45th Street, Milwaukee (the upper flat) but received no answer. The officer did make contact with the lower unit tenants who advised the officer that the upper unit tenant was Linda Bell and they believed she resided there with her children but that she was frequently not present at the residence.

107.    Current utility records show that 1140 N. 45th Street is listed as an upper unit at that address with the subscriber of record being Katy Duvergey with a previous listed telephone

29

number of 773-933-9337, a current telephone number of 414-233-0427 and Duvergey's social security number of XXX-XX-7036.

108.     My review of tracking device data for the GMC Sierra used by the group shows that this vehicle stopped near 1140 N. 45th Street, Milwaukee on at least five occasions over the past month and a half with the majority of the stops being less than 15 minutes. These stops, while not as frequent as the others, are consistent with drug trafficking activities otherwise conducted by Trivon Carter and his associates.

109.     As recounted above, Linda Bell lived with CI-3 while CI-3 was obtaining heroin regularly from Trivon Carter, her son. CI-3 and Bell stored guns at their residence for Trivon Carter. Trivon Carter keeps assets he purchases and uses, especially real property and vehicles, in Linda Bell's name. I know that drug traffickers often put assets in the names of nominees to avoid detection of the assets and seizure of the assets by law enforcement.

110.     I believe that within this residence of Linda Bell there can now be found evidence and proceeds of heroin trafficking especially records and documents showing the purchase of assets with the proceeds of heroin trafficking.

**D. 2457 and 2459 North Sherman Boulevard, Milwaukee, Wisconsin** (a two-family residence owned by Trivon Carter, used as a stash house)

111.     CI-7 told me that 2457/2459 N. Sherman Boulevard, Milwaukee is a residence owned by Trivon Carter. Carter told CI-7 that he was going to remodel the two-family residence and rent it out.

112.     In the past week, a Milwaukee Police Officer attempted to make contact with any occupants at 2457/2459 N. Sherman Blvd. A male individual identified as William Patrick answered the door at 2457 N. Sherman Blvd. and said he was the owner of the building and resided in the lower but the upper unit (2459) was vacant. Patrick stated he was an electrician,

30

had a telephone number of 262-373-9473, and had purchased the house 9 months earlier from an individual and sounded out a name phonetically which was not Trivon Carter, Linda Bell, or any other names familiar to investigators in this investigation.

113.　Patrick is a convicted felon and his criminal history includes a misdemeanor conviction of possession of cocaine that was reduced from an original charge of possession with intent to deliver cocaine in 2002, and a felony conviction in 2006 for possession with intent to deliver cocaine.

114.　On June 30, 2014, pen register and trap and trace orders were signed by the Honorable William E. Callahan Jr. for the newly identified cellular telephone number of Kathryn Duvergey, 414-233-0427. The pen register and trap and traces were activated on June 30, 2014.

115.　S/A Novak reviewed the telephone data for the telephone number 414-233-0427 and observed 12 contacts with the telephone number of William Patrick, 262-373-9473, between June 30, 2014 and the present.

116.　The current utilities for 2457 N. Sherman Boulevard and 2459 N. Sherman Boulevard are listed as vacant since 2012 with a notation that the owner foreclosed in December 2012.

117.　Milwaukee County Assessor records list the owner of the two-family residence at 2457 and 2459 N. Sherman Boulevard as Linda Bell. She is listed as owner since October 2013. The mailing address for Linda Bell is listed as 1140 N. 45th Street, Milwaukee. Separately, I reviewed Merit Title LLC documents relating to the last sale of the two-family residence at 2457/2459 N. Sherman Boulevard, Milwaukee. These records show that it was purchased by Trivon Carter in April 2013 for $35,643.41 in cash. On the sale documents, Carter listed his

31

address as 3022 N. 28 Street, Milwaukee. Trivon Carter must have subsequently transferred title to his mother, Linda Bell, or titled the property in her name after the purchase.

118.    I reviewed records from the Wisconsin Department of Revenue and determined that Trivon Carter, Kathryn Duvergey, and Erwin Miller have not filed any income taxes for the years 2011 through 2013. Linda Bell did not file income taxes for the years 2009 through 2012 but did file a homestead credit return for 2013 which showed total income of $10,200.00 and listed a home address of 1140 N. 45th Street, Milwaukee.

119.    My review of the tracking device data for the GMC Sierra shows that it also has stopped near 2457 and 2459 N. Sherman Boulevard on at least 9 occasions during the past month and a half with the majority of the stops being less than 10 minutes. These stops are consistent with conducting a drug transaction and with picking up a supply of drugs from a drug storage location.

120.    I reviewed location monitoring data from the cellular telephones of Trivon Carter and noted that Carter was in direct vicinity of 2457/2459 N. Sherman Boulevard on numerous days that Carter made trips to Chicago to meet with his Chicago source. The location data coordinates with the variances included were consistent with data coordinates when Carter or vehicles associated to him were observed at 2457/2459 N. Sherman Boulevard.

121.    After having travelled to Chicago on April 30, May 17, 21, 25, July 18, August 24 and September 25, 2013, Carter was in direct vicinity of 2457/2459 N. Sherman Boulevard later on those dates. Carter was in direct vicinity of 2457/2459 N. Sherman Boulevard on May 31, 2013 prior to travelling to Chicago.

122.    I reviewed GPS data for the GMC Sierra since May 7, 2014, not including approximately 2 weeks when the original unit stopped working and/or was removed or lost from

32

the Sierra, until the installation of a new tracking unit and found that the vehicle was in the direct vicinity of 2457 and 2459 N. Sherman Boulevard on May 7, 27, 29, June 1, 14, 17, 18, 19, 26, 2014 and also believed to be on July 1, 2014. The durations on each of those dates were for less than approximately 10 minutes except on June 1 when data showed it in direct vicinity of the residence on two occasions with one time being approximately 40 minutes and the other less than 10 minutes.

123.    The GPS date for May 29, 2014, for the GMC Sierra revealed that the vehicle travelled to the area of the Chicago source and returned to Milwaukee after a short time, which I believe is consistent with Carter obtaining heroin from the Chicago source. The GPS data showed that the GMC Sierra went to the vicinity of 2457/2459 N. Sherman Boulevard later that night.

124.    Based upon the above and my training and experience, I believe it is indicative of Carter using the building at 2457 and 2459 North Sherman Boulevard as one of Carter's stash locations. The information provided by William Patrick about his presence at and purchase of 2457 North Sherman Boulevard is consistent with government and utility records. Patrick's phone contacts with Durvergey are consistent with his involvement in Carter's drug group as a direct participant and/or as a person maintaining and protecting a stash location. Accordingly, I believe that within this location is evidence of heroin trafficking and proceeds.

## V.    CRIMINAL HISTORIES

125.    Trivon Carter has felony convictions from 2001 for possession with intent to deliver cocaine, harboring/aiding a felon in 2003, and conspiracy to defraud the US/counterfeiting in 2008, as well as misdemeanors for battery and criminal damage to property in 2001. Carter was released for probation supervision in April 2013.

33

126.     Erwin Miller has a felony conviction for forgery from 2004, and misdemeanor convictions for receiving stolen property in 1994, possession of drug paraphernalia in 2004 and resisting/obstructing an officer in 2008.

127.     Billy Robinson Jr. has felony convictions for delivery of cocaine in 2002, bail jumping in 2002, delivery of cocaine in 2002, escape in 2010, delivery of controlled substance in 2012, and a misdemeanor conviction which was for possession of marijuana in 1999. Robinson is also currently wanted on a violation of probation in IL for delivery of a controlled substance.

128.     Linda Bell, a/k/a Linda Carter, is believed to have a criminal record under the name Valerie Green with misdemeanor convictions for prostitution in 1990 and 1995, retail theft in 1992, 1993, 1994, 1995, and 2001, disorderly conduct 2009, resisting/obstructing an officer in 2009, and possession of drug paraphernalia in 2009.

129.     James Carter has a felony conviction for robbery in 2006 and delivery of a controlled substance in 2009, as well as a misdemeanor conviction for possession of cocaine in 2004.

# United States District Court

## EASTERN DISTRICT OF WISCONSIN

## COURT MINUTES

HON. **NancyJoseph**, presiding.                    Deputy Clerk: Karen

DATE: **July 16, 2014**                            Court Reporter:

CASE NO. **14-924M(NJ)**                           Time Called: 2:04:41

UNITED STATES v. **Billy Robinson**                Time Concluded: 2:08:54

PROCEEDING: **Initial Appearance**

UNITED STATES by: **William Lipscomb**

    Probation Officer: **LaKeisha Mallett**

    Interpreter:

DEFENDANT: **Billy Robinson**, in person, and by

ATTORNEY: **Joseph Bugni (USFD)**

---

Crt. advised deft. of rights.  Govt. advised the deft. of charges, penalties and fines:

          20 Yrs.    $1,000,000    3 Yrs.    $100

Govt. is seeking detention at this time but requests an adjournment until Monday until the govt. has time to review the outcome of a recent search warrant.  Presumption case.

Deft. does not object to a temp. detention.

Crt. statements.  Crt. enters an order of temp. detention and sets a detention hrg. for **7/21/14 at 9:30 a.m.**

# United States District Court

## EASTERN DISTRICT OF WISCONSIN

## COURT MINUTES

HON. **Nancy Joseph**, presiding.

DATE: **July 21, 2014**

CASE NO. **14-924M(NJ)**

UNITED STATES v. **Billy Robinson**

PROCEEDING: **Detention Hearing**

Deputy Clerk: Karen

Court Reporter:

Time Called:  9:30:41

Time Concluded: 9:41:20

UNITED STATES by: **William Lipscomb**

      Probation Officer: **LaToya Myles**

      Interpreter:

DEFENDANT: **Billy Robinson**, in person, and by

ATTORNEY: **Craig Albee (USFD)**

---

Crt. gives background of matter.  Govt. seeking detention.  Presumption case.  Deft. has a prior record including 2 state drug felonies.  There was a bail jumping in 2002.  This offense was committed while on release in another matter.  There is a 2010 escape charge.  There was a 2014 warrant issued in Chicago for absconding. The deft. was actively distributing heroin for det. Carter.

Deft. states he can live with his mother on EM.  There is little in the cmp involving this deft.  No detention required. There is an outstanding warrant in Chicago but defense believes that can be resolved.

Crt. statements before ruling.  Deft. has limited involvement in the cmp.  He has a lengthy prior record.  Based on the number of drug convictions, he is a danger.  The deft. was on supervision when this offense was committed.  Based on the nature of his prior convictions and the fact that the offenses were committed while on supervision, detention is warranted.  Crt. sets A & P/Prelim. Hrg. for **7/28/14 at 1:30 p.m.**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                  Plaintiff,

       v.

TRIVON E. CARTER,
KATHRYN A. DU VERGEY,
ERWIN J. MILLER, and
BILLY J. ROBINSON, Jr.,

           Defendants.

Case No. 14-CR- 14 - CR 150

[Title 21, United States Code,
Sections 846, 841(a)(1), and 841(b)(1)(B)]

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

2014 JUL 22 A 10: 44

JON W. SANFILIPPO
CLERK

---

## INDICTMENT

### COUNT ONE

**THE GRAND JURY CHARGES:**

1.    From approximately August of 2012, and continuing through July 16, 2014, in the

State and Eastern District of Wisconsin and elsewhere,

**TRIVON E. CARTER,**
**KATHRYN A. DU VERGEY,**
**ERWIN J. MILLER, and**
**BILLY J. ROBINSON, Jr.,**

knowingly and intentionally conspired to possess with the intent to distribute and distribute in

excess of one hundred grams of a mixture and substance containing heroin, a Schedule I

controlled substance.

2.    All in violation of Title 21, United States Code, Sections 846, 841(a)(1), and

841(b)(1)(B), and Title 18, United States Code, Section 2.

A TRUE BILL:

_____
FOREPERSON

Dated: 22 July 2014

_____
JAMES L. SANTELLE
United States Attorney

| Name of Defendant: | Address: City, State and Zip Code: |
|---|---|
| Trivon Carter | ███████, Milwaukee, WI |

| Date of Birth: | Occupation: |
|---|---|
| xx-xx- 1979 | n/a |

| Name of Defendant's Attorney: | Address of Defendant's Attorney: |
|---|---|
| Richard L. Kaiser | Law Offices of Richard L. Kaiser<br>P.O. Box 157<br>South Milwaukee, WI 53172-0157 |

**Name of U.S. Attorney:**

William J. Lipscomb

| Has warrant been issued? | When? | By Whom? |
|---|---|---|
| ☒ YES   ☐ NO | 7/15/14 | NJ |

| Has warrant been executed? | When? | Where? |
|---|---|---|
| ☒ YES   ☐ NO | 7/15/14 | Milwaukee |

| Has defendant appeared before a Magistrate? | When? | Who? |
|---|---|---|
| ☒ YES   ☐ NO | 7/18/14 | NJ |

| Is the defendant in custody? | Where? |
|---|---|
| ☒ YES   ☐ NO | Waukesha County Jail |

Pretrial Scheduling Conference Necessary?   ☐ YES   ☒ NO

| Issue:<br>WARRANT | SUMMONS | NOTICE | MISDEMEANOR | FELONY |
|---|---|---|---|---|
| ☐ | ☐ | ☒ | ☐ | ☒ |

Milwaukee Case ☒   Green Bay Case ☐   County: Milwaukee

Minor Offense

Petty Offense

| Arraignment & plea before: | Judge: | Magistrate: |
|---|---|---|

(The above information to be furnished in duplicate (1 copy for file and 1 copy for Marshal with 2 conformed copies of indictment and/or information of defendant))

# THE ABOVE INFORMATION TO BE FURNISHED IF KNOWN

| Count | Date | Charge | Penalty |
|---|---|---|---|
| 1 | 12/12 to present | Thomas W. Haddad<br>Trivon E. Carter<br>Kathryn A. Duvergey<br>Erwin J. Miller, Billy J. Robinson, Jr. | Conspiracy to distribute more than 100 grams or more of heroin, 21 USC, §§841(a)(1) and 841(b)(1)(B) and 846 |

**Agency/Agent: DCI/Novak**

**OCDETF: ☐ YES   ☒ NO**

| Name of Defendant: **Kathryn Duvergey** | Address: City, State and Zip Code: ███████, Milwaukee, WI |
|---|---|

| Date of Birth: **xx-xx- 1981** | Occupation: n/a |
|---|---|

| Name of Defendant's Attorney: Peter Arnold | Address of Defendant's Attorney: Arnold Law Offices, 1400 Lombard Ct Wauwatosa, WI 53213 |
|---|---|

| Name of U.S. Attorney: William J. Lipscomb |
|---|

| Has warrant been issued? ☒ YES  ☐ NO | When? 7/15/14 | By Whom? NJ |
|---|---|---|

| Has warrant been executed? ☒ YES  ☐ NO | When? 7/15/14 | Where? Milwaukee |
|---|---|---|

| Has defendant appeared before a Magistrate? ☒ YES  ☐ NO | When? 7/16/14 | Who? NJ |
|---|---|---|

| Is the defendant in custody? ☐ YES  ☒ NO | Where? Out on bond |
|---|---|

| Pretrial Scheduling Conference Necessary?  ☐ YES   ☒ NO |
|---|

| Issue: WARRANT | SUMMONS | NOTICE | MISDEMEANOR | FELONY |
|---|---|---|---|---|
| ☐ | ☐ | ☒ | ☐ | ☒ |

| Milwaukee Case ☒   Green Bay Case ☐   County: Milwaukee |
|---|

| Minor Offense |
|---|

| Petty Offense |
|---|

| Arraignment & plea before:        Judge:        Magistrate: |
|---|

(The above information to be furnished in duplicate (1 copy for file and 1 copy for Marshal with 2 conformed copies of indictment and/or information of defendant))

# THE ABOVE INFORMATION TO BE FURNISHED IF KNOWN

| Count | Date | Charge | Penalty |
|---|---|---|---|
| 1 | 12/12 to present | Thomas W. Haddad Trivon E. Carter Kathryn A. Duvergey Erwin J. Miller Billy J. Robinson, Jr. | Conspiracy to distribute more than 100 grams or more of heroin, 21 USC, §§841(a)(1) and 841(b)(1)(B) and 846 |

**Agency/Agent:  DCI/Novak**
**OCDETF:** ☐ YES   ☒ NO

| Name of Defendant: | Address: City, State and Zip Code: |
|---|---|
| Erwin J. Miller | ▮▮▮▮▮., Milwaukee, WI |

| Date of Birth: | Occupation: |
|---|---|
| xx-xx-1974 | n/a |

| Name of Defendant's Attorney: | Address of Defendant's Attorney: |
|---|---|
| Jeffrey W Jensen | Law Offices of Jeffrey W Jensen<br>735 W Wisconsin Ave 12th Floor<br>Milwaukee, WI 53233 |

**Name of U.S. Attorney:**

William J. Lipscomb

| Has warrant been issued? | When? | By Whom? |
|---|---|---|
| ☒ YES   ☐ NO | 7/17/14 | NJ |

| Has warrant been executed? | When? | Where? |
|---|---|---|
| ☒ YES   ☐ NO | 7/15/14 | Milwaukee |

| Has defendant appeared before a Magistrate? | When? | Who? |
|---|---|---|
| ☒ YES   ☐ NO | 7/16/14 | NJ |

| Is the defendant in custody? | Where? |
|---|---|
| ☐ YES   ☒ NO | Out on bond |

| Pretrial Scheduling Conference Necessary?   ☐ YES      ☒ NO |
|---|

| Issue: WARRANT | SUMMONS | NOTICE | MISDEMEANOR | FELONY |
|---|---|---|---|---|
| ☐ | ☐ | ☒ | ☐ | ☒ |

Milwaukee Case ☒    Green Bay Case ☐    County: Milwaukee

| Minor Offense |
|---|

| Petty Offense |
|---|

| Arraignment & plea before: | Judge: | Magistrate: |
|---|---|---|

(The above information to be furnished in duplicate (1 copy for file and 1 copy for Marshal with 2 conformed copies of indictment and/or information of defendant))

# THE ABOVE INFORMATION TO BE FURNISHED IF KNOWN

| Count | Date | Charge | Penalty |
|---|---|---|---|
| 1 | 12/12 to present | Thomas W. Haddad<br>Trivon E. Carter<br>Kathryn A. Duvergey<br>Erwin J. Miller<br>Billy J. Robinson, Jr. | Conspiracy to distribute more than 100 grams or more of heroin, 21 USC, §§841(a)(1) and 841(b)(1)(B) and 846 |

**Agency/Agent:  DCI/Novak**

**OCDETF:** ☐ YES   ☒ NO

U.S. Department of Justice
Executive Office for United States Attorneys
U.S. Attorneys

| Name of Defendant: Billy Robinson Jr. | Address: City, State and Zip Code: ▇▇▇▇▇, Milwaukee, WI |
|---|---|
| Date of Birth: xx-xx- 1979 | Occupation: n/a |
| Name of Defendant's Attorney: Craig Albee | Address of Defendant's Attorney: Federal Defender Services, 517 E. Wisconsin Ave., Milwaukee, WI 53202 |

| Name of U.S. Attorney: William J. Lipscomb |
|---|

| Has warrant been issued? ☒ YES ☐ NO | When? 7/15/14 | By Whom? NJ |
|---|---|---|

| Has warrant been executed? ☒ YES ☐ NO | When? 7/15/14 | Where? Milwaukee |
|---|---|---|

| Has defendant appeared before a Magistrate? ☒ YES ☐ NO | When? 7/16/14 | Who? NJ |
|---|---|---|

| Is the defendant in custody? ☒ YES ☐ NO | Where? Kenosha County Jail |
|---|---|

| Pretrial Scheduling Conference Necessary? ☐ YES ☒ NO |
|---|

| Issue: WARRANT | SUMMONS | NOTICE | MISDEMEANOR | FELONY |
|---|---|---|---|---|
| ☐ | ☐ | ☒ | ☐ | ☒ |

| Milwaukee Case ☒   Green Bay Case ☐   County: Milwaukee |
|---|

| Minor Offense |
|---|

| Petty Offense |
|---|

| Arraignment & plea before:          Judge:          Magistrate: |
|---|

(The above information to be furnished in duplicate (1 copy for file and 1 copy for Marshal with 2 conformed copies of indictment and/or information of defendant))

# THE ABOVE INFORMATION TO BE FURNISHED IF KNOWN

| Count | Date | Charge | Penalty |
|---|---|---|---|
| 1 | 12/12 to present | Thomas W. Haddad<br>Trivon E. Carter<br>Kathryn A. Duvergey<br>Erwin J. Miller<br>Billy J. Robinson, Jr. | Conspiracy to distribute more than 100 grams or more of heroin, 21 USC, §§841(a)(1) and 841(b)(1)(B) and 846 |

**Agency/Agent:  DCI/Novak**
**OCDETF:** ☐ YES  ☒ NO

# United States District Court

JUL 2 1 2014

## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA

v.

**BILLY ROBINSON**

*Defendant*

**ORDER OF DETENTION PENDING TRIAL**

**Case Number: 14-924M(NJ)//4-CR-150**

In accordance with the Bail Reform Act, 18 U.S.C. § 3142(f), a detention hearing has been held. I conclude that the following facts require the detention of the defendant pending trial in this case.

### Part I - Findings of Fact

☐ (1) The defendant is charged with an offense described in 18 U.S.C. § 3142(f)(1) and has been convicted of a ☐ federal offense ☐ state or ☐ local offense that would have been a federal offense if a circumstance giving rise to federal jurisdiction had existed that is

    ☐ a crime of violence as defined in 18 U.S.C. § 3156(a)(4).

    ☐ an offense for which the maximum sentence is life imprisonment or death.

    ☐ an offense for which a maximum term of imprisonment of ten years or more is prescribed in.[1]

    ☐ a felony that was committed after the defendant had been convicted of two or more prior federal offenses described in 18 U.S.C.§ 3142(f)(1)(A)-(C), or comparable state or local offenses.

☐ (2) The offense described in finding (1) was committed while the defendant was on release pending trial for a federal, state or local offense.

☐ (3) A period of not more than five years has elapsed since the ☐ date of conviction ☐ release of the defendant from imprisonment for the offense described in finding (1).

☐ (4) Findings Nos. (1), (2) and (3) establish a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of (an) other person(s) and the community. I further find that the defendant has not rebutted this presumption.

### Alternative Findings (A)

☒ (1) There is probable cause to believe that the defendant has committed an offense

    **X** for which a maximum term of imprisonment of ten years or more is prescribed in 21 U.S.C. §§ 841(a)(1) and 846.

    ☐ under 18 U.S.C.§ 924(c).

☐ (2) The defendant has not rebutted the presumption established by finding 1 that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community.

### Alternative Findings (B)

☐ (1) There is a serious risk that the defendant will not appear.

☒ (2) There is a serious risk that the defendant will endanger the safety of another person or the community.

### Part II - Written Statement of Reasons for Detention

I find that the information submitted at the hearing establishes that, at this time, there are no conditions or combination of conditions that would allow this defendant to be released. The defendant has a prior record which includes two felony drug convictions. The instant offense was allegedly committed while he was on supervision. Detention is warranted.

### Part III - Directions Regarding Detention

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States marshal for the purpose of an appearance in connection with a court proceeding.

Dated:   July 21, 2014

*Signature of Judicial Officer*

Nancy Joseph, United States Magistrate Judge
*Name and Title of Judicial Officer*

[1]Insert as applicable: (a) Controlled Substances Act (21 U.S.C.§ 801 *et seq.*); (b) Controlled Substances Import and Export Act (21 U.S.C.§ 951 *et seq.*); or (c) Section 1 of Act of Sept. 15, 1980 (21 U.S.C.§955a).

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**

v.

**TRIVON CARTER**
**BILLY ROBINSON, JR.**

**ARRAIGNMENT AND PLEA HEARING**
CASE NUMBER **14-CR-150**

---

HONORABLE **Nancy Joseph**, presiding
Deputy Clerk: **Karen**
Hearing Held: **July 28, 2014**

Court Reporter:
Hearing Began: 1:49:58
Hearing Ended: 1:53:51

**Appearances:**

| | |
|---|---|
| UNITED STATES OF AMERICA by: | **William Lipscomb** |
| **Trivon Carter** , in person, and by: | **Richard Kaiser**  ☒ CJA  ☐ FDS  ☐ RET |
| **Billy Robinson, Jr.**, in person, and by: | **Craig Albee**  ☐ CJA  ☒ FDS  ☐ RET |
| , in person, and by: | ☐ CJA  ☐ FDS  ☐ RET |

U.S. PROBATION OFFICE by:

INTERPRETER: ☐ None  ☒ Sworn

☒ Original Indictment  ☐ Superseding Indictment  ☐ Information  ☐ Misdemeanor  ☒ Felony

| | | | |
|---|---|---|---|
| Speedy Trial Date: | **9/30/14** | Trial Estimate: | **4 days** |
| Final Pretrial Date: | | Voir Dire: | **9/18/14** |
| Jury Trial Date: | **9/22/14 at 9:00 a.m.** | Motions Due: | **8/12/14** |
| District Judge: | **Rudolph T. Randa** | Responses Due: | **8/22/14** |
| Magistrate Judge: | **William E. Callahan, Jr.** | Replies Due: | **8/27/14** |

---

☒ Defendant advised of rights
☒ Court ordered counsel appointed
    ☐ Defendant to reimburse at $ ——— per month

☒ Defendant advised of charges, penalties, and fines

☒ Copy of indictment received by defendant
☐ ☐ Indictment read; or ☐ Defendant waives reading
☒ Not guilty plea entered by:
    ☒ defendant  ☐ the court

☒ Open file policy applies
Discovery available: **by 8/4/14**
    ☐ Court discussed availability for incarcerated defendants

☒ Government to disclose GJ materials one day prior to trial

☐ Case designated complex
    ☐ Scheduling conference set for:

before ☐ AEG  ☐ PJG  ☐ WEC  ☐ NJ

---

<u>Maximum Penalties:</u>   5-40 Yrs.   $5,000,000   4 Yrs.   $100

**Bond Status:**

☐  Defendant is ordered detained pending trial.  SEE Order of Detention Pending Trial
☐  Court orders federal detainer
☐  Defendant is ordered temporarily detained for a maximum of : ☐ 3 days  ☐ 5 days  ☐ 10 days
    Detention Hearing set for: _____
☐  Defendant detained but court will review upon motion proposing conditions of release
☐  Bond continued as previously set
☒  **Detention continued as previously set by Judge Joseph**
☐  Defendant is released on:  ☐  O/R bond  ☐ Unsecured bond in the amount of: _____
                        ☐ Bond secured by: ☐ Cash  ☐ Property  ☐ Cash/property

**Conditions of Release**:

☐  Report to Pretrial Services as directed
☐  Execute appearance bond:
    ☐ Cash only  _____
    ☐ Property only: Value: $ _____  Location: _____
    ☐ Cash or property: _____
☐  Seek/maintain employment
☐  Surrender passport to: _____
☐  Obtain no passport
☐  Travel restricted to:  ☐ ED-WI  ☐ _____
☐  No direct or indirect  contact with: _____
    _____
☐  Undergo medical/psychiatric treatment: _____
☐  No firearms/weapons
☐  No excessive use of alcohol  ☐ No alcohol
☐  No use, or illegal possession, of narcotic drugs/controlled substances, unless prescribed by a physician
    or other licensed medical practitioner
☐  Notify any medical provider of drug addiction
☐  Furnish PTS with a list of prescribed medications
☐  Testing for drugs/alcohol
☐  Inpatient drug treatment _____
☐  Outpatient drug treatment s directed by PTS
☐  Home confinement:
    ☐ Curfew:  ☐ as directed by USPO; or  ☐ from: _____
    ☐ Home detention with EM with restriction to residence at all times except for employment, education,
       religious services, medical, substance abuse or mental health treatment, attorney visits, court appearances,
       court-ordered obligations, or other activities approved in advance by USPO
    ☐ Home detention with electronic monitoring
    ☐ Defendant to pay cost of EM as directed by PTS

☐
☐
☐

**Billy Robinson, Jr.**

**Bond Status:**

☐    Defendant is ordered detained pending trial.  SEE Order of Detention Pending Trial

☐    Court orders federal detainer

☐    Defendant is ordered temporarily detained for a maximum of :  ☐ 3 days  ☐ 5 days  ☐ 10 days

     Detention Hearing set for: _____

☐    Defendant detained but court will review upon motion proposing conditions of release

☐    Bond continued as previously set

☒    **Detention continued as previously set by Judge Joseph**

     Defendant is released on: ☐ O/R bond  ☐ Unsecured bond in the amount of: _____

                    ☐ Bond secured by: ☐ Cash  ☐ Property  ☐ cash/property


**Conditions of Release**:

☐    Report to PTS as directed

☐    Execute appearance bond:

     ☐ Cash only: _____

     ☐ Property only: Value: $_____    Location: _____

     ☐ Cash or property: _____

☐    Seek/maintain employment

☐    Surrender passport to: _____

☐    Obtain no passport

☐    Travel restricted to:  ☐ ED-WI  ☐ _____

☐    No direct or indirect contact  with:_____

     _____

☐    Undergo medical/psychiatric treatment: _____

☐    No firearms/weapons

☐    No excessive use of alcohol  ☐ No alcohol

☐    No use, or illegal possession, of narcotic drugs/controlled substances, unless prescribed by a physician or other licensed medical practitioner

☐    Notify any medical provider of drug addiction

☐    Furnish PTS with a list of prescribed medications

☐    Testing for drugs/alcohol

☐    Inpatient drug treatment _____

☐    Outpatient drug treatment as directed by PTS

☐    Home confinement:

     ☐ Curfew:  ☐ as directed by USPO; or  ☐ from: _____

     ☐ Home Detention with EM with restriction to residence at all times except for employment, education, religious services, medical, substance abuse or mental health treatment, attorney visits, court appearances, court-ordered obligations, or other activities approved in advance by USPO

     ☐ Home detention with electronic monitoring

     ☐ Defendant to pay cost of EM as directed by PTS

☐

☐

☐

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        *Plaintiff,*

    *vs.*                              Case No. 14-CR-150 (WEC)

BILLY J. ROBINSON, Jr.,

        *Defendant.*

## MOTION TO EXTEND
## TIME FOR FILING PRETRIAL MOTIONS

Billy Robinson, by undersigned counsel, respectfully moves this Court for the entry of an order extending the time for filing pretrial motions from August 12 to August 22. The extension is requested because not all discovery has been received and defense counsel will need additional time to review discovery, to discuss the discovery with the client, and to prepare motions.

In support of this motion, Robinson invites the Court's attention to the following circumstances:

    1.      On July 28, 2014, Robinson was arraigned on a one-count indictment alleging he conspired to possess and distribute heroin pursuant to 21 U.S.C. § 846,

*Federal Defender Services*
*of Wisconsin, Inc.*

841(a)(1) and 18 U.S.C. § 2. At the arraignment the Court set the following pretrial briefing schedule: defense motions due August 12, 2014;  government responses due August 22, 2014; and, any replies due August 27, 2014.

2.      On July 31, 2014, undersigned counsel received 1 disk of discovery consisting of 284 pages, which he has reviewed. However, it is apparent that the discovery is not complete as there are references to search warrants and court orders for which not all documentation has been received. There also are references to photographs and an audio recording of an alleged controlled buy that have not been provided. These items and others have been requested, and the government has acknowledged that additional materials will be produced.

3.      Counsel has not had a chance to meaningfully discuss the discovery with Mr. Robinson as counsel is waiting to receive the additional discovery before traveling to Kenosha County Detention Center to meet with Mr. Robinson. .

4.      Counsel has planned to take vacation from the office for almost all the week of August 11.

5.      Counsel has spoken with AUSA William Lipscomb, who does not object to the requested extension.

For all the above reasons, Robinson requests an extension to August 22 for filing motions.

*Federal Defender Services*
*of Wisconsin, Inc.*

2

Dated at Milwaukee, Wisconsin this 8th day of August, 2014.

Respectfully submitted,

/s/      *Craig W. Albee*
Craig W. Albee, WI Bar #1015752
FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.
517 E. Wisconsin Ave - Rm 182
Milwaukee,  WI   53202
Tel.: (414) 221-9900
E-mail: craig_albee@fd.org

*Counsel for Defendant,* Billy Robinson, Jr.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

       *Plaintiff,*

    *vs.*                           Case No. 14-CR-150 (WEC)

BILLY J. ROBINSON, Jr.,

       *Defendant.*

## SECOND UNOPPOSED MOTION TO EXTEND
## TIME FOR FILING PRETRIAL MOTIONS

Billy Robinson, by undersigned counsel, respectfully moves this Court for the entry of an order extending the time for filing pretrial motions from August 22 to September 5, 2014. This second extension is requested because not all discovery has been received and defense counsel will need additional time to review discovery, to discuss the discovery with the client, and to prepare motions.

In support of this motion, Robinson invites the Court's attention to the following circumstances:

*Federal Defender Services*
*of Wisconsin, Inc.*

1.     On July 28, 2014, Robinson was arraigned on a one-count indictment alleging he conspired to possess and distribute heroin pursuant to 21 U.S.C. § 846, 841(a)(1) and 18 U.S.C. § 2.

2.     On August 8, 2014, undersigned counsel requested his first extension of time to file pretrial motions, which was granted by text order, setting the new deadline to today, August 22.  Counsel is seeking an additional two weeks on the grounds that there is additional discovery that has not been produced.  While this is not a complex case, the volume of discovery is significant as Robinson's alleged co-conspirators were investigated for over a year. Counsel has not yet received reports relating to the execution of search warrants, the arrests of the defendants, cell-phone tracking data, phone records, and other materials.

3.     At approximately 2:00 p.m. today, counsel received approximately 1,450 new pages of discovery on disc. It has not been reviewed and its contents are unknown.

4.     Counsel has not had a chance to meaningfully discuss the discovery with Mr. Robinson as counsel is waiting to receive the additional discovery before traveling to Kenosha County Detention Center to meet with Mr. Robinson.

5.     Counsel also is filing a motion to adjourn the trial date in this matter.

*Federal Defender Services*
*of Wisconsin, Inc.*

2

6.      Counsel has spoken with AUSA William Lipscomb, who does not object to this second request for extension of time.

For all the above reasons, Robinson requests an extension to August 22 for filing motions.

Dated at Milwaukee, Wisconsin this 22nd day of August, 2014.

Respectfully submitted,

/s/         Craig W. Albee
Craig W. Albee, WI Bar #1015752
FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.
517 E. Wisconsin Ave - Rm 182
Milwaukee,  WI   53202
Tel.: (414) 221-9900
E-mail: craig_albee@fd.org

*Counsel for Defendant,* Billy Robinson, Jr.

*Federal Defender Services
of Wisconsin, Inc.*

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

   *Plaintiff,*

  *vs.*         Case No. 14-CR-150 (WEC)

BILLY J. ROBINSON, Jr.,

   *Defendant.*

## UNOPPOSED MOTION TO ADJOURN TRIAL DATE

  Billy Robinson, by undersigned counsel, respectfully moves this Court, pursuant to 18 U.S.C. § 3161, for the entry of an order adjourning the current trial date of September 22, 2014, on the grounds there is discovery that still has not been produced, the defense is seeking an extension of time for filing motions to September 5, 2014, in anticipation of receiving additional discovery, and resolution of this case will not be possible until additional discovery is received.

  In support of this motion, Mr. Robinson invites the Court's attention to the following circumstances:

  1.  On July 28, 2014, Robinson was arraigned on a one-count indictment alleging he conspired to possess and distribute heroin pursuant to 21 U.S.C. § 846,

841(a)(1) and 18 U.S.C. § 2. At the arraignment the Court set the following pretrial briefing schedule: defense motions due August 12, 2014; government responses due August 22, 2014; and, any replies due August 27, 2014. On August 8, 2014, undersigned counsel requested an extension of time to file pretrial motions, which the court granted extending the motion deadline to August 22, 2014.

2.     On today's date, Robinson also is filing a motion to extend the time for filing pretrial motions by two weeks. If motions are filed within that time frame, it would not be possible to resolve them before trial. At the moment, Robinson is contemplating filing a motion to suppress, but additional motions may be required upon review of additional discovery.

3.     At 2 p.m. today, after drafting this motion, counsel received a disc with 1,450 pages of new discovery. It has not been reviewed and the contents are unknown.

4.     Counsel has conferred with AUSA Lipscomb who does not oppose this request.

5.     Counsel believes that the requested extension is in the interest of justice.

Accordingly, Mr. Robinson requests an adjournment of the trial date.

*Federal Defender Services*
*of Wisconsin, Inc.*

2

Dated at Milwaukee, Wisconsin this 22nd day of August, 2014.

Respectfully submitted,

/s/      *Craig W. Albee*

Craig W. Albee,  Bar No. 1015752

FEDERAL DEFENDER SERVICES
 OF WISCONSIN, INC.

517 E. Wisconsin Ave - Room 182

Milwaukee, Wisconsin 53202

Tel.    (414) 221-9900

Fax    (414) 221-9901

craig_albee@fd.org

*Counsel for Defendant*, Billy Robinson, Jr.

```
MIME-Version:1.0
From:ecfmaster@wied.uscourts.gov
To:ecfmaster@wied.uscourts.gov
Bcc:
--Case Participants: Craig W Albee (christine_moreno@fd.org, craig_albee@fd.org), Peter J
Arnold (parnlaw@gmail.com), William J Lipscomb (rebecca.fazer@usdoj.gov,
william.lipscomb@usdoj.gov), Jeffrey W Jensen (jensen@milwaukeecriminaldefense.pro,
jwjensen1960@gmail.com), Richard L Kaiser (kaiserlaw@wi.rr.com), Judge Rudolph T Randa
(cary_biskupic@wied.uscourts.gov, linda_zik@wied.uscourts.gov,
nora_scholle@wied.uscourts.gov, sandra_gegios@wied.uscourts.gov,
troy_martell@wied.uscourts.gov), Magistrate Judge William E Callahan, Jr
(elizabeth_champeau@wied.uscourts.gov, jeremy_heacox@wied.uscourts.gov,
vanessa_eisenmann@wied.uscourts.gov, william_callahan@wied.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:2388647@wied.uscourts.gov
Subject:Activity in Case 2:14-cr-00150-RTR USA v. Carter et al Order to Continue - Ends of
Justice
Content-Type: text/html
```

## United States District Court

## Eastern District of Wisconsin

**Notice of Electronic Filing**


The following transaction was entered on 9/2/2014 at 1:19 PM CDT and filed on 8/29/2014

| | |
|---|---|
| **Case Name:** | USA v. Carter et al |
| **Case Number:** | 2:14–cr–00150–RTR–WEC |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**ORDER TO CONTINUE – Ends of Justice Signed by Judge Rudolph T Randa on 8/29/2014 APPROVING [39] Billy J Robinson, Jr's Unopposed Motion to Adjourn 9/22/2014 Jury Trial Date. Pursuant to 18 U.S.C. 3161 Sections (h)(7)(A) and (h)(7)(B)(i) &(iv) Time is excluded from 8/29/2014 to 9/5/2014. (cc: all counsel) (Zik, Linda)**


**2:14–cr–00150–RTR–WEC–4 Notice has been electronically mailed to:**

Craig W Albee   craig_albee@fd.org, christine_moreno@fd.org

Jeffrey W Jensen   jensen@milwaukeecriminaldefense.pro, jwjensen1960@gmail.com

Peter J Arnold   parnlaw@gmail.com

Richard L Kaiser   kaiserlaw@wi.rr.com

William J Lipscomb   william.lipscomb@usdoj.gov, rebecca.fazer@usdoj.gov

**2:14–cr–00150–RTR–WEC–4 Notice has been delivered by other means to:**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    *Plaintiff,*

  *vs.*           Case No. 14-CR-150 (WEC)

BILLY J. ROBINSON, Jr.,

    *Defendant.*

## MOTION TO SUPPRESS

  Billy Robinson, Jr., by undersigned counsel, respectfully moves this Court, pursuant to the Fourth Amendment to the United States Constitution, for an order suppressing all evidence obtained as a result of the unlawful seizure of Robinson on October 21, 2013, and all leads and evidence, tangible or otherwise, derived from the unlawful seizure. As grounds for this motion, Robinson submits that law enforcement officers seized him unlawfully by stopping Robinson and the car he was driving without adequate justification. Robinson also requests the opportunity to brief this motion following the development of the facts at the evidentiary hearing.

  On September 5, 2014, undersigned counsel conferred with the prosecutor, AUSA William Lipscomb, who does not oppose an evidentiary hearing. Robinson's

*Federal Defender Services*
*of Wisconsin, Inc.*

understanding is that the government will be asserting that there was probable cause to stop the vehicle. Robinson asserts that there was not probable cause to believe that the driver of the vehicle had committed any offense and no other exception to the warrant requirement permitted the stop.

In support of his request for an evidentiary hearing, Robinson invites the Court's attention to the following circumstances:

1.      On the morning of June 26, 2014, Milwaukee police officers conducted a traffic stop of the vehicle Mr. Robinson was driving. According to the initial police report by Detective Phil Simmert, the police stopped Robinson's vehicle after he allegedly made a sale of heroin to a confidential informant

2.      Following the stop, the police did not arrest Robinson.

3.      Robinson disputes that the officers had probable cause to believe that the driver of the vehicle had committed a crime or that the vehicle contained any contraband or evidence of a crime.  A hearing is necessary to determine the facts known to the officers at the time of the stop and whether those facts would justify the stop of the vehicle. The parties agree that a hearing is necessary, but will work to identify undisputed facts prior to any hearing.

4.      Warrantless searches and seizures are presumptively unreasonable and the government has the burden of establishing that an exception to the warrant

*Federal Defender Services*
*of Wisconsin, Inc.*

requirement authorized the officers' actions in this case.  *E.g., United States v. Basinski* 276 F.3d 829, 833-34 (7th Cir. 2000).

5.     Robinson estimates that the evidentiary hearing will take 1 to 2 hours.

Dated at Milwaukee, Wisconsin this 5th day of September, 2014.

Respectfully submitted,

/s/     **Craig W. Albee**
Craig W. Albee, Bar No. 1015752
FEDERAL DEFENDER SERVICES
   OF WISCONSIN, INC.
517 E. Wisconsin Ave - Room 182
Milwaukee, Wisconsin 53202
Tel.    (414) 221-9900
Fax     (414) 221-9901
E-mail: craig_albee@fd.org

*Counsel for Defendant,* Billy Robinson, Jr.

*Federal Defender Services*
*of Wisconsin, Inc.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

       *Plaintiff,*

    *vs.*                                Case No. 14-CR-150 (WEC)

BILLY J. ROBINSON, Jr.,

       *Defendant.*

## MOTION TO COMPEL DISCLOSURE
## OF CONFIDENTIAL INFORMANT

Billy Robinson, by undersigned counsel, respectfully moves this Court, pursuant to the Fifth and Sixth Amendments to the United States Constitution, for an order compelling the government to reveal the identity of the confidential informants sixty days before trial.

In support of this motion, Robinson invites the Court's attention to the following circumstances:

1.    In this case, the discovery mentions a number of unidentified informants who provided information about the alleged conspiracy. Most of the informants appear not to have provided any information regarding alleged activities of Robinson. The discovery does describe one alleged controlled buy from

*Federal Defender Services*
*of Wisconsin, Inc.*

Robinson of a half-gram of heroin on June 26, 2014, by a CI identified as DGTF #14-026.

2.      Robinson recognizes that the identity of a confidential informant may be protected from disclosure. *E. g., Roviaro v. United States*, 353 U.S. 53, 59 (1957). But the privilege is qualified and must give way "where the disclosure of an informer's identity, or of the contents of his communication, are relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause . . . " *Id.* at 60-61.  Further, the identity of transactional witnesses must be disclosed.  *Id.* at 64-65.

3.      The government does not dispute that it must disclose the identities of testifying confidential informants and has agreed to do so 30 days before trial.  That is not enough time for the defense, however, in a case that may involve multiple informants, especially since those informants may be incarcerated. Robinson will have to obtain records, locate the witnesses, interview others about the witnesses, and follow-up on the information obtained. Under these circumstances, Robinson will not be able to adequately investigate the allegations against him in the thirty-day time frame.

4.      Robinson also requests disclosure of the identity of any confidential informant, regardless whether the informant's statement has been provided to the

*Federal Defender Services*
2                    *of Wisconsin, Inc.*

defense, who has made any statement that is favorable to Robinson and material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83 (1963). Without attempting to catalogue every possible category of exculpatory evidence, the following types of evidence are exculpatory and must be provided: statements by other confidential informants providing accounts of relevant events that conflict with those of the government's witnesses; statements by other confidential informants reporting any ill-will, bad feeling, or animosity on the part of any witness towards. Mr. Robinson; statements by other confidential informants regarding any witness's dishonest character; and statements by other alleged coconspirators denying knowledge of Robinson's involvement in the conspiracy. *See United States v. Barnes*, 2010 WL 1418874 at 6 (E.D. Wis. 2010)(recognizing that statements of an alleged coconspirator that he has no knowledge of the defendant's involvement in the conspiracy is of an exculpatory nature and requires disclosure of that informant's identity).

Dated at Milwaukee, Wisconsin this 5th day of September, 2014.

Respectfully submitted,

/s/          *Craig W. Albee*

Craig W. Albee, WI Bar #1015752
FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.
517 E. Wisconsin Ave - Rm 182
Milwaukee,  WI   53202
Tel.: (414) 221-9900
E-mail: craig_albee@fd.org

*Counsel for Defendant,* Billy Robinson, Jr.

*Federal Defender Services
of Wisconsin, Inc.*

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

                                       Case No. 14-CR-150

BILLY J. ROBINSON, JR.,

        Defendant.

---

**GOVERNMENT'S MOTION FOR RESCHEDULING OF EVIDENTIARY HEARING
ON DEFENDANT ROBINSON'S MOTION TO SUPPRESS**

---

On September 5, 2014, Billy Robinson filed a motion to suppress evidence seized as a result of the unlawful seizure of Robinson on June 26, 2014.  The government does not oppose the holding of an evidentiary hearing and has agreed to work with counsel for the defendant to narrow down the disputed facts for the Court in accordance with Local Criminal Rule 12(c).

The Court set an evidentiary hearing for October 9, 2014 at 10:30 AM.  Government counsel has learned that two of the government's potential witness, Wisconsin DCI agents Jay Novak and Jeff Hale, will be in mandatory training at Fort McCoy from October 8 through October 10.  Accordingly, the government requests that the hearing be set for a day other than these three days.  Government counsel will be in trial much of the following week, beginning on October 14, 2014.

Dated at Milwaukee, Wisconsin this 16th day of September, 2014.

                             Respectfully Submitted,

                             JAMES L. SANTELLE
                             United States Attorney

            By:    */s/ William J. Lipscomb*

                             WILLIAM J. LIPSCOMB
                             Assistant United States Attorney

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.

                                            Case No. 14-CR-150

BILLY J. ROBINSON, JR.,

        Defendant.

## GOVERNMENT'S RESPONSE TO DEFENDANT BILLY ROBINSON'S MOTION TO COMPEL DISCLOSURE OF CONFIDENTIAL INFORMANT

On September 5, 2014, defendant Billy Robinson filed a motion to compel disclosure of confidential informant. Robinson's motion is similar to the motion filed by codefendant Kathryn Du Vergey. The government responded in opposition to that motion on September 2, 2014.

For his part, Robinson asserts that disclosure of transactional witnesses 30 days before trial as proposed by the government is insufficient in this case. Robinson asserts that 30 days is not enough time and that disclosure of only transactional witnesses is insufficient. Robinson does not say how much time might be required prior to trial. The government maintains that 30 days is more than adequate.

Robinson does not say which of the non-transactional informants – there are seven informants referenced in the criminal complaint –must be disclosed. Robinson seems to suggest that the identities of all informants must be disclosed because each informant may have potentially exculpatory information that must be disclosed under *Brady v. Maryland*, 373 U.S. 83 (1963).

The government understands its obligations under *Brady*. The government will examine the statements of informants to see if any of the statements contain potential Brady material requiring disclosure of the informant's identity as ordered in *United States v. Barnes*, 2010 WL

1418874 (E.D. Wis. 2010). The government requests that the defendant's motion for disclosure of the identities of all informants be denied as moot.

Dated at Milwaukee, Wisconsin this 16th day of September, 2014.

Respectfully Submitted,

JAMES L. SANTELLE
United States Attorney

By:    */s/ William J. Lipscomb*

WILLIAM J. LIPSCOMB
Assistant United States Attorney

# United States District Court

## EASTERN DISTRICT OF WISCONSIN

## COURT MINUTES

| | |
|---|---|
| HON. **WILLIAM E. CALLAHAN, JR.**, presiding. | Deputy Clerk: Brenda |
| DATE: **October 21, 2014** | Court Reporter: Sheryl |
| CASE NO. **14-CR-150** | Time Called: 9:10 |
| UNITED STATES v. **BILLY ROBINSON** | Time Concluded: 11:31 |
| PROCEEDING: **EVIDENTIARY HEARING** | |

UNITED STATES by: **William Lipscomb**

      Probation Officer:

      Interpreter:

DEFENDANT: **Billy Robinson**, in person, and by

ATTORNEY:  **Craig Albee**

---

Court gives background of case

Deft filed motion to suppress traffic stop made on - June 26, 2014

Defense request sequestration of witnesses - Court grants request

Govt calls Det. David Lopez, sworn, testified

9:20 Cross of witness by defense counsel

9:30 Govt calls Agent Jay Novak, sworn, testified

9:50 Court recessed for five minutes

10:05 Court resumed with direct of Agent Jay Novak by the govt

10:06 Cross of witness by defense counsel

11:00 Redirect of witness by govt

11:00 Court recessed by five minutes

11:10 Govt rest

11:12 Defense calls Det Jasmine Pasho, sworn, testified

11:25 Defense rest

Court set following briefing schedule:

Briefs are due by November 21st

Govt has until December 5th for response

Replies are due December 12th

F̲ederal D̲efender S̲ervices
  of W̲isconsin, I̲nc.
LEGAL COUNSEL

Daniel W. Stiller, Federal Defender

Craig W. Albee
Anderson M. Gansner
Juval O. Scott

517 East Wisconsin Avenue
Suite 182
Milwaukee, Wisconsin 53202

Telephone 414-221-9900
Facsimile 414-221-9901

November 21, 2014

Honorable William E. Callahan
United States District Court
Eastern District of Wisconsin
517 E. Wisconsin Avenue
Milwaukee, WI 53202

RE:     *United States v. Billy J. Robinson*
          Case No. 14-CR-150 (WEC)

Dear Magistrate Judge Callahan:

After reviewing the transcript of the evidentiary hearing, I plan on withdrawing the motion to suppress. However, I have not had the opportunity to discuss my decision with Mr. Robinson. I am requesting an extension until next Wednesday for filing the brief so that I may consult with my client before withdrawing the motion.

I spoke with AUSA William Lipscomb today, who does not oppose this request.

Sincerely,

/s/     *Craig W. Albee*

CWA/cm

# Federal Defender Services
## of Wisconsin, Inc.
LEGAL COUNSEL

Daniel W. Stiller, Federal Defender

Craig W. Albee
Anderson M. Gansner
Juval O. Scott

517 East Wisconsin Avenue
Suite 182
Milwaukee, Wisconsin 53202

Telephone 414-221-9900
Facsimile 414-221-9901

December 4, 2014

Honorable William E. Callahan, Jr.
United States District Court
Eastern District of Wisconsin
517 E. Wisconsin Avenue
Milwaukee, WI 53202

RE:     *United States v. Billy J. Robinson*
        Case No. 14-CR-150 (WEC)

Dear Magistrate Judge Callahan:

Having now had the opportunity to speak to Mr. Robinson, I am writing to advise the Court that we are withdrawing our motion to suppress.

Thank you for your consideration.

Sincerely,


/s/    *Craig W. Albee*

CWA/cm

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                               Case No. 14-CR-150

KATHRYN A. DU VERGEY, and
BILLY J. ROBINSON, JR.,

        Defendants.

## ORDER ON DEFENDANTS' PRETRIAL MOTIONS

Kathryn A. Du Vergey ("Du Vergey") and Billy J. Robinson, Jr. ("Robinson") each were arrested pursuant to a criminal complaint issued by United States Magistrate Judge Nancy Joseph on July 15, 2014. Du Vergey and Robinson each made an initial appearances before Judge Joseph on July 16, 2014. On July 22, 2014, a federal grand jury sitting in this district returned a one-count indictment naming Du Vergey, Robinson, and two other individuals as defendants. Each of the defendants is charged with knowingly and intentionally conspiring to possess with the intent to distribute and to distribute more than 100 grams of a mixture and substance containing heroin, a Schedule I controlled substance, all in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B) and 18 U.S.C. § 2. Du Vergey and Robinson were arraigned on July 28, 2014, and they each pled not guilty to the above-mentioned charge. The case is assigned to United States District Judge Rudolph T. Randa for trial and to this court for processing pre-trial motions. The defendants' trial date currently is adjourned.

On August 22, 2014, Du Vergey filed a motion to disclose the identities of all confidential informants involved in the case in accordance with *Roviaro v. United States*, 353 U.S. 53 (1957). More precisely, Du Vergey seeks an order requiring the government to disclose the identities of all "transactional" informants; that is, those informants who were active participants in the events that led to Du Vergey's arrest. Du Vergey maintains that such disclosure is necessary because the identities of these informants are "essential to the fair determination of the case."

In response, the government maintains that not all of the confidential informants referenced in the criminal complaint are transactional. The government indicates that it will not provide discovery of the identities of these non-testifying informants who were not involved in heroin transactions the government intends to prove up at trial, asserting the government informer's privilege. The government further indicates that it intends to provide notice of the identities of transactional informants thirty days before trial. The government asserts it "will also provide discovery of statements made by these informants as well as required *Giglio* materials."

Du Vergey did not file a reply to the government's response, and she did not indicate in her initial motion how far in advance of trial she seeks disclosure. Nevertheless, the court finds that thirty days is sufficient notice and, thus, Du Vergey's motion will be denied as moot to the extent that her motion seeks disclosure of confidential informants who are transactional witnesses.

Pursuant to a twice-extended pre-trial scheduling order, on September 5, 2014, Robinson filed two motions: (1) to suppress evidence; and (2) to compel disclosure of confidential informants. On October 21, 2014, the court held an evidentiary hearing with respect to

Robinson's motion to suppress.  Thereafter, on December 4, 2014, Robinson filed a letter in which he requested to withdraw his motion to suppress.  This request will be granted.

With respect to his motion to compel, Robinson seeks an order requiring the government to disclose the identities of all confidential informants at least sixty days before trial.  Robinson maintains that thirty days' notice is insufficient given that the case may involve multiple informants and that some informants may be incarcerated.  Robinson further requests the disclosure of any confidential informant who has made any statement that is favorable to him and material to guilt or punishment.

In response, the government maintains that thirty days' notice is more than adequate.  The court agrees.  That is, the disclosure of confidential informants who are transactional witnesses thirty days before trial is sufficient notice.  Accordingly, Robinson's motion to compel will be denied as moot to the extent that he seeks the disclosure of confidential informants who are transactional witnesses.  Moreover, to the extent that Robinson seeks disclosure of non-transactional witnesses, his motion to compel will be denied, as the government has represented that it will disclose the identity of any informant who provided statements exculpatory to Robinson.

**NOW THEREFORE IT IS ORDERED** that Du Vergey's "Motion to Disclose Confidential Informants" (ECF No. 37) be and hereby is **DENIED as moot** to the extent that the motion seeks disclosure of confidential informants who are transactional witnesses;

**IT IS FURTHER ORDERED** that Robinson's request to withdraw his motion to suppress (ECF No. 59) be and hereby is **GRANTED**;

3

**IT IS FURTHER ORDERED** that Robinson's "Motion to Compel Disclosure of Confidential Informant" (ECF No. 48) be and hereby is **DENIED as moot** to the extent that the motion seeks disclosure of confidential informants who are transactional witnesses, and **DENIED** to the extent that the motion seeks disclosure of non-transactional confidential informants.

**IT IS FURTHER ORDERED** that the government shall provide Du Vergey and Robinson notice of the identities of all confidential informants who are transactional witnesses at least thirty days before trial**.**

Your attention is directed to General L.R. 72(c) (E.D. Wis.), 28 U.S.C. § 636(b)(1)(B), and Federal Rules of Criminal Procedure 59(b) or 72(b), if applicable, whereby written objections to any order herein, or part thereof, may be filed within fourteen days of the date of service of this order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the Court in writing.

**SO ORDERED** this 10th day of December 2014, at Milwaukee, Wisconsin.

**BY THE COURT:**


s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

4



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

Plaintiff,

Case No. 14-CR-150

v.

BILLY J. ROBINSON, JR.,

Defendant.

---

## INFORMATION

---

**THE UNITED STATES ATTORNEY CHARGES:**

### COUNT ONE

**THE UNITED STATES ATTORNEY CHARGES THAT:**

1.     On or about July 12, 2014, in the State and Eastern District of Wisconsin and elsewhere,

**BILLY J. ROBINSON, JR.**

traveled in interstate commerce with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on, of an unlawful activity, to wit: the distribution of heroin, and thereafter performed an act to promote the unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3) and Section 2.

### COUNT TWO

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1.     On or about July 14, 2014, in the State and Eastern District of Wisconsin and elsewhere,

**BILLY J. ROBINSON, JR.**

traveled in interstate commerce with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on, of an unlawful activity, to wit: the distribution of heroin, and thereafter performed an act to promote the unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3) and Section 2.

Date: Jan 21, 2015

JAMES L. SANTELLE
United States Attorney

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                    Plaintiff,

          v.                                        Case No. 14-CR-150

BILLY J. ROBINSON, JR.,

                    Defendant.

---

## PLEA AGREEMENT

---

1.      The United States of America, by its attorneys, James L. Santelle, United States Attorney for the Eastern District of Wisconsin, and William J. Lipscomb, Assistant United States Attorney, and the defendant, Billy J. Robinson, Jr., individually and by attorney Craig W. Albee, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

## **CHARGES**

2.      The defendant has been charged in a one-count indictment with a violation of Title 21, United States Code, Sections 846, 841(a)(1) and (b)(1)(B) and in a two-count information, which alleges violations of Title 18, United States Code, Sections 1952(a)(3) and Section 2.

3.      The defendant has read and fully understands the charges contained in the indictment and information. He fully understands the nature and elements of the crimes with which he has been charged, and the charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4.     The defendant voluntarily agrees to waive prosecution by indictment in open court.

5.     The defendant voluntarily agrees to plead guilty to the following counts of the information set forth in full as follows:

## COUNT ONE

**THE UNITED STATES ATTORNEY CHARGES THAT:**

1.     On or about July 12, 2014, in the State and Eastern District of Wisconsin and elsewhere,

**BILLY J. ROBINSON, JR.**

traveled in interstate commerce with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on, of an unlawful activity, to wit: the distribution of heroin, and thereafter performed an act to promote the unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3) and Section 2.

## COUNT TWO

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1.     On or about July 14, 2014, in the State and Eastern District of Wisconsin and elsewhere,

**BILLY J. ROBINSON, JR.**

traveled in interstate commerce with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on, of an unlawful activity, to wit: the distribution of heroin, and thereafter performed an act to promote the unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3) and Section 2.

The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 5. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

Between February of 2012 and early 2014, Trivon Carter, Kathryn Du Vergey, and Erwin Miller regularly travelled together to Chicago to obtain heroin that they then distributed in the Milwaukee, Wisconsin area.

2

During the period from February of 2012 through July 16, 2014, Trivon Carter lived at 3020 North 28th Street, Milwaukee, the upper flat. Kathryn Du Vergey and Erwin Miller lived in the lower flat, 3022 North 28th Street, Milwaukee. The three typically travelled together to Chicago to pick up heroin at least once a week, and often several times a week to supply their Milwaukee customer base. Through most of 2012, the group was obtaining 25 to 50 grams of heroin per trip. By early 2014, the group was obtaining as much as 300 grams of heroin on each trip, though the amounts varied with each trip.

Kathryn Du Vergey and Erwin Miller worked for Trivon Carter who was the organizer of the heroin group. Trivon Carter made arrangements to pick up the heroin with sources of supply in Chicago. Kathryn Du Vergey and Erwin Miller often drove the group's vehicle on the trips to Chicago with Trivon Carter. Du Vergey and Miller often secreted the heroin on their persons during return trips to Milwaukee. Du Vergey regularly made deliveries of heroin for Carter at Carter's direction to their Milwaukee area customers. Du Vergey and Miller stored firearms in their home for Carter and often carried firearms with them when obtaining or delivering heroin.

In the spring of 2014, Billy J. Robinson, Jr. began assisting Carter. Between early spring of 2014 and July 16, 2014, Robinson travelled with Carter and others to Chicago to pick up heroin for distribution in Milwaukee. On these trips, Robinson, Carter, and others travelled from Carter's residence in Milwaukee to Chicago where they obtained the heroin, secreted it on their persons, and returned to Milwaukee to distribute the heroin to others. Robinson made deliveries of heroin to Carter's customers after these trips. Carter and Robinson made trips on several occasions, specifically travelling on July 12, 2014 and July 14, 2014.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

3

## PENALTIES

6.      The parties understand and agree that each of the offenses to which the defendant will enter a plea of guilty carries the following penalties: a maximum 5 years imprisonment and a maximum $250,000 fine. The counts also carry a mandatory special assessment of $100, and up to 3 years of supervised release.

7.      The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## DISMISSAL OF INDICTMENT

8.      The government agrees to move to dismiss the indictment at the time of sentencing.

## ELEMENTS

9.      The parties understand and agree that in order to sustain the charges of distribution of heroin as set forth in counts one and two, the government must prove each of the following propositions beyond a reasonable doubt:

First, the defendant traveled or caused another to travel in interstate or foreign commerce;

Second, the defendant did so with the intent to facilitate the promotion, management, establishment or carrying on of an unlawful activity; and

Third, the defendant did thereafter facilitate the promotion, management, establishment, or carrying on of an unlawful activity.

4

## SENTENCING PROVISIONS

10.      The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by court at the change of plea hearing.

11.      The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12.      The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in paragraph 5. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

13.      The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

### Sentencing Guidelines Calculations

14.      The parties acknowledge, understand, and agree that the sentencing guidelines calculations included in this agreement represent the positions of the parties on the appropriate sentence range under the sentencing guidelines. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any

5

right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

15.     The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

16.     The government agrees to recommend to the sentencing court that the relevant conduct attributable to the defendant is at least 100 grams but less than 400 grams of a mixture containing heroin.

## Base Offense Level

17.     The government agrees to recommend to the sentencing court that the applicable base offense level is 24 under Sentencing Guidelines Manual § 2D1.1(c)(8).

## Acceptance of Responsibility

18.     The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. The defendant acknowledges, understands, and agrees that conduct consistent with the acceptance of responsibility includes but is not limited to the defendant's voluntary identification and disclosure to the government of any and all actual or potential victims of the offense prior to sentencing. In addition, if the court determines at the time of sentencing that the defendant is

6

entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

## Career Offender

19.    The parties acknowledge, understand, and agree that the defendant may qualify as a career offender under the sentencing guidelines.  The parties further understand, acknowledge, and agree that the defendant may not move to withdraw the guilty plea solely as a result of a determination that under the guidelines, the defendant is determined to be a career offender.

## Sentencing Recommendations

20.    Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

21.    Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

22.    The government agrees to recommend a sentence no higher than the guideline range resulting from application of the government's recommendations set forth in this agreement.

## Court's Determinations at Sentencing

23.    The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the

7

imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

24.    The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

25.    The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction.  The defendant agrees not to request any delay or stay in payment of any and all financial obligations.

26.    The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form.

### Special Assessment

27.    The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

## DEFENDANT'S WAIVER OF RIGHTS

28.    In entering this agreement, the defendant acknowledges and understands that in so doing he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

      a.    If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the

8

judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

b.     If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d.     At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e.     At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

29.     The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

9

30.     The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

31.     The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

### Further Civil or Administrative Action

32.     The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

### GENERAL MATTERS

33.     The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

34.     The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

10

35.     The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

36.     The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

37.     The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

11

## VOLUNTARINESS OF DEFENDANT'S PLEA

38.    The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

12

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 1-18-15

_____
BILLY J. ROBINSON, JR.
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 1/18/15

_____
CRAIG W. ALBEE
Attorney for Defendant

For the United States of America:

Date: 1/20/15

_____
JAMES L. SANTELLE
United States Attorney

Date: 1/20/15

_____
WILLIAM J. LIPSCOMB
Assistant United States Attorney

13

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

## COURT MINUTES

HON. **Rudolph T. Randa**, presiding.    Deputy Clerk:    **Linda M. Zik**

DATE:  **January 29, 2015  1:30 p.m.**    Court Reporter:    **Heidi Trapp**

CASE NO.  **14-Cr-150**    Time Called:    **1:42 pm.**

UNITED STATES v. **Billy J. Robinson, Jr.**    Time Concluded:    **1:54 pm.**

PROCEEDING:    **CHANGE OF PLEA**

UNITED STATES by:    **William J. Lipscomb**

PROBATION OFFICER:    **Daniel E. Dragolovich**

INTERPRETER:

DEFENDANT:  **Billy J. Robinson Jr.,**  in person, and by

ATTORNEY:  **Craig W. Albee**

---

\_\_    Information filed today    **X**  Waiver of Indictment signed and filed today
\_\_    Plea Agreement filed today

Plea:  **Guilty**  to Counts  **1 & 2**  of the Information (Indictment to be dismissed at sentencing)

**X**  Adjudged Guilty    **X**  Presentence Report ordered

Sentencing date:  **April 30, 2015 at 10:00 a.m.**

*Sentencing Memorandums and motions must be filed at least one-week prior to the sentencing date.*

**X**  Defendant remanded to custody of U.S. Marshal
\_\_  Bond continued as previously set

Defendant sworn.  Court questions defendant.  Defendant waives the reading of the Information. Government's offer of proof is in the Plea Agreement.  Rule 32 waived in the Plea Agreement.

Penalties:
Each Count: Imprisonment: 5 years max;  Fine: $250,000.00 max.; Special Assessment: $100.00; Supervised Release: 3 years max.

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin



U.S. DIST. COURT EAST DIST. WISC
FILED

JAN 2 9 2015

AT_____M
JON W. SANFILIPPO, CLERK

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No.  14-CR-150 |
| BILLY J. ROBINSON, JR. | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: 1/29/2015

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

CRAIG W. ALBEE
*Printed name of defendant's attorney*

_____
*Judge's signature*

Rudolph T. Randa
*Judge's printed name and title*

# Federal Defender Services
## of Wisconsin, Inc.
LEGAL COUNSEL

Daniel W. Stiller, Federal Defender

Craig W. Albee
Anderson M. Gansner
Ronnie V. Murray

517 East Wisconsin Avenue
Suite 182
Milwaukee, Wisconsin 53202

Telephone 414-221-9900
Facsimile 414-221-9901

April 29, 2015

Honorable Rudolph T. Randa
United States District Court
Eastern District of Wisconsin
517 E. Wisconsin Avenue
Milwaukee, WI 53202

RE:     *United States v. Billy J. Robinson*
        Case No. 14-CR-150 (RTR)

Dear Judge Randa:

In anticipation of Billy Robinson's sentencing tomorrow, I submit this brief letter advising the Court of the anticipated sentencing recommendations of the parties. My understanding is that the government will be recommending a sentence not greater than five years and not less than four years. The defense is recommending a sentence of three and a half years. These recommendations recognize the much lesser role Mr. Robinson played in Trivon Carter's drug organization than that of his codefendants', but also would impose substantial punishment in light of Mr. Robinson's criminal history.

As outlined in the criminal complaint and the PSR, Trivon Carter ran a heroin trafficking business for several years from Milwaukee's north side. Carter had assistance in this business, but he was at the center of everything. It was he who found suppliers, negotiated purchases, traveled to Chicago to make purchases,

Honorable Rudolph T. Randa
April 29, 2015
Page 2

obtained the customers, set the prices, assigned tasks, and kept the lion's share of the profits.

Carter's primary assistants throughout the conspiracy were Erwin Miller and Kathryn du Vergey. From 2012 through the summer of 2014, Miller and du Vergey picked up the drugs with Carter from Chicago and sold them in Milwaukee. Miller and du Vergey lived in the lower half of Carter's duplex and stored multiple guns there, which were found when the police executed the search warrant. A confidential informant made several controlled buys from du Vergey. In addition to Miller and du Vergey, there were several uncharged coconspirators that appear from the discovery to have been involved for a lengthy period of time in Carter's drug enterprise. Apparently others came and went as well.

In the Spring of 2014 Billy Robinson aided Carter on occasion by driving to Chicago with him or delivering small amounts of heroin to Carter's customers.[1] The trips to Chicago were entirely managed and arranged by Carter, including the trips on July 12 and July 14, 2014, that Robinson pled guilty to facilitating. On June 26, 2014, Carter arranged a heroin sale to a CI and sent Robinson to deliver the half gram of heroin, which was sold for $80.

Robinson accepts responsibility for his unlawful conduct in assisting Carter. But it must be recognized that Robinson's role was much less than that of the other charged defendants. He was involved for a short time—closer to two months than the more than two years du Vergey and Miller were involved. In addition, he had no leadership role, his financial benefits were minimal, and he did not carry or possess a gun.

Unfortunately for Robinson, this is not his first conviction for selling drugs. Most notably, he was convicted twice in 2002 for selling cocaine—.12 grams the first time and .27 grams of cocaine the second. He also has a 2012 conviction for selling six bags of heroin in Chicago. Because of this past history, a prison term is warranted despite Robinson's limited role in this offense.

---

[1]   An informant told agents that Robsinon took du Vergey's place after Carter stopped using her in June 2014. PSR ¶ 20.

Honorable Rudolph T. Randa
April 29, 2015
Page 3

The parties are not particularly far apart in their sentence recommendations. Three and a half years is a significant prison sentence for Robinson's conduct, but appropriate in light of his criminal history. It also recognizes that Robinson's past does not include a history of gun possession, violence, or threats, and that the drug amounts that he has been involved with in each past case has been relatively small. That being said, Robinson needs to bring his drug activities, including his usage, to a complete halt. Three and a half years is a sufficient consequence, but not greater than necessary to achieve the purposes of sentencing.

Finally, from reading the PSR, it is apparent that Robinson's personal growth and rehabilitation have been hindered by his marijuana use. That use began in his youth and continued through his arrest. Consequently, the RDAP program is likely to be particularly beneficial to him. Robinson has argued in his objections to the PSR the reasons that the firearm enhancement does not apply to him and the government also is not seeking that enhancement. Without that firearm enhancement, Robinson will be eligible for a sentence reduction by participating in RDAP. That would be a positive first step for Robinson to become a productive member of the community upon his release.

Sincerely,


/s/     *Craig W. Albee*

CWA/cm

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

## SENTENCING MINUTES

HON. **Rudolph T. Randa**, presiding.          Deputy Clerk:          **Linda M. Zik**

DATE: **April 30, 2015  10:00 a.m.**          Court Reporter:          **Heidi Trapp**

CASE NO.  **14-Cr-150**          Time Called:          10:08 a.m.

UNITED STATES of AMERICA v.  **Billy Joe Robinson**

Time Concluded:          10:40 a.m.

UNITED STATES by:          **William J. Lipscomb**

PROBATION OFFICER: **Daniel E. Dragolovich**

INTERPRETER:

DEFENDANT:  **Billy Joe Robinson**, in person, and by

ATTORNEY:   **Craig W. Albee**

---

<u>Custody Bureau of Prisons</u>     <u>42 months</u>     on Counts   <u>1 & 2 of the Information</u>

Terms to run consecutively for a total term of 84 months Imprisonment.

Indictment dismissed on government's motion.

Credit for time served.

Recommend:  <u>facility close to ED/WI; participate in the RDAP program</u>

Supervised Release   <u>3</u>   years on Counts   <u>1 & 2</u>

Terms to run concurrently for a total term of 3 years Supervised Release

<u>Special Conditions</u>

| | | | |
|---|---|---|---|
| ___ | Home Confinement for _____ | ___ | Restitution $ mo. |
| _X_ | Report in 72 hours | ___ | Financial Disclosure |
| _X_ | No firearms | ___ | No new credit charges |
| _X_ | Drug & alcohol testing - no alcohol | ___ | Community Service __ hrs. |
| _X_ | Not illegally possess any controlled substance | ___ | Cognitive Intervention Prog. |
| ___ | Cooperate with Child Support Enforcement | ___ | Cooperate with ICE |
| ___ | Provide DNA – already provided | ___ | Cooperate with IRS |

<u>Sentencing Minutes Continued</u>

Defendant:    **Billy Joe Robinson**
Case No.:      **14-Cr-150**

<u>Fine: $</u>

 X  Fine and costs waived

                   X  Participate in BOP Inmate Financial
                                 Responsibility Program

<u>Restitution:</u>
Payee:

<u>Forfeiture:</u>

 X    Defendant remanded to custody of U.S. Marshal

___    Execution of sentence stayed until _____

___    Voluntary surrender to institution

 X    Defendant advised of right to appeal by court

____    Court orders copy of transcript to accompany presentence report

<u>Special Assessment:</u>

       $200.00

<u>Other:</u>

Court has the PSR and sentencing letter from defense counsel filed yesterday.

No additional objections by the parties to the factual statements in the PSR.

<u>Sentencing Minutes Continued</u>

Defendant:  **Billy Joe Robinson**
Case No.:    **14-Cr-150**

Defendant's objections:
   (1) Page 13, Paragraph 35 – 2-level enhancement for firearm being possessed pursuant to U.S.S.G. § 2D1.1(b)(1).  Government does not oppose the objection because it cannot prove it.  Court will not apply the enhancement.

Government notes the defendant had limited time in the offense.  Impose 60 months imprisonment.  This does not diminish the seriousness of the offense.  The defendant went to Chicago to pick up heroin and made a delivery to a confidential informant.  He has a terrible criminal history.  He has a classic street dealer criminal history and also battery.  Prior offenses addressed.  He has not gotten the message yet.  Government does not know how much time the defendant needs to get to get him to stop dealing dope.  But, 4-5 years is sufficient.

Defense counsel states there is not much difference between the parties recommendation.  3½ years' incarceration is sufficient.  Defendant is compared to his co-defendants.  He was involved for 2 months while the others were involved 2 years.  He did not have a leadership role, did not have his own customers, did not bag the heroin, and never had a gun.  He was just told what to do by Mr. Carter.  He was replaceable in Carter's business.  Prior criminal history addressed.  He has 3 prior convictions of street level dealing of cocaine. There were no guns, threats, or leadership involved.  He has plans for the future to move to Alabama and live with his fiancé.  He wants to obtain treatment.  He has had little vocation training while incarcerated.  Marijuana abuse is probably a significant factor in why he is the way he is.  He would benefit from the RDAP program.

Defendant's right of allocution.

Court addresses § 3553(a):
OL = 21, CHC = VI, 77-96 mos.
(1) Nature of offense: offense involved travel to distribute controlled substances;
(2) History of defendant: marijuana use started at age 14; never had a job in his life; family is supportive; siblings are not involved in anti-social behavior; prior record addressed – shows a total disregard for the law; protection of the public is emphasized; does not have his HSED; negative attitude and personality; 13 other arrests; has 5 children by 4 different women;
(3) 3½ years' incarceration imposed as to each count to run consecutively.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA<br>V.<br><br>**BILLY JOE ROBINSON** | **JUDGMENT IN A CRIMINAL CASE**<br><br>Case Number:  **14-Cr-150**<br><br>USM Number:  **13292-089**<br><br>**Craig W. Albee**<br>Defendant's Attorney<br>**William J. Lipscomb**<br>Assistant United States Attorney |

**THE DEFENDANT:**

☒ pleaded guilty to count(s)  __One (1) and Two (2) of the Information__

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☐ was found guilty on count(s) _____
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| **18 U.S.C. § 1952(a)(3)** | **Travel in Interstate Commerce to Facilitate**<br>**Distribution of Heroin** | **July 12, 2014**<br>**July 14, 2014** | 1<br>2 |

The defendant is sentenced as provided in Pages 2 through __6__ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☒ **Indictment is dismissed on the motion of the United States.**

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and the United States attorney of material changes in economic circumstances.

__April 30, 2015__
Date of Imposition of Judgment

_Signature of Judicial Officer_

**Hon. Rudolph T. Randa, U. S. District Judge**
Name & Title of Judicial Officer

__April 30, 2015__
Date

AO 245B  (Rev. 09/11) Judgment in a Criminal Case:
          Sheet 2 - Imprisonment

Defendant:      **Billy Joe Robinson**
Case Number: **14-Cr-150**

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of : **42 months as to each of Counts One (1) and Two (2) to run consecutively for a total term of 84 months Imprisonment.**

**Defendant shall be given credit for time served, if any, as
determined/calculated by the United States Bureau of Prisons.**

☒  **The court makes the following recommendations to the Bureau of Prisons:**

**(1) Defendant be placed at a facility as close to the Eastern District of Wisconsin as possible;
(2) Defendant participate the Residential Drug Abuse Treatment Program.**

☒  **The defendant is remanded to the custody of the United States Marshal.**

☐  The defendant shall surrender to the United States Marshal for this district.

   ☐  at _____ ☐ a.m.  ☐ p.m.  on _____

   ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons,

   ☐  before 12:00 p.m. on _____ .

   ☐  as notified by the United States Marshal.

   ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____  to _____

a _____ , with a certified copy of this judgment.

_____

UNITED STATES MARSHAL

By _____

DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 09/11) Judgment in a Criminal Case:
     Sheet 3 - Supervised Release

Defendant: **Billy Joe Robinson**
Case Number: **14-Cr-150**

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of : <u>**Three (3) years as to each of Counts One**</u>
<u>**(1) and Two (2) to run concurrently for a total term of Three (3) years Supervised Release.**</u>

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and two drug tests thereafter within one year.

☐    The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☒    **The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)**

☐    The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or a restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without permission of the Court or probation officer;
2) the defendant shall report to the probation officer in a manner and frequency directed by the Court or probation officer;
3) the defendant shall answer truthfully all inquiries by the probation officer subject to the defendant's Fifth Amendment right against self-incrimination and follow the instructions of the probation officer;
4) the defendant shall use the defendant's best efforts to support the defendant's dependents;
5) the defendant shall use the defendant's best efforts to find and hold lawful employment, unless excused by the probation officer for schooling, training, or other acceptable reasons (e.g., childcare, eldercare, disability, age or serious health condition);
6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment; When such notification is not possible, the defendant shall notify the probation officer within 72 hours of the change;
7) in addition to the statutory mandatory condition prohibiting the possession and unlawful use of a controlled substance, the defendant shall not purchase, possess, use, distribute, or administer any paraphernalia related to any controlled substances, except as prescribed by a physician;
8) the defendant shall not knowingly go to places or enter buildings where controlled substances are unlawfully sold, used, distributed or administered.;
9) the defendant shall not associate with any persons known to the defendant to be engaged, or planning to be engaged, in criminal activity, and shall not associate with any person known by the defendant to be a felon, absent permission to do so by the probation officer. "Associate," as used here means reside, socialize, meet, communicate or otherwise interact with such person;
10) the defendant shall permit a probation officer to visit the defendant at reasonable times at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notification and to confirm the defendant's compliance with such notification requirement.

AO 245B (Rev. 09/11) Judgment in a Criminal Case:
        Sheet 3A - Supervised Release

Defendant:        **Billy Joe Robinson**
Case Number:      **14-Cr-150**

## ADDITIONAL SUPERVISED RELEASE TERMS

1.    The defendant is to participate in a program of testing to include not more than six urinalysis tests per month
      and residential or outpatient treatment for drug and alcohol abuse, as approved by her supervising probation
      officer, until such time as she is released from such program.  The defendant shall pay the cost of this program
      under the guidance and supervision of her supervising probation officer. The defendant is to refrain from use
      of all alcoholic beverages throughout the supervised release term.

AO 245B (Rev 09/11) Judgment in a Criminal Case:
    Sheet 5 - Criminal Monetary Penalties

| | |
|---|---|
| Defendant: | **Billy Joe Robinson** |
| Case Number: | **14-Cr-150** |

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **Totals:** | $200.00 | waived | none |

☐ The determination of restitution is deferred until   _____   An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| **Totals:** | $ _____ | $ _____ | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

    ☐ the interest requirement is waived for the   ☐ fine     ☐ restitution.

    ☐ the interest requirement for the   ☐ fine     ☐ restitution is modified as follows:

\*Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev 09/11) Judgment in a Criminal Case:
  Sheet 6 - Schedule of Payments

Defendant:      **Billy Joe Robinson**
Case Number:   **14-Cr-150**

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

**A** ☐   Lump sum payment of $ _____ due immediately, balance due

      ☐ not later than _____ , or

      ☐ in accordance ☐ C, ☐ D, ☐ E or ☐ F below; or

**B** ☒   **Payment to begin immediately** (may be combined with ☐ C, ☐ D, or ☒ **F  below**); or

**C** ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D** ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E** ☐   Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☒   **Special instructions regarding the payment of criminal monetary penalties:**

> **Payments are due immediately, through the Clerk of Court, but may be paid from prison earnings in compliance with the Inmate Financial Responsibility Program in payment of the Special Assessment.  The defendant's participation in the Inmate Financial Responsibility Program is voluntary.**

     Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several
     Defendant and Co-Defendant Names, Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate:

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☐   The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        *Plaintiff,*

      *vs.*                        Case No. 14-CR-150 (RTR)

BILLY J. ROBINSON, Jr.,

        *Defendant.*

---

### DEFENDANT'S NOTICE OF APPEAL

Billy Robinson, Jr., by counsel, gives notice pursuant to Fed. R. App. P. 3(c) and 4(b) that he appeals to the United States Court of Appeals for the Seventh Circuit from the entry of judgment on April 30, 2015. With this notice of appeal, Mr. Robinson files the docketing and disclosure statements required by Seventh Circuit Rules 3(c) and 26.1, and the transcript information sheet required by Seventh Circuit Rule 10(d)(2).

Mr. Robinson was determined to be financially unable to obtain an adequate defense in the district court action and so he may proceed on appeal *in forma pauperis* without further authorization, pursuant Fed. R. App23. P. 24(a)(3).

*Federal Defender Services*
*of Wisconsin, Inc.*

Dated at Milwaukee, Wisconsin, this 11th day of May, 2015.

Respectfully submitted,


/s/          Craig W. Albee

Craig W. Albee, WI Bar #1015752
FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.
517 E. Wisconsin Ave - Rm 182
Milwaukee,   WI   53202
Tel.: (414) 221-9900
E-mail: craig_albee@fd.org

*Counsel for Defendant,* Billy J. Robinson, Jr.